1  DAVID R. SINGH (Bar No. 300840)
   david.singh@weil.com
2  MORGAN D. MACBRIDE (Bar No. 301248)
   morgan.macbride@weil.com
3  ZHI YANG TAN (Bar No. 347759)
   zhiyang.tan@weil.com
4  WEIL, GOTSHAL & MANGES LLP
   201 Redwood Shores Parkway, 6th Floor
5  Redwood Shores, CA 94065-1134
   Telephone: (650) 802-3000
6  Facsimile: (650) 802-3100

7  Attorneys for Defendant APPLE INC.

8                UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11

12  OTHMANE DIB, JESUS GUERRERO,           Case No. 5:25-cv-02043-NW
    LUCA DELA CRUZ, JEANETTE PORILLO,
13  PETER GHANEM, RITA CRANE, and          **DEFENDANT APPLE INC.'S REPLY IN**
    NATHANIEL SANSOM, FRANK NUÑEZ,         **SUPPORT OF ITS MOTION TO DISMISS**
14  and RANY WARDA, individually and as the **PLAINTIFFS' FIRST AMENDED**
    representatives of a class of similarly situated **COMPLAINT**
15  persons,
                                           Date:   November 12, 2025
16              Plaintiffs,                Time:   9:00 AM
                                           Dept.:  Courtroom 3, 5th Floor
17  v.                                     Judge: Honorable Noël Wise

18  APPLE INC., a California corporation,

19              Defendant.

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    The Green Guides Render Apple's Carbon-Neutral Claims Nonactionable .........................2

      A.    Apple's carbon-neutral claims are protected by the safe harbor ...............................3

      B.    Plaintiffs' arguments that the Green Guides do not apply are meritless...................6

      C.    Accepting the results of Plaintiffs' methodology would not undermine Apple's
            carbon-neutral claims because the buffer pool has enough replacement credits ......8

      D.    Compliance with the Green Guides, even if an affirmative defense, may be raised
            in a motion to dismiss and may be used to dispose of Plaintiffs' claims here..........9

II.   Plaintiffs Have Not Satisfied the Rule 9(b) Pleading Standard ...........................................10

III.  Plaintiffs Have Not Plausibly Alleged Article III Standing to Challenge Corporate
      Carbon Neutrality or for Products Plaintiffs Did Not Purchase...........................................12

IV.   Plaintiffs Have Not Plausibly Stated a Claim Under the UCL ...........................................14

V.    Plaintiffs Have Not Plausibly Stated a Claim for Breach of Express Warranty .................14

VI.   Plaintiffs Do Not Respond to Apple's Unjust Enrichment Arguments ...............................15

1

## <u>TABLE OF AUTHORITIES</u>

2

3                                                                                                              **Page(s)**

4      **Cases**

5      *Ahern v. Apple Inc.*,
6          411 F. Supp. 3d 541 (N.D. Cal. 2019) ...................................................................... 7

7      *Berrin v. Delta Air Lines, Inc.*,
           2024 WL 5371340 (C.D. Cal. Dec. 11, 2024) ........................................................ 13

8      *Berrin v. Delta Air Lines, Inc*,
9          2024 WL 3304815 (C.D. Cal. Mar. 28, 2024) .......................................................... 7

10     *Blackburn v. Etsy, Inc.*,
           2023 WL 9105662 (C.D. Cal. Oct. 12, 2023) ......................................................... 12
11

12     *Brazil v. Dole Food Co., Inc.*,
           2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) ....................................................... 13

13     *Bridgestone/Firestone, Inc. v. Oracle Corp.*,
14         1991 WL 526298 (N.D. Cal. Nov. 18, 1991)........................................................... 15

15     *Bronson v. Johnson & Johnson, Inc.*,
           2013 WL 5731817 (N.D. Cal. Oct. 22, 2013) ......................................................... 10
16

17     *Citizens for Free Speech, LLC v. Cnty. of Alameda*,
           338 F. Supp. 3d 995 (N.D. Cal. 2018) ...................................................... 13, 14, 15

18     *Davis v. HSBC Bank Nev., N.A.*,
19         691 F.3d 1152 (9th Cir. 2012)................................................................................. 8

20     *Dinan v. SanDisk LLC*,
           844 F. App'x 978 (9th Cir. 2021) ............................................................................ 6
21

22     *Duchimaza v. Niagara Bottling, LLC*,
           619 F. Supp. 3d 395 (S.D.N.Y. 2022)..................................................................... 10

23     *Dwyer v. Allbirds, Inc.*,
24         598 F. Supp. 3d 137 (S.D.N.Y. 2022).................................................................. 3, 6

25     *Ehret v. Uber Techs., Inc.*,
           68 F. Supp. 3d 1121 (N.D. Cal. 2014) ................................................................... 11

26     *Gyani v. lululemon athletica inc.*,
27         2025 WL 548405 (S.D. Fla. Feb. 19, 2025)........................................................... 12

28

*Hill v. Roll Int'l Corp.*,
195 Cal. App. 4th 1295 (2011)..................................................................... 10

*In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Pracs. Litig.*,
2012 WL 6062047 (C.D. Cal. Dec. 3, 2012) ............................................... 11

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs.,*
*& Prods. Liab. Litig.*,
754 F. Supp. 2d 1145 (C.D. Cal. 2010)........................................................ 15

*Johnson v. Navient Corp.*,
2025 WL 2280651 (C.D. Cal. Aug. 7, 2025) .................................................. 8

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)...................................................................... 10

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)........................................................................... 5

*Lee v. Can. Goose US, Inc.*,
2021 WL 2665955 (S.D.N.Y. June 29, 2021)................................................. 6

*Marchante v. Sony Corp. of Am., Inc.*,
2011 WL 6027602 (S.D. Cal. Dec. 5, 2011).................................................... 8

*McGinity v. Procter & Gamble Co.*,
69 F.4th 1093 (9th Cir. 2023)......................................................................... 3

*Minkler v. Apple, Inc.*,
65 F. Supp. 3d 810 (N.D. Cal. 2014) ........................................................... 14

*In re NJOY, Inc. Consumer Class Action Litig.*,
2014 WL 12586074 (C.D. Cal. Oct. 20, 2014).............................................. 11

*Opperman v. Path, Inc.*,
84 F. Supp. 3d 962 (N.D. Cal. 2015) ........................................................... 11

*Organic Consumers Ass'n v. Tyson Foods, Inc.*,
2021 WL 1267807 (D.C. Sup. Mar. 31, 2021) ........................................ 12, 13

*Renn v. Otay Lakes Brewery LLC*,
2023 WL 6050582 (S.D. Cal. Sept. 14, 2023) .............................................. 13

*Salyards ex rel. Salyards v. Metso Mins. Tamper OY*,
2005 WL 3021959 (E.D. Cal. Nov. 10, 2005) .............................................. 14

*Sanchez v. Walmart Inc.*,
733 F. Supp. 3d 653 (N.D. Ill. 2024) .............................................................. 6

*Scott v. Kuhlmann*,
　746 F.2d 1377 (9th Cir. 1984)..................................................................... 9, 10

*Senne v. Kan. City Royals Baseball Corp.*,
　591 F. Supp. 3d 453 (N.D. Cal. 2022) ........................................................... 3, 4

*Shu v. Toyota Motor Sales USA, Inc.*,
　669 F. Supp. 3d 888 (N.D. Cal. 2023) ........................................................... 7, 8

*Stanwood v. Mary Kay, Inc.*,
　941 F. Supp. 2d 1212 (C.D. Cal. 2012).......................................................... 11

*Tevra Brands, LLC v. Elanco Animal Health Inc.*,
　2025 WL 964694 (N.D. Cal. Mar. 31, 2025)................................................. 9

*United States v. Korotkiy*,
　118 F.4th 1202 (9th Cir. 2024)...................................................................... 4

*Vess v. Ciba-Geigy Corp. USA*,
　317 F.3d 1097 (9th Cir. 2003)........................................................................ 10

*Werdebaugh v. Blue Diamond Growers*,
　2013 WL 5487236 (N.D. Cal. Oct. 2, 2013).................................................. 13

*Whiteside v. Kimberly Clark Corp.*,
　108 F.4th 771 (9th Cir. 2024)........................................................................ 10

*Williams v. Beechnut Nutrition Corp.*,
　185 Cal. App. 3d 135 (1986).......................................................................... 7

*Wilson v. Hewlett-Packard Co.*,
　668 F.3d 1136 (9th Cir. 2012)........................................................................ 7

**Statutes**

Cal. Bus. & Prof. Code § 17580.5(b)(1) .......................................................... 2, 8, 10

Cal. Com. Code § 2316 .................................................................................... 14

**Other Authorities**

16 C.F.R. § 260.2 ........................................................................................ *passim*

16 C.F.R. § 260.5 ............................................................................................ 4

16 C.F.R. § 260.5(a) ....................................................................................... 2, 6

16 C.F.R. § 260.6(c) ....................................................................................... 6, 7

77 Fed. Reg. 62,122 (Oct. 11, 2012) ............................................................... 5

5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure – Civil* § 1277 (4th ed. updated May 20, 2025) ........................................................................ 10

*FTC's Policy Statement Regarding Advertising Substantiation*, 104 F.T.C. 648, 839 ................ 5

FTC, *The Green Guides: Statement of Basis and Purpose* ............................................................ 6

v

1

## INTRODUCTION

Plaintiffs' Opposition concedes all the points requiring dismissal of the FAC. Plaintiffs do not contest that Apple's detailed product environmental reports disclosed how Apple substantiated its claims that each Apple Watch at issue here is carbon-neutral—through Verra's robust verification methodology, reconfirmed by Apple's independent auditors. Plaintiffs also "do not dispute" that the high-quality carbon-offset projects Apple invested in "were certified by Verra" or that independent auditors separately determined that the Apple Watches[1] are carbon-neutral. D.I. 44 ("Opp.") at 18. Plaintiffs further do not disagree that Verra's verification and Apple's additional, independent audits provided a reasonable basis to support Apple's environmental claims at the time they were made. Finally, Plaintiffs do not dispute that the carbon credits in Verra's buffer pool, which exceed 75 million, are more than sufficient to replace any credits that Plaintiffs contest here. These missing allegations are fatal to Plaintiffs' theory of liability, and the Court's inquiry can end here.

It is immaterial that Plaintiffs' preferred methodology (armchair analysis of satellite imagery) leads them to a different conclusion than that reached by Verra and confirmed by its independent auditors. Apple never said it was relying on Plaintiffs' methodology, and it was not. Rather, Apple told consumers it used Verra and Apple's independent auditors to ensure it invested in enough carbon credits to make the Apple Watches carbon neutral. Plaintiffs knew this because they allege that they reviewed Apple's product environmental reports before purchasing the Watches. *See* D.I. 24 ("FAC") ¶¶ 52, 59, 60 nn.22–24, 117. If Plaintiffs disapproved of the verification methods that Apple disclosed, they could have declined to buy the products. They cannot now claim to be misled because Apple did exactly what it said it did.

Plaintiffs' arguments rest on their contention that Apple had to verify carbon credits on its own and not involve independent third parties at all. As explained below, there is no such requirement for an environmental marketing claim to come within the Green Guides' safe harbor. And for good reason: virtually no company could meet the burden Plaintiffs would impose on them to conduct their own independent scientific audits into the legitimacy of a carbon offset project before investing into it.

---

[1] As defined in Apple's Motion to Dismiss, D.I. 30 ("Mot."), at 1, "Apple Watches" are the Apple Watch Series 9, Apple Watch Ultra 2, and Apple Watch SE (2nd Generation).

1    Plaintiffs' claims masquerade as environmental advocacy.  They are, in reality, a full-frontal attack on

2    one of the most "important" tools available to mitigate climate change.  D.I. 43-1 ("EDF Br.") at 5.

3          Apple is a leader in promoting and investing in environmental initiatives to protect the planet.

4    Apple invested in carbon credits from a best-in-class provider and paid to reconfirm its carbon-neutral

5    claims with an independent auditor.  And Apple disclosed to consumers in detail how it achieved and

6    substantiated its claims of carbon neutrality for Apple Watches.  Apple had zero incentive to buy carbon

7    credits that do not reflect real emission offsets.  As the Environmental Defense Fund correctly warns in

8    its *amicus* brief supporting Apple, accepting Plaintiffs' misguided arguments would "chill corporate

9    action" necessary to tackle the effects of climate change.  *Id.* at 2.

10                                              **ARGUMENT**

11         Plaintiffs fail to rebut any of the grounds for dismissal established in Apple's Motion.  Apple's

12   environmental representations comply with the FTC's Green Guides, which renders Plaintiffs' claims

13   nonactionable under California law—a point that may properly be resolved on a motion to dismiss.

14   Plaintiffs' armchair methodology is legally insufficient to deprive Apple's claims of this protection.

15   Plaintiffs further mischaracterize the buffer pool, a Verra-built-in failsafe that makes it impossible for

16   Plaintiffs to plead any plausible deception here.  Plaintiffs' allegations are also too bare to satisfy the

17   Rule 9(b) pleading standard or establish Article III standing.  And Plaintiffs have not sufficiently

18   pleaded their ancillary claims for violations of the UCL, unjust enrichment, and breach of warranty.

19   **I.    The Green Guides Render Apple's Carbon-Neutral Claims Nonactionable**

20         As Plaintiffs recognize, California law creates a "safe harbor" that renders nonactionable any

21   environmental marketing claim that conforms to the standards of the FTC's Green Guides.  Opp. at 10–

22   12; Cal. Bus. & Prof. Code § 17580.5(b)(1).   Plaintiffs argue unconvincingly that their preferred

23   methodology removes Apple's carbon-neutral claims from the Guides' safe harbor.

24         The Green Guides require marketers to "ensure that all reasonable interpretations of their claims

25   are truthful, not misleading, and supported by a reasonable basis."  16 C.F.R. § 260.2.  Acknowledging

26   "the complexities of carbon offsets," the Guides also instruct sellers to "employ competent and reliable

27   scientific and accounting methods to properly quantify claimed emission reductions."  *Id.* § 260.5(a).

28

                                                    2

1    The environmental claims about Apple Watches that Plaintiffs challenge easily satisfy the Green

2    Guides, so Plaintiffs' claims fail as a matter of law.

3        **A.    Apple's carbon-neutral claims are protected by the safe harbor**

4        Apple's "claims are truthful, not misleading, and supported by a reasonable basis" because

5    Apple achieved carbon neutrality in precisely the way that it disclosed in its reports, which Plaintiffs

6    allegedly reviewed before purchasing the Apple Watches.  16 C.F.R. § 260.2; *see also* D.I. 30-3, at 36–

7    37, 46, 49; D.I. 30-4, at 3–4, 13, 16–17, 20–21, 30, 33; FAC ¶¶ 52, 59, 60 nn.22–24, 117.  Those reports

8    disclose how Apple substantiated its claims.  For example, the Apple Watch Series 9 report explains

9    that "Apple uses [carbon] credits from projects that align with international standards such as Verra,"

10   and that "Apple uses an *independent third party* to confirm that the correct number [of credits] have

11   been retired."  D.I. 30-3, at 36 (emphasis added); *see also id.* D.I. 30-4, at 3, 20.  The reports also detail

12   the specific carbon offset project applied to each product, and where to find more information about it.

13   D.I. 30-3, at 46; D.I. 30-4, at 13, 30.  And the final page of each report reproduces a certification from

14   one of Apple's independent auditors, SCS Global, affirming that the product is carbon neutral.

15   D.I. 30-3, at 49; D.I. 30-4, at 16–17, 33.  So when Plaintiffs purchased Apple Watches, they knew the

16   carbon credits were Verra-certified and confirmed by "an independent third party."  D.I. 30-3, at 36;

17   D.I. 30-4, at 3, 20.  The Green Guides' safe harbor makes these representations nonactionable.

18       Plaintiffs contend Apple's claims fall outside the safe harbor because, according to the results

19   of *Plaintiffs' preferred methodology*—unlike Verra's and Apple's independent auditors'—the projects

20   did not produce enough offsets to make the products carbon neutral.  But "it is not plausible that a

21   consumer would be misled into thinking that [Apple] undertook its carbon-footprint calculation in any

22   manner other than the one it describes in its literature, and Plaintiff[s] ha[ve] not suggested that [Apple]

23   does not in fact do it in that manner."  *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 150 (S.D.N.Y.

24   2022); *see also McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097–99 (9th Cir. 2023) (plaintiff

25   cannot adopt own interpretation of a marketing claim where the product explained the claim's meaning).

26   Apple disclosed that it used carbon credits that aligned with "standards such as Verra" (which is

27   undisputed) and that its claims of carbon neutrality as to the Apple Watches were confirmed by "an

28   independent third party" (again, undisputed). Plaintiffs' reliance on *Senne v. Kansas City Royals*

3

1   *Baseball Corp.*, 591 F. Supp. 3d 453, 541 (N.D. Cal. 2022) is therefore misplaced.  Opp. at 10.  *Senne*

2   holds that, when a regulation enumerates distinct elements to define the term "employee," each element

3   must be met for a person to qualify as an "employee."  591 F. Supp. 3d at 540–41.  The Green Guides'

4   provisions include no such separate enumeration, but more importantly Apple met the standard set out

5   in the Green Guides: its claims were truthful, not misleading, and supported by a reasonable basis.

6        According to Plaintiffs, it is not enough for Apple to disclose how it substantiates its claims of

7   carbon neutrality consistent with industry best practices.  Instead, Plaintiffs contend, investors in credits

8   like Apple must prove *by themselves* that the credits are backed by sufficient carbon offsets—even when

9   they disclose that they relied on independent auditors.  Opp. at 9–11.  Plaintiffs' reading conflicts with

10  the text, context, and rationale underpinning the Green Guides.  When enacting the Guides, the FTC

11  expressly recognized "the complexities of carbon offsets."  16 C.F.R. § 260.5.  For good reason, the

12  Guides do not dictate how sellers of credits must verify carbon impacts.  The Guides tell the sellers only

13  to "employ competent and reliable … methods."  *Id.*  A claim about carbon offsets is therefore "truthful,

14  not misleading, and supported by a reasonable basis" if the marketer discloses how the claim was

15  substantiated, and the substantiation methodology is reasonable.  16 C.F.R. § 260.2; *see also United

16  States v. Korotkiy*, 118 F.4th 1202, 1213 (9th Cir. 2024) (When interpreting the Guides, the Court's

17  "task is to fit, if possible, all parts into an harmonious whole.").  That is exactly what Apple did.  It is

18  implausible that a reasonable consumer would read Apple's product environmental reports and infer

19  that Apple deployed its own *in-house* teams to sites "in southwestern Kenya or on the high plateau of

20  northwestern China" to calculate carbon offsets.  EDF Br. at 14.  Nor, under the Guides, would Apple's

21  own assessment of carbon impact be preferable to the market-leading methods employed by Verra and

22  Apple's independent auditors.

23       If Plaintiffs are dissatisfied with Apple's disclosed verification methods, they could have

24  decided not to purchase the certified products.  Apple gave Plaintiffs all the information they needed to

25  make that choice *before* they bought Apple Watches.  But Plaintiffs cannot do what they attempt to do

26  here: buy the products anyway and then claim they were misled because they disagree with Verra or

27  Apple's independent auditors.  The Green Guides do not expose carbon offset claims to a heckler's

28  veto.  Rather, as the FTC made clear in its 1984 policy statement that would ultimately serve as

§ 260.2's basis, the fundamental principle underlying the regulation is "substantiation before disseminat[ion]"—that is, "advertisers [must] have a reasonable basis for advertising claims before they are disseminated." *FTC's Policy Statement Regarding Advertising Substantiation*, 104 F.T.C. 648, 839; *see also* 77 Fed. Reg. 62,122, 62,125 (Oct. 11, 2012) (citing 104 F.T.C. at 839 as the basis for § 260.2).

Apple not only had a reasonable basis for its carbon-neutral claims, but it also disclosed that basis. Plaintiffs do not dispute that Verra's methodology meets or exceeds international standards.[2] In fact, Plaintiffs themselves described Verra as "one of the world's leading voluntary carbon offset programs." D.I. 1 ¶ 47. Plaintiffs also "do not dispute" that the carbon-offset "projects were certified by Verra." Opp. at 18. Nor do Plaintiffs allege Apple's independent auditors failed to investigate or certify its carbon-neutral claims. Plaintiffs merely contend that their preferred methodology gets them to a different result—and, according to Plaintiffs, this disagreement is sufficient to survive a motion to dismiss. *See id*. But Apple never said it relied on Plaintiffs' alternative methodology to substantiate its claims, so Plaintiffs' methodology cannot make Apple's claims false or misleading. Instead, Apple disclosed that it relied on Verra and an independent auditor. There is no dispute that Apple substantiated the claims in the way that it disclosed or that the means of substantiation Apple used and disclosed provide a reasonable basis for Apple's claims.

---

[2] Verra's documents, cited throughout the FAC and attached as Exhibits 1–32 to the Singh Declaration, D.I. 30-2 to 30-7, describe Verra's system of checks and balances, *e.g.*, D.I. 30-5, at 243–50; D.I. 30-6, at 38–57, 80–87, 112–21, 158–66, 196–205, 326–82, 505–74, 576–751. Plaintiffs' arguments (Opp. at 8–9) against Apple's request to judicially notice these exhibits (D.I. 30-8) fail. Under both Federal Rule of Evidence 201 and the incorporation-by-reference doctrine, the Court may consider them.

First, Plaintiffs argue that, under Rule 201, the exhibits—largely Verra-published materials explaining its registry and processes—cannot be used to "show that the [Verra] projects generated legitimate carbon credits." Opp. at 9. But Apple does not rely on the materials for that purpose. Rather, Apple seeks judicial notice solely to help demonstrate that it had a reasonable basis to substantiate its claims. Plaintiffs do not allege Verra fails to use these methods. More importantly, Plaintiffs do not allege that Apple knew or should have known that Verra did not use its described methodology.

Second, the exhibits are properly noticed under the incorporation-by-reference doctrine because the FAC expressly references them, *e.g.*, FAC ¶¶ 2, 3, 46, 56, 57, 60, 71, 78, 80, 92, 100, even citing these materials to support Plaintiffs' allegation that the projects were "certified by Verra," *id.* ¶¶ 70, 71, 92. The problem, however, is that the FAC selectively quotes these materials, ignoring the documents that detail Verra's procedures and that undercut Plaintiffs' allegations that Apple lacked adequate substantiation for its carbon-neutral claims. Application of the doctrine is thus warranted and necessary under *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("The [incorporation-by-reference] doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.").

1    Here, like in *Dwyer*, Plaintiffs' allegations are "simply a critique of [Verra's] methodology.…

2  There may well be room for improvement in [that methodology], but that does not suggest that reliance

3  on the current standard is deceptive." 598 F. Supp. 3d at 150–51. Numerous cases are in accord. *See,*

4  *e.g.*, *Sanchez v. Walmart Inc.*, 733 F. Supp. 3d 653, 671 (N.D. Ill. 2024) ("Plaintiff takes issue with

5  MSC's sustainability representation because it certifies fisheries that engage in unsustainable practices,

6  but Walmart's representation remains true—the product meets the Council's standards."); *Lee v. Can.*

7  *Goose US, Inc.*, 2021 WL 2665955, at *6 (S.D.N.Y. June 29, 2021) ("[T]he alleged inadequacy of the

8  [international humane] standards imposed is not enough to render the statements actionable under the

9  [law]."); *Dinan v. SanDisk LLC*, 844 F. App'x 978, 979–80 (9th Cir. 2021). Plaintiffs' attempts to

10  distinguish *Dinan* fail. Opp. at 13. Like the Defendant in *Dinan*, as established above, Apple has

11  complied with the Green Guides by using multiple reliable and scientifically sound substantiation

12  methods. Plaintiffs' use of a different method does not make Apple's claims actionable.

13    These decisions track the Green Guides, which recognize the "complexities of carbon offsets"

14  and give sellers like Verra the flexibility to employ methods according to developing industry standards.

15  16 C.F.R. § 260.5(a). In fact, the FTC intentionally chose not to prescribe verification methods, noting

16  that the "FTC Act gives marketers *the flexibility to choose the substantiation method they prefer* as long

17  as it meets the basic standards under the [FTC] Act."[3] Plaintiffs' my-way-or-the-highway approach to

18  carbon-offset claims is the opposite of what the Green Guides require.

19    **B.    Plaintiffs' arguments that the Green Guides do not apply are meritless**

20    Pointing to 16 C.F.R. § 260.6(c), Plaintiffs contend that the § 260.2 safe harbor is "inapplicable"

21  because Apple "outsource[d]" its obligation to substantiate its carbon-neutral claims. Opp. at 11. The

22  provision Plaintiffs cite states that a "[t]hird-party certification does not eliminate a marketer's

23  obligation to ensure that it has substantiation for all claims reasonably communicated by the

24  certification." 16 C.F.R. § 260.6(c). But Plaintiffs ignore that Apple did have "substantiation for all

25  claims." *Id.* Apple substantiated its claims involving carbon credits through Verra's robust verification

---

[3] FTC, *The Green Guides: Statement of Basis and Purpose* 71, https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguidesstatement.pdf (emphasis added).

1   methodology.  And Apple obtained further substantiation by hiring independent auditors, such as SCS

2   Global, to confirm the Apple Watches are carbon neutral.[4]  *See, e.g.*, D.I. 30-3, at 49; D.I. 30-4, at 16–

3   17, 33.  Apple also disclosed to consumers how it substantiated the claims in detailed product

4   environmental reports.  Section 260.6(c) is inapplicable under these circumstances.

5       None of that is good enough for Plaintiffs because they read the Guides to mean that marketers

6   must verify carbon credits *by themselves*, without any involvement of third parties.  The Guides contain

7   no such requirement, and misinterpreting them in the manner Plaintiffs suggest would strike a death

8   blow to the carbon-credit market, disabling an important tool for resisting climate change.  Few if any

9   U.S. marketers have the resources or expertise to prove the carbon impacts of projects in China, Kenya,

10  and other remote locations.  If companies can depend only on carbon credits they can verify themselves,

11  they will not buy credits.  That would deprive afforestation and other decarbonization projects of critical

12  funding.  Apple invested in carbon credits from a best-in-class provider and then reconfirmed its carbon-

13  neutral claims by engaging independent auditors.  If that is not substantiation, nothing is.

14      Plaintiffs mistakenly rely on *Berrin v. Delta Air Lines, Inc*, 2024 WL 3304815 (C.D. Cal. Mar.

15  28, 2024), *see* Opp. at 12, because, unlike the FAC here, *Berrin*'s complaint alleged pages of facts

16  detailing why Delta knew its carbon-neutral claims were false, including an allegation that Delta's CEO

17  personally knew the relevant information, *see* D.I. 1 ¶¶ 68–70, No. 2:23-cv-04150 (C.D. Cal. May 30,

18  2023).  The FAC in this case contains no similar well-pleaded allegations about Apple.  All Plaintiffs

19  can muster is the unadorned assertion that "Apple knew or should have known that its representations

20  and omissions were untrue and misleading" at the time it made its carbon-neutral claims.  FAC ¶¶ 156,

21  196, 229; *see id.* ¶¶ 182, 225.  Regardless of whether the Rule 8 or 9(b) pleading standard applies to

22  this allegation, abundant case law makes clear that such conclusory assertions are entitled to no weight.[5]

___

[4] Certificates of this additional, independent verification of the Apple Watches' carbon neutrality are included in the published product environmental reports for the Apple Watches, which each Plaintiff allegedly reviewed before purchasing the Watches.  *E.g.*, FAC ¶¶ 52, 59, 60 nn.22–24, 117.  Yet Plaintiffs contend that Apple "undertook no independent effort."  Opp. at 2, 11.  This conclusory assertion is false and unsupported by any well-pleaded allegation in the FAC.

[5] *See, e.g.*,  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145–48 (9th Cir. 2012); *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 565 (N.D. Cal. 2019) ("[E]ven under Rule 8's relaxed pleading standard," "vague, sweeping statements"—for example, that the defendant "should have known"—are "insufficient" to state a claim); *Shu v. Toyota Motor Sales USA, Inc.*, 669 F. Supp. 3d 888, 901 (N.D.

1     Citing *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1167 (9th Cir. 2012), Plaintiffs also

2     say that Apple's marketing claims cannot qualify for safe-harbor protection because § 260.2 supposedly

3     does not "expressly permit" the claims (as opposed to merely not prohibiting them).  Opp. at 11–12.

4     Plaintiffs are again wrong.  California law expressly recognizes compliance with the Green Guides as

5     a bar to Plaintiffs' claims.  Cal. Bus. & Prof. Code § 17580.5(b)(1).  Apple's carbon-neutral claims

6     conform to the Guides' standards, so those claims are protected by the safe harbor.

7         **C.      Accepting the results of Plaintiffs' methodology would not undermine Apple's
                    carbon-neutral claims because the buffer pool has enough replacement credits**

8

9         Verra's robust methodology for verifying carbon impacts includes an extensive buffer pool of

10    additional credits held in reserve.  *E.g.*, D.I. 30-3, at 11, 30 n.17; EDF Br. at 2–3, 12 & n.25.  The buffer

11    pool contains over 75 million credits, allowing Verra to immediately replace any credits determined

12    post-investment not to correspond to real emissions offsets.  Mot. at 17–18.  This additional failsafe

13    ensures that responsible marketers like Apple can rely on Verra-certified credits.  Thus, as Apple's

14    Motion establishes, Plaintiffs' armchair calculations "cannot allege any set of facts upon which Apple's

15    carbon neutral representations would be false."  *Id.*  Even if every single Verra-related credit Apple

16    invested in (over 2 million since 2020, *see* D.I. 30-5, at 197) were declared illegitimate—and so far,

17    none have been—Verra's 75 million+ credit buffer pool would cover the deficit, and Apple's carbon-

18    neutral claims would remain true.  Mot. at 17–18.

19        Plaintiffs offer two unpersuasive responses.  First, Plaintiffs say that "Apple's buffer pool

20    argument is based on its own self-serving statements … , rather than any sources that explain how the

21    buffer pool operates."  Opp. at 15.  But Verra's own documents, including its VCS Standard, detail how

22    the buffer pool works.  Plaintiffs cited Verra documents in their FAC.  And there is no well-pleaded

23    allegation that the buffer pool operates any differently than as Verra describes.

24

25    Cal. 2023) ("[Plaintiffs] contend that the complaint alleges pre-sale knowledge.  It does not (other than
       in conclusory allegations that have no predicate fact allegations).");  *Johnson v. Navient Corp.*, 2025

26    WL 2280651, at *4 (C.D. Cal. Aug. 7, 2025) ("Plaintiffs' broad contention that the representative knew
       the representations were false, thus fails to meet the particularity requirement of Rule 9(b) as it is

27    conclusory …." (internal quotation marks omitted));  *see also Marchante v. Sony Corp. of Am., Inc.*,
       2011 WL 6027602, at *3 (S.D. Cal. Dec. 5, 2011) ("[A] manufacturer has no duty to disclose facts of

28    which it was unaware." (internal quotation marks omitted)).

APPLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS          CASE NO. 5:25-cv-02043-NW

Second, Plaintiffs mischaracterize the buffer pool as credits that may be earned in the future, ignoring that the pool's credits have *already* been earned. The buffer pool is not a "retroactive[]" cure, *contra* Opp. at 16: it is a built-in failsafe that existed at the time Apple invested in its credits and when Apple made its true carbon-neutral claims, *e.g.*, D.I. 30-3, at 11, 30 n.17.

Plaintiffs compare the buffer pool to "a company that falsely represents its financial statements on the grounds that it might eventually earn enough revenue to make the original falsehood 'true.'" Opp. at 16. The analogy is inapt because the buffer pool "revenues" are already in the bank. As Verra's documentation explains, the pool includes credits already earned by prior offsets, not credits that might be earned in the future. D.I. 30-3, at 11, 30 n.17; Verra's VCS Standard v.4.7.4, at 5–6, 11, 15 (cited at EDF Br. at 12 n.25). The buffer pool credits are not like contingent future revenues but rather like linked checking and savings accounts. If a check is written when the checking account has insufficient funds, the savings account automatically covers the difference. As long as the savings account has sufficient funds, the check will not bounce, and the check's recipient is not left wanting.

The FAC does not allege that the over 75 million credits in the buffer pool are insufficient to replace any credits from the approximately 2 million that Apple invested in. For this reason too, Plaintiffs have not alleged that Apple's representations are false, misleading, or lack a reasonable basis.

Relatedly, Plaintiffs' "calculations," *see* Opp. at 7–8 (citing FAC ¶¶ 119-20), rely on unverified, third-party reporting to declare the number of watches sold by Apple in 2024. Such third-party speculation cannot be a basis for a plausible claim. But even assuming that the unsubstantiated third-party account is true, Plaintiffs wholly fail to justify their number-out-of-a-hat assertion that 30% of all watches sold by Apple are marketed as carbon neutral. Combining unverified third-party speculation with a percentage pulled out of thin air does not create a plausible allegation.

### D. Compliance with the Green Guides, even if an affirmative defense, may be raised in a motion to dismiss and may be used to dispose of Plaintiffs' claims here

Plaintiffs argue that compliance with the Guides "is an affirmative defense that cannot be resolved on a motion to dismiss." Opp. at 12–13. But Plaintiffs overlook that "a party may assert [a defense] in a motion to dismiss where 'the defense raises no disputed issues of fact.'" *Tevra Brands, LLC v. Elanco Animal Health Inc.*, 2025 WL 964694, at *3 (N.D. Cal. Mar. 31, 2025) (quoting *Scott v.*

1   *Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984)); *see also* 5 Charles A. Wright & Arthur R. Miller,

2   *Federal Practice & Procedure – Civil* § 1277 (4th ed. updated May 20, 2025).  That explains why

3   courts have applied the Green Guides safe harbor to dismiss complaints at the motion-to-dismiss stage,

4   and why courts of appeal have affirmed.  *See, e.g.*, *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771,

5   785 (9th Cir. 2024) (applying Cal. Bus. & Prof. Code § 17580.5(b)(1) to affirm dismissal because the

6   "Products track the Green Guides' recommendation[s]"); *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th

7   1295, 1298, 1301–05 (2011) (affirming dismissal because the products complied with the Green

8   Guides); *Duchimaza v. Niagara Bottling, LLC*, 619 F. Supp. 3d 395, 414–15 (S.D.N.Y. 2022) (granting

9   Rule 12(b)(6) motion because the challenged claims fell within those that the "Green Guides permit

10  marketers to make").  Plaintiffs have not raised any disputed issue of fact concerning the safe harbor,

11  so the FAC should be dismissed.

12  **II.     Plaintiffs Have Not Satisfied the Rule 9(b) Pleading Standard**

13         Plaintiffs argue the Rule 9(b) pleading standard—which requires plaintiffs to plead the "who,

14  what, when, where, and how" of their allegations of fraud—does not apply to them. *Vess v. Ciba-Geigy*

15  *Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Instead, they claim the FAC is sufficient to put Apple

16  on notice because it alleges the dates of their Apple Watch purchases and that they "were aware of"

17  Apple's carbon neutral representations at the time.  Opp. at 19–20.  Not so.

18         The case law Plaintiffs advance is inapposite based on Plaintiffs' allegations here.  *Bronson v.*

19  *Johnson & Johnson, Inc.*, which Plaintiffs cite in support of their alternative Rule 9(b) standard,

20  expressly held that the "who, what, when, where and how" of the claim is required to satisfy Rule 9(b).

21  2013 WL 5731817, at *6 (N.D. Cal. Oct. 22, 2013).  Plaintiffs' allegations fail to meet this mark because

22  they make only boilerplate allegations that "they had viewed and were aware of Apple's

23  representations" and that "each Plaintiff relied on Apple's representations." FAC ¶¶ 52, 59.  Even after

24  amending the complaint, Plaintiffs have not alleged the specifics of each of their claims, including what

25  specific statements each Plaintiff relied on; when or where they saw those statements; what material

26  facts were omitted from those statements; and how those statements influenced their purchasing

27  decisions.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (affirming dismissal of

28  consumer deception claims because plaintiffs failed to allege defendant's fraud with sufficient

specificity under Rule 9(b)).  Plaintiffs' other cited authority is also inapposite because in each case, the plaintiffs alleged their claims with much more specificity than Plaintiffs do here.  *See Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 978 (N.D. Cal. 2015) (holding that amended allegations "significantly improve upon the single and bare allegation that Plaintiffs viewed Apple's website, saw in-store advertisements, and/or [were] aware of Apple's representations regarding the safety and security of the iDevices prior to purchasing their own iDevices." (alteration in original) (quotation marks omitted)); *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1129 (N.D. Cal. 2014) (plaintiff specifically alleged that "on September 9, 2012 she used the App and paid the 20% additional charge in reliance on Uber's representation that it was a 'gratuity.'"); *In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Pracs. Litig.*, 2012 WL 6062047, at *15 (C.D. Cal. Dec. 3, 2012) ("The FACC also explains which type of advertising (infomercial, online, etc.) each plaintiff viewed. This is sufficient to satisfy Rule 9(b).").

Plaintiffs claim that courts have approved generalized allegations like theirs under Rule 9(b) "in the context of a long-running and sustained advertising campaign."  Opp at 20.  But California courts have narrowly applied the cases Plaintiffs rely on, like *Opperman* and *In re Oreck*, holding that even in the context of a long-term advertising campaign, plaintiffs must at least specify the representations they individually saw or heard.  For example, in *In re NJOY, Inc. Consumer Class Action Litigation*, 2014 WL 12586074 (C.D. Cal. Oct. 20, 2014), the court held that, despite a long-running advertising campaign, plaintiffs must still "plead separately and with particularity their individual exposure to the purportedly deceptive advertising campaign."  *Id.* at *10.  And in *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212 (C.D. Cal. 2012), the court similarly held that while a plaintiff need not plead their claims with "an unrealistic degree of specificity," they must still plead the basic "who, what, when, where, and how" of the underlying misrepresentations alleged.  *Id.* at 1220.  Plaintiffs here have failed to do so.  They cannot satisfy the Rule 9(b) standard by merely alleging, as they do here, that Apple made representations they relied on.[6]  This Court should therefore dismiss Plaintiffs' claims for failure to satisfy the Rule 9(b) pleading standard.

---

[6] Several named plaintiffs also purchased their Apple Watches shortly after Apple released its carbon neutral versions of those Apple Watches, including mere days or weeks after release. FAC ¶¶ 15–23. These named plaintiffs cannot claim that they were exposed to a long-running or sustained advertising campaign prior to purchasing their Apple Watches.

1   **III.    Plaintiffs Have Not Plausibly Alleged Article III Standing to Challenge Corporate**
2   **Carbon Neutrality or for Products Plaintiffs Did Not Purchase**

3    Plaintiffs argue they have Article III standing with regard to Apple's representations of

4   *corporate*—as opposed to product-specific—carbon neutrality because those statements supposedly

5   misled them to purchase Apple products at a price premium they otherwise would not have paid.

6   Opp. at 21.  That is not enough to confer standing.  *Blackburn v. Etsy, Inc.*, 2023 WL 9105662 (C.D.

7   Cal. Oct. 12, 2023) and *Gyani v. lululemon athletica inc.*, 2025 WL 548405, at *5 (S.D. Fla. Feb. 19,

8   2025) are directly on point.[7]  In both cases, the courts held the plaintiffs had not adequately alleged how

9   general statements concerning the companies' corporate-level environmental efforts had a sufficient

10  nexus to the products the plaintiffs had purchased.  *Blackburn.*, 2023 WL 9105662, at *5 ("[T]here are

11  no well-pleaded facts that plausibly support an inference that the alleged misstatements about the

12  efficacy of Etsy's carbon offset program caused Plaintiffs or the class they seek to represent to pay a

13  premium *for the goods they purchased.*" (emphasis added)); *Gyani*, 2025 WL 548405, at *5 ("Plaintiffs'

14  allegations fail to tie any aspect of Lululemon's statements to the purported price premium that

15  Plaintiffs paid *for Lululemon's products.*" (emphasis added)).

16   The deficiency in the FAC that precludes Article III standing is not Plaintiffs' failure to plead

17  that they care about environmental sustainability, or that they believed Apple's products were

18  sustainable—as Plaintiffs argue.  It is that "[t]he Amended Complaint contains nothing more than a

19  subjective belief that plaintiffs paid a price premium."  *Gyani*, 2025 WL 548405, at *4.  Nor have

20  Plaintiffs alleged any facts suggesting that the purported price premium they paid for corporate-level

21  statements is different from the premium they allege for product-specific carbon-neutral claims about

22  the Apple Watches that Plaintiffs purchased.  Without any factual allegations demonstrating a plausible

23  nexus between Apple's corporate representations and the alleged price premium, Plaintiffs cannot

24  demonstrate an economic injury sufficient to confer Article III standing.  Plaintiffs' cited authority also

25  does not demonstrate otherwise.  *Organic Consumers Ass'n v. Tyson Foods, Inc.*, 2021 WL 1267807

26  (D.C. Sup. Mar. 31, 2021) is inapposite because the cited analysis concerns whether a reasonable

27  ───────────────

28  [7] *Blackburn* similarly concerned Etsy's representations that it purchased and retired carbon credits to offset 100% of emissions and thus represented its operations as carbon neutral.

consumer would be deceived by the defendant's statement, and not the Article III standing analysis. See *id.* at *3 ("Therefore, the Court disagrees and finds that plaintiffs' claims are actionable under the CPPA as the allegations about consumer understanding are plausible."). *Berrin v. Delta Air Lines, Inc.*, 2024 WL 5371340 (C.D. Cal. Dec. 11, 2024), is also inapposite because airlines sell only one service to consumers—flights—so any statement about Delta's carbon neutral operations would inherently have a clear nexus to that service. Thus, this Court should dismiss Plaintiffs' claims to the extent they challenge Apple's corporate representations.

Plaintiffs also lack Article III standing to bring claims on behalf of class members that purchased non-Apple Watch products. Plaintiffs only have standing to bring claims for products they did not purchase "so long as the *products and alleged misrepresentations* are substantially similar." *Renn v. Otay Lakes Brewery LLC*, 2023 WL 6050582, at *3 (S.D. Cal. Sept. 14, 2023) (emphasis added) (internal quotations omitted). Here, there is no substantial similarity between the Apple Watch products that Plaintiffs allegedly purchased and any non-Apple Watch products other class members may have purchased because each product has its own unique carbon emissions footprint, portfolio of carbon credits used to offset those emissions, and environmental claims made with respect to the products. Mot. at 22. Plaintiffs' Opposition does not address these discrepancies, so Plaintiffs have conceded that the products are not substantially similar. *See Citizens for Free Speech, LLC v. Cnty. of Alameda*, 338 F. Supp. 3d 995, 1005 (N.D. Cal. 2018) ("By failing to respond to the County's contention, Plaintiffs have effectively conceded its validity."), *aff'd*, 953 F.3d 655 (9th Cir. 2020).

Plaintiffs argue their allegations are sufficient because they allege that all class members suffered the same price premium *injury* by purchasing Apple's products. This misstates the law by entirely omitting the well-established requirement that the *products* purchased must be substantially similar as well. The very cases Plaintiffs rely on recognize that both the product purchased *and* the alleged injury must be substantially similar in order to establish Article III standing. In *Werdebaugh v. Blue Diamond Growers*, 2013 WL 5487236, at *13 (N.D. Cal. Oct. 2, 2013), the court held that a plaintiff has standing for claims relating to products they did not purchase only if "the products and alleged misrepresentations are substantially similar" to the products that they did purchase. And in *Brazil v. Dole Food Co., Inc.*, 2013 WL 5312418, at *7 (N.D. Cal. Sept. 23, 2013), the court noted that

13

1    courts have imposed the "substantially similar" standard in order to ensure that the plaintiff is seeking

2    to represent only those individuals who have suffered "essentially the same injury as the plaintiff."

3    Because Plaintiffs have conceded that the products at issue are not substantially similar, they lack

4    Article III standing to assert any claims against Apple based on products other than the Apple Watches.

5    **IV.    Plaintiffs Have Not Plausibly Stated a Claim Under the UCL**

6         Plaintiffs argue that their UCL claims are adequately pleaded solely because their other

7    consumer deception claims are adequately pleaded.  But as discussed, Plaintiffs have failed to state any

8    other consumer deception claim.  *See* Mot. at 12–20; *supra* Sections I–III.  Furthermore, Plaintiffs

9    entirely ignore Apple's other arguments—that Plaintiffs fail to adequately allege unfairness under any

10   of the court-created tests, and that Plaintiffs already have adequate remedies at law and are not entitled

11   to equitable restitution.  As such, they have conceded these points and the Court should dismiss the

12   UCL claim.  *See Citizens for Free Speech, LLC,* 338 F. Supp. 3d at 1005.

13   **V.    Plaintiffs Have Not Plausibly Stated a Claim for Breach of Express Warranty**

14        Despite the language in Apple's Hardware Warranty for the Apple Watch stating it is

15   "EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES . . . EXPRESS OR IMPLIED,"

16   D.I. 30-7, at 532, Plaintiffs still argue that they have adequately pleaded a breach of express warranty

17   claim premised on Apple's carbon neutral representations.  However, they fail plead *any* of the requisite

18   elements for their claim: (1) the exact terms of the warranty; (2) reasonable reliance; and (3) a breach

19   of warranty which proximately caused plaintiff's injury.  *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810,

20   817 (N.D. Cal. 2014) (citing *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986)).

21        First, Plaintiffs fail to plead an express warranty.  As stated above, Apple's Hardware Warranty

22   is exclusive to all other warranties, express or implied, and thus there is no express warranty upon which

23   Plaintiffs can base their claim.  Plaintiffs claim Apple cannot rely on its Hardware Warranty as a shield

24   to disclaim liability, Opp. at 24, but this misstates the law.  "A defendant can exclude express and

25   implied warranties if the disclaimer is conspicuous."  Cal. Com. Code § 2316; *Salyards ex rel. Salyards*

26   *v. Metso Mins. Tamper OY*, 2005 WL 3021959, at \*9 (E.D. Cal. Nov. 10, 2005).  Here, the governing

27   Hardware Warranty clearly and conspicuously informs consumers that it is exclusive and in lieu of all

28   other warranties, and is thus controlling.  Indeed, courts have held that exclusive warranty provisions

14

can exclude other alleged warranties based on representations by the seller. *See Bridgestone/Firestone, Inc. v. Oracle Corp.,* 1991 WL 526298, at *4 (N.D. Cal. Nov. 18, 1991).

Second, Plaintiffs fail to plead reasonable reliance. Plaintiffs allege only that they saw Apple's carbon neutral representations but do not specify which of those representations they were aware of or relied upon when making their purchase. As such, they have not pleaded reliance on any of Apple's carbon neutral representations. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1183 (C.D. Cal. 2010) ("California law does not permit Plaintiffs, in the absence of specific allegations that they were aware of the statements made in a national advertising campaign, to base their express warranty claims on statements made in that national advertising campaign.").

And third, Plaintiffs fail to plead proximate causation. As stated above, Plaintiffs have failed to allege any express warranty based on Apple's carbon neutral representations. Thus, Plaintiffs can allege a breach of express warranty only if they can show that the Apple Watches they purchased suffer from "a defect in materials and workmanship." D.I. 30-7, at 533. Plaintiffs do not allege any such defects in the FAC, and thus they do not allege any breach of express warranty here.

Plaintiffs therefore have failed to adequately plead their breach of warranty claim, and this Court should dismiss the breach of express warranty claim. Separately, Plaintiffs do not address Apple's argument that they have failed to state a claim for implied breach of warranty. As such, they have conceded this point and the Court should dismiss the breach of implied warranty claim as well. *See Citizens for Free Speech, LLC*, 338 F. Supp. 3d at 1005.

## VI. Plaintiffs Do Not Respond to Apple's Unjust Enrichment Arguments

Lastly, Plaintiffs make no attempt to address Apple's argument that they have failed to state a claim for unjust enrichment. They have therefore conceded this point, and the Court should dismiss the unjust enrichment claim. *Id.*

## CONCLUSION

For the foregoing reasons, and for those stated in Apple's Motion to Dismiss, D.I. 30, Apple respectfully submits that the Court should dismiss all of Plaintiff's claims with prejudice.

1    Dated: August 27, 2025                    Respectfully submitted,

2                                               By:  */s/ David R. Singh*

3                                               DAVID R. SINGH (Bar No. 300840)
                                                david.singh@weil.com
4                                               MORGAN D. MACBRIDE (Bar No. 301248)
                                                morgan.macbride@weil.com
5                                               ZHI YANG TAN (Bar No. 347759)
                                                zhiyang.tan@weil.com
6                                               WEIL, GOTSHAL & MANGES LLP
                                                201 Redwood Shores Parkway, 6th Floor
7                                               Redwood Shores, CA 94065-1134
                                                Telephone: (650) 802-3000
8                                               Facsimile: (650) 802-3100

9                                               Attorneys for Defendant APPLE INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS              CASE NO. 5:25-cv-02043-NW