```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                        SAN JOSE DIVISION


 4
        DIB, ET AL,                  )   CV-25-2043-NW
 5                                    )
                    PLAINTIFFS,       )   SAN JOSE, CALIFORNIA
 6                                    )
             VS.                      )   NOVEMBER 12, 2025
 7                                    )
        APPLE, INC.                   )   PAGES 1 - 59
 8                                    )
                    DEFENDANT.        )
 9                                    )
        _____)
10
                     TRANSCRIPT OF PROCEEDINGS
11              BEFORE THE HONORABLE NOEL WISE
                  UNITED STATES DISTRICT JUDGE
12

13      A P P E A R A N C E S:

14      FOR THE PLAINTIFF:     TRAMMELL PC
                               3262 WESTHEIMER ROAD, STE 423
15                             HOUSTON, TX 77098
                          BY:  FLETCHER VINES TRAMMELL
16


17


18      FOR THE PLAINTIFF:     SCHUBERT JONCKHEER & KOLBE LLP
                               2001 UNION ST., STE 200
19                             SAN FRANCISCO, CA 94123
                          BY:  WILLIAM JONCKHEER
20

21              APPEARANCES CONTINUED ON THE NEXT PAGE

22

23      OFFICIAL COURT REPORTER:    SUMMER FISHER, CSR, CRR
                                    CERTIFICATE NUMBER 13185
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER
```

1    <u>APPEARANCES CONTINUED:</u>

2    FOR THE DEFENDANT:      WEIL GOTSHAL & MANGES LLP
                            201 REDWOOD SHORES PARKWAY, 4TH FL
3                           REDWOOD SHORES, CA 94065
                        BY:  **DAVID RAMRAJ SINGH**
4                            **MORGAN MACBRIDE**

5

6    FOR THE DEFENDANT:      COVINGTON & BURLING LLP
                            SALESFORCE TOWER
7                           415 MISSION STREET, STE 54TH FL
                            SAN FRANCISCO, CA 94105
8                       BY:  **KEVIN POLONCARZ**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              SAN JOSE, CALIFORNIA              NOVEMBER 12, 2025

2                      P R O C E E D I N G S

3         (COURT CONVENED AT 9:01 A.M.)

4              THE CLERK:  NOW CALLING 25-CV-2043.  DIB, ET AL

5      VERSUS APPLE, INCORPORATED.

6         MAY I PLEASE HAVE APPEARANCES BEGINNING WITH THE

7      PLAINTIFF.

8              MR. TRAMMEL:  FLETCHER TRAMMELL FOR THE PLAINTIFFS.

9              MR. JONCKHEER:  GOOD MORNING, YOUR HONOR.

10        WILLIAM JONCKHEER, SCHUBERT JONCKHEER & KOLBE, FOR THE

11     PLAINTIFFS.

12             THE COURT:  THANK YOU.

13             MR. SINGH:  GOOD MORNING, YOUR HONOR.

14        DAVID SINGH ON BEHALF OF APPLE.

15             MR. MACBRIDE:  GOOD MORNING, YOUR HONOR.

16        MORGAN MACBRIDE ON BEHALF OF APPLE.

17             MR. POLONCARZ:  GOOD MORNING, YOUR HONOR.

18        KEVIN POLONCARZ ON BEHALF OF ENVIRONMENTAL DEFENSE FUND.

19             THE COURT:  THANK YOU.

20        DID I MISS ANYONE ELSE OR ANYONE ELSE YOU WANT TO

21     IDENTIFY?  NO?  ALL RIGHT.

22        WELL IT'S NICE TO SEE ALL OF YOU.  WE ARE HERE ON THE

23     DEFENDANT'S MOTION TO DISMISS.  I HAVE READ ALL OF THE PAPERS

24     SO YOU CAN OPERATE UNDER THE ASSUMPTION THAT YOU CAN START WITH

25     ME THERE.
```

4

1          AND BECAUSE WE DON'T HAVE ANYONE BY ZOOM, WE HAVE SOME

2     FLEXIBILITY ABOUT WHERE EVERYBODY STANDS OR SITS.  IS ANYBODY

3     PLANNING ON USING ANY OTHER TECH FOR THE PURPOSES OF THE

4     MOTION?

5               MR. SINGH:  WE ARE NOT, YOUR HONOR, AND WE ARE HAPPY

6     TO STAND AND DELIVER WHEREVER YOU WOULD LIKE.

7               THE COURT:  THE ONLY REASON WHY IT'S A LITTLE BIT

8     BETTER, USUALLY FOR THE COURT REPORTER AND FOR ME, IF YOU ARE

9     UP AT THE PODIUM IS BECAUSE YOUR MICROPHONE IS BETTER AND

10    CLOSER.

11              MR. SINGH:  HAPPY TO DO THAT, YOUR HONOR.

12              THE COURT:  OKAY.  ALL RIGHT.  WHENEVER YOU ARE

13    READY.

14              MR. SINGH:  YOUR HONOR, BEFORE JUMPING INTO THE CORE

15    SUBSTANCE OF APPLE'S ARGUMENTS FOR DISMISSAL, WE WANTED TO SET

16    THE TABLE A LITTLE BIT BY TALKING ABOUT SOME OF THE THINGS THAT

17    ARE NOT IN DISPUTE IN THE CASE.

18         FIRST AND FOREMOST, PLAINTIFFS DO NOT DISPUTE THAT WE ARE

19    IN THE MIDDLE OF AN ENVIRONMENTAL CRISIS AND THAT THE TIME TO

20    ACT IS NOW.

21         PLAINTIFFS ALSO DON'T DISPUTE THAT APPLE HAS TAKEN

22    SUBSTANTIAL STEPS TO TRY TO COMBAT THE ENVIRONMENTAL CRISIS,

23    MOST IMPORTANTLY WITH RESPECT TO THE 75 PERCENT DIRECT EMISSION

24    REDUCTIONS WHICH APPLE OBTAINS BY USING CLEANER ELECTRICITY,

25    TRANSPORTATION, PLAINTIFFS ARE NOT DENYING THAT APPLE REDUCED

1    ITS CARBON FOOTPRINT THAT 75 PERCENT.

2         PLAINTIFFS ALSO DON'T DISPUTE THAT FOR THE OTHER

3    25 PERCENT THAT APPLE WAS NOT ABLE TO OFFSET WITH RESPECT TO

4    THE APPLE WATCHES AT ISSUE, THAT APPLE PURCHASED CARBON

5    CREDITS, AND THEY ARE NOT ALLEGING THAT APPLE PAID ANY DISCOUNT

6    FOR THOSE CARBON CREDITS, THEY ACKNOWLEDGE THAT APPLE PAID

7    MARKET PRICE FOR THE 25 PERCENT CARBON CREDITS AT ISSUE.

8         PLAINTIFFS ALSO DON'T DISPUTE THAT THE CARBON CREDITS THAT

9    APPLE PURCHASED WERE CERTIFIED BY VERRA, WHO IN THEIR INITIAL

10    COMPLAINT, PLAINTIFFS ACKNOWLEDGED WAS A GLOBALLY RECOGNIZED

11    NONPROFIT ORGANIZATION WHOSE PROGRAMS ARE "SOME OF THE WORLD'S

12    LEADING VOLUNTARY CARBON OFFSET PROGRAMS."

13         AND FINALLY, PLAINTIFFS DON'T DISPUTE, AND THIS IS REALLY

14    THE NUB OF THE MATTER, YOUR HONOR, THAT UNDER THE SCIENCE-BASED

15    STANDARDS ADOPTED BY VERRA, AND THE METHODOLOGIES ADOPTED BY

16    VERRA, AS MEASURED BY PROJECT MANAGERS, AUDITORS AND VERRA

17    ITSELF, THROUGH VERIFICATION VALIDATION PROCEDURES, THAT EACH

18    CARBON CREDIT EQUATED WITH ONE TON OF CARBON REMOVAL, EACH VCU,

19    AS IT'S CALLED IN THE PARLANCE, EQUATED TO ONE TON OF CARBON

20    REMOVAL.

21         PLAINTIFF'S CORE ARGUMENT IS NOT THAT THESE CARBON CREDITS

22    SHOULDN'T HAVE BEEN CERTIFIED UNDER THE PROCESSES AND

23    PROCEDURES ADOPTED BY VERRA, UNDER THE VERRA STANDARD, THEIR

24    APPROACH IS INSTEAD THAT THEY HAVE CONDUCTED THEIR OWN

25    METHODOLOGY, THEY HAVE DONE SATELLITE IMAGERY AND HAVE DONE AN

1    OVERLAY, THAT'S THE MAIN CRITICISM THEY HAVE OF EACH OF THE

2    FOUR CHALLENGED PROJECTS.

3         BUT THE CORE PROBLEM WITH PLAINTIFF'S THEORY, YOUR HONOR,

4    IS THAT APPLE NEVER CLAIMED THAT IT WAS UTILIZING PLAINTIFF'S

5    METHODOLOGY TO SUPPORT ITS CARBON NEUTRALITY CLAIMS.

6         ON THE CONTRARY, APPLE HAS PUT OUT A WEALTH OF LITERATURE

7    WITH RESPECT TO ITS ENVIRONMENTAL EFFORTS.  THEY ARE MARKET

8    LEADING WITH RESPECT TO PUTTING OUT ENVIRONMENTAL REPORTS FOR

9    PRODUCTS, PUTTING OUT CORPORATE EMISSION STATEMENTS.  AND IN

10   THOSE STATEMENTS, EACH OF THEM, FOR EXAMPLE IN REQUESTS FOR

11   JUDICIAL NOTICE EXHIBIT 7 THROUGH 9 WHICH ARE THE PRODUCT

12   STATEMENTS AT ISSUE, APPLE DESCRIBES ITS EFFORTS TO REDUCE ITS

13   EMISSIONS, DESCRIBES THE PURCHASE OF CARBON OFFSETS TO OFFSET

14   THE REMAINING 25 PERCENT, IT IDENTIFIES THE PROJECTS THAT IT

15   USES FOR THE OFFSETS.  IT LISTS THE NAME OF THE STANDARD, THE

16   VERRA STANDARD THAT WAS APPLIED TO CERTIFY THOSE STANDARDS AND

17   IT APPLIES A HYPERLINK TO THE VERRA SITE TO THE REGISTRATION

18   PAGE FOR THE PROJECT WHICH CONTAINS THE VOLUMINOUS INFORMATION

19   WE INCLUDED IN OUR RJN, IT'S ALL PUBLICLY AVAILABLE.

20        UNDER THE STANDARD ADOPTED BY VERRA AND THE METHODOLOGY

21   ADOPTED BY VERRA, AS VERIFIED AND VALIDATED THROUGH A ROBUST

22   CHECKS AND BALANCE PROCESS, THE CARBON CREDITS THAT APPLE

23   PURCHASED ARE -- DO MAKE APPLE CARBON NEUTRAL, AND PLAINTIFF'S

24   ALTERNATIVE METHODOLOGY DOES NOT SUFFICE TO ESTABLISH DECEPTION

25   WHEN APPLE SHOWED ALL OF ITS WORK, INDICATED WHAT STANDARD IT

1    WAS APPLYING, INDICATED THE METHODOLOGIES, AND THERE'S NO

2    ALLEGATION THAT UNDER VERRA'S STANDARDS, THESE PROJECTS WERE

3    IMPROPERLY CERTIFIED.

4            THE COURT:  MR. SINGH, WHAT IS APPLE'S OBLIGATION, IF

5    ANY, TO INDEPENDENTLY VERIFY?

6            MR. SINGH:  SO PLAINTIFFS HAVE TAKEN THE POSITION IN

7    THEIR COMPLAINT, AS YOU'VE SEEN, AND IN THEIR OPPOSITION TO THE

8    MOTION TO DISMISS THAT UNDER THE FTC GREEN GUIDES, THAT A

9    MARKETER HAS AN INDEPENDENT OBLIGATION TO VERIFY THESE CARBON

10   OFFSET PROJECTS, WHICH TYPICALLY YOUR HONOR, ARE IN THIRD WORLD

11   COUNTRIES, WE ARE TALKING ABOUT PROJECTS IN RURAL CHINA, KENYA

12   PARAGUAY, THESE ARE NOT COUNTRIES -- AND THEY WOULD HAVE IT

13   THAT NOT JUST THE "APPLES" OF THE WORLD, WHICH ARE LARGE TECH

14   COMPANIES, BUT THE BEN AND JERRY'S OF THE WORLD THAT ARE

15   PURCHASING CARBON OFFSETS, HAVE TO INDEPENDENTLY EVALUATE VERY

16   SCIENTIFIC QUESTIONS OF EVALUATING CARBON EMISSION REDUCTION OR

17   AVOIDANCE.

18           THE COURT:  WHERE DOES THE LAW REQUIRE THAT?

19           MR. SINGH:  IT DOESN'T REQUIRE IT, IS OUR VIEW, THAT

20   THERE IS AN INDEPENDENT OBLIGATION.

21       THE FTC RULES REQUIRE SUBSTANTIATION BEFORE MAKING A

22   CLAIM.  THERE IS NOWHERE IN THE FTC RULES THAT SAYS THAT YOU

23   CAN'T RELY ON THIRD PARTIES AS PART OF THAT VERIFICATION

24   PROCESS.

25           THE COURT:  IS THERE ANY PLACE THAT SAYS YOU CAN?

1          MR. SINGH:  IF YOU LOOK AT THE BASIS FOR THE FTC

2     RULES, WHICH IS A PUBLICATION THAT THE FTC ADOPTED WHEN THEY

3     ADOPTED THE CARBON OFFSET PROVISIONS IN 2012, THERE'S

4     EXPLANATION THAT THE PURPOSE OF THE RULES -- WE CITE SOME OF

5     THIS IN OUR RJN AND IN OUR PAPERS -- WAS SUBSTANTIATION BEFORE

6     MAKING A CLAIM.

7          THE FTC DID NOT WANT TO GET INTO ENVIRONMENTAL POLICY

8     MAKING.  AND THE OBJECTIVE WAS TO REQUIRE SOME SORT OF

9     OBJECTIVE OCCASION FOR RECOGNIZED SCIENTIFIC METHODOLOGY BEFORE

10    THE CLAIMS WERE MADE.

11          THE COURT:  YOU USED THE WORD "SUBSTANTIATION," WHERE

12    DOES THAT COME FROM?

13          MR. SINGH:  THAT IS IN THE FTC GREEN GUIDES, IT'S IN

14    THE PREAMBLE TO ALL THE PROVISIONS AT ISSUE, IT'S ALSO IN THE

15    BASIS FOR ADOPTING THE FTC RULE, THE PUBLICATION THAT THE FTC

16    PUT OUT.

17          AND WE ACKNOWLEDGE THAT THERE OBVIOUSLY IS AN OBLIGATION

18    TO SUBSTANTIATE UTILIZING A THIRD PARTY IS SUFFICIENT, UNDER IN

19    OUR VIEW, YOU DON'T HAVE TO INDEPENDENTLY CONDUCT SATELLITE

20    IMAGERY IF YOU'RE APPLE, IF YOU'RE BEN & JERRY'S, IF YOU'RE

21    ETSY, THAT WOULD CREATE AN IMPENETRABLE HURDLE AND WOULD HIGHLY

22    DIS-INCENTIVIZE THE VOLUNTARY CARBON OFFSET MARKET, WHICH

23    FRANKLY IS A CRITICAL TOOL RIGHT NOW IN COMBATING CLIMATE

24    CHANGE.

25          JUMPING --

1          THE COURT:  IN THE CFR'S, WHEN YOU WERE SAYING THAT

2    IT COMES UP IN A COUPLE OF PLACES, SUBSTANTIATION, WHERE SHOULD

3    I LOOK?

4          MR. SINGH:  YOU WOULD LOOK IN 16 CFR 260.2,

5    YOUR HONOR, AND THAT SAYS THAT "THE MARKETERS ARE REQUIRED TO

6    ENSURE THAT ALL REASONABLE INTERPRETATIONS OF THEIR CLAIM ARE

7    TRUTHFUL, NOT MISLEADING, AND SUPPORTED BY A REASONABLE BASIS."

8          AND THEN IT GOES ON TO SAY "THE GUIDES ACKNOWLEDGE THE

9    COMPLEXITIES OF CARBON OFFSETS AND ENCOURAGE SELLERS TO EMPLOY

10   COMPETENT AND RELIABLE SCIENTIFIC AND ACCOUNTING METHODS TO

11   PROPERLY QUANTIFY CLAIMED EMISSION REDUCTIONS."

12        THAT'S 260.5(A).

13        THE COURT:  I WAS GOING TO SAY, I WAS IN 260.2.

14        MR. SINGH:  THE SECOND PART WAS 260.5(A).  I

15   APOLOGIZE, YOUR HONOR.

16        THE COURT:  JUST SO WE HAVE A CLEAR RECORD, CAN YOU

17   INDICATE, CFR USES THE WORD "MARKETER," USES THE WORLD

18   "SELLER," WHO THAT MEANS IN THESE INSTANCES?

19        MR. SINGH:  YEAH.  SO MY UNDERSTANDING OF THIS IS

20   THERE IS THE SELLER OF THE CARBON OFFSET, AND THAT'S WHO YOU

21   ARE BUYING THE CARBON CREDIT FROM, THE MARKETER IS THE ENTITY

22   THAT USES THE CARBON OFFSET TO SUPPORT ITS MARKETING CLAIM.

23        MAY I PROCEED, YOUR HONOR?

24        THE COURT:  YES, GO AHEAD.

25        MR. SINGH:  JUMPING INTO THE SPECIFIC CAUSES OF

1    ACTION AND THE DOCTRINAL BASIS FOR DISMISSAL, I WANT TO START

2    WITH THE DECEPTIVE TRADE PRACTICE ACT CLAIMS.

3         THE COURT:  IS IT FAIR TO SAY THAT ALL OF THE CLAIMS

4    IN THE COMPLAINT RISE AND FALL UNDER THE FACT THAT THESE ARE

5    NOT APPROPRIATE CREDITS?

6         MR. SINGH:  THEIR MAIN ARGUMENT IS THAT THESE ARE

7    ILLEGITIMATE CREDITS.  I THINK THE SILVER BULLET ARGUMENT, FROM

8    OUR PERSPECTIVE, IS THAT MERE CRITIQUE OF A METHODOLOGY AND THE

9    STANDARD IS INSUFFICIENT -- IF WE HAVE DISCLOSED WHAT STANDARD

10   AND METHODOLOGY WE USED -- IS INSUFFICIENT TO ESTABLISH

11   DECEPTION AS A MATTER OF LAW.

12        THE COURT:  LET ME ASK THIS A DIFFERENT WAY.

13        IS THERE ANY CLAIM, IN APPLE'S VIEW, THAT WOULD SURVIVE IF

14   THE ALLEGATION THAT THESE CREDITS WERE INAPPROPRIATE OR NOT

15   PROPERLY AUTHENTICATED, IS THERE ANY CLAIM THAT WOULD SURVIVE

16   IF THE COURT FOUND THAT THAT WAS NOT PROPERLY PLED?

17        MR. SINGH:  WE DON'T THINK THERE SHOULD BE, BUT IN

18   FAIRNESS THEY DO HAVE AN ALTERNATIVE THEORY WHICH IS THAT APPLE

19   DID NOT RETIRE ENOUGH CARBON CREDITS TO ACCOUNT FOR THE NUMBER

20   OF APPLE WATCHES PURCHASED.  WE DON'T BELIEVE THAT PLAINTIFFS

21   HAVE ALLEGED ENOUGH FACTS TO MAKE THAT ARGUMENT -- THAT

22   ALTERNATIVE ARGUMENT PLAUSIBLE, AND THAT'S BECAUSE APPLE

23   DOESN'T REPORT HOW MANY APPLE WATCHES IT SELLS, PLAINTIFFS RELY

24   ON SOME SORT OF THIRD PARTY REPORTING ABOUT APPLE WATCHES, IN

25   TOTALITY, ALL APPLE WATCHES, ONLY CERTAIN APPLE WATCHES WERE --

1    APPLE CLAIMED CARBON NEUTRAL ONLY WITH RESPECT TO CERTAIN

2    MODELS OF THE APPLE WATCH.

3        AND THEIR MATHEMATIC ARGUMENT, IF THAT'S A WORD, THEIR

4    ARGUMENT IS THAT THERE'S NOT ENOUGH CREDITS TO ACCOUNT FOR ALL

5    THE WATCHES SOLD, IT WASN'T ALL THE WATCHES SOLD THAT HAVE THE

6    CARBON NEUTRALITY CLAIM.

7        WE THINK IT'S JUST TOO THIN OF A RECORD.  SO IN FAIRNESS,

8    IT'S NOT JUST ABOUT ILLEGITIMATE CREDITS, THERE'S THIS

9    ALTERNATIVE THEORY, BUT WE THINK BOTH THEORIES FAIL AS A MATTER

10   OF LAW.

11           THE COURT:  IS THIS A CASE OF FIRST IMPRESSION?

12           MR. SINGH:  THERE SUBSCRIBE OTHER CASES ABOUT CARBON

13   OFFSETS, THERE WAS ETSY CASE THAT WE CITED IN OUR PAPERS ON THE

14   ARTICLE III POINT, THERE ARE MANY OTHER GREEN WASHING CASES,

15   CASES ABOUT METHODOLOGIES AND STANDARDS AND WHETHER CRITICISM,

16   FOR EXAMPLE THE ALLBIRDS CASE IN THE SOUTHERN DISTRICT OF NEW

17   YORK IS A WIDELY CITED AND VIEWED AS A SEMINAL CASE WITH

18   RESPECT TO THESE GREEN WASHING CASES, BUT WITH RESPECT TO

19   SPECIFICALLY CRITICIZING CARBON OFFSET PROJECTS, I BELIEVE

20   THERE IS THIS CASE AND THERE IS ANOTHER CASE AGAINST A TOBACCO

21   COMPANY IN THE NORTHERN DISTRICT OF CALIFORNIA RIGHT NOW THAT I

22   BELIEVE WAS FILED BY MY FRIENDS.

23           THE COURT:  TALK TO ME A LITTLE BIT ABOUT THE

24   CONTINUUM THAT WOULD EXIST WHERE ON THE ONE HAND I'M GOING TO

25   USE, FROM APPLE'S PERSPECTIVE, APPLE HAS DONE THIS IN THE VERY

1    BEST WAY THAT IT BELIEVES THAT IT CAN AND IS JUSTIFIED IN ITS

2    APPROACH, TO THE OTHER END OF THE SPECTRUM WHICH I THINK

3    PLAINTIFFS WOULD ASSERT APPLE IS CLOSER TO BUT OTHER CASES ALL

4    TOGETHER WHERE A COMPANY DOESN'T DO ANY SORT OF INDEPENDENT

5    VERIFICATION, MAYBE THEY ARE NOT PAYING ENOUGH FOR THESE, THEY

6    SHOULD HAVE BEEN ON NOTICE, THEY ARE GOING TO GET THE BENEFIT

7    ESSENTIALLY OF PUTTING THEIR HEAD IN THE SAND.

8        I'M TRYING TO UNDERSTAND WHAT THE LAW REQUIRES SUCH THAT

9    AN ENTITY THAT FALLS IN THE FAR END OF THE SPECTRUM ON THE

10   NEFARIOUS SIDE DOESN'T BENEFIT FROM AN INTERPRETATION OF THE

11   LAW THAT DOESN'T REQUIRE THE ENTITY TO DO ANYTHING TO VERIFY.

12           MR. SINGH:  IT'S A TERRIFIC QUESTION, YOUR HONOR.

13           THE COURT:  THANK YOU.

14           MR. SINGH:  THE FTC HAS THE GENERAL RULE THAT

15   ENVIRONMENTAL CLAIMS SHOULD BE DEFINED AND BE CONTEXTUALIZED.

16   THE NINTH CIRCUIT HAS A SIMILAR RULE, IT'S NOT A GREEN WASHING

17   RULE, IT'S A GENERAL RULE ABOUT DECEPTIVE -- ABOUT MARKETING

18   CLAIMS, BUT IT'S THE MCGINITY CASE, NINTH CIRCUIT MCGINITY V.

19   PROCTOR & GAMBLE, WHERE IN THAT CASE IT WAS ALLEGED THAT THE

20   FRONT OF THE LABEL OF A PRODUCT COULD BE MISINTERPRETED, AND

21   PROCTOR & GAMBLE ARGUED THAT THE BACK OF THE LABEL MADE CLEAR

22   THE BASIS FOR THE STATEMENT ON THE FRONT AND WHAT IT MEANT.

23   AND THE NINTH CIRCUIT FOUND THAT THAT WAS NOT DECEPTION AS A

24   MATTER OF LAW WHERE THE BACK OF THE LABEL CLARIFIED THE FRONT.

25        I WOULD ANALOGIZE THAT TO STATEMENTS ABOUT CARBON

1    NEUTRALITY, THAT GENERAL PRINCIPLE; WHEREAS HERE, A MARKETER,

2    IN THIS CASE APPLE, MAKES CLEAR WHAT PROJECTS ARE USED,

3    PROVIDES INFORMATION ABOUT THE STANDARD METHODOLOGY, AND HERE A

4    LINK TO THE REGISTRY PAGE WITH ALL OF THE INFORMATION.

5         AND BY THE WAY, THAT REGISTRY PAGE INCLUDES INFORMATION

6    ABOUT ALL THE CRITICISMS THAT PLAINTIFFS ARE RAISING ABOUT THE

7    PROJECT ARE DISCUSSED IN THE UNDERLYING PROJECT DOCUMENTATION,

8    THE PROJECT MANAGERS, THE AUDITORS, AND ULTIMATELY VERRA,

9    REACHED A DIFFERENT CONCLUSION AND ULTIMATELY CERTIFIED.

10        BUT I THINK THAT'S THE LINE.  IF A MARKETER DID NOT

11   INCLUDE THAT TYPE OF ROBUST INFORMATION ABOUT WHAT ARE THE

12   PROJECTS YOU WERE USING, WHAT THE ARE THE STANDARDS THAT ARE

13   EMPLOYED AND DIDN'T LIVE UP TO WHATEVER IT WAS THEY DISCLOSED

14   OR THEY JUST FAILED TO DISCLOSE THE RELEVANT INFORMATION, THAT

15   COULD BE THE BASIS FOR, AND I THINK THERE IS A VERY SHARP LINE

16   THAT YOU COULD DRAW ON THE LAW THAT PROTECTS MARKETERS THAT

17   PROVIDE ROBUST INFORMATION AND TRUE STATEMENTS AS DEFINED AND

18   CONTEXTUALIZED, ON ONE END OF THE CONTINUUM, WHEREAS MARKETERS

19   THAT DO NOT PROVIDE THAT TYPE OF INFORMATION AND DON'T LIVE UP

20   TO WHATEVER OR JUST FAILED TO PROVIDE WHAT STANDARDS WERE

21   EMPLOYED, WOULD BE OPEN TO DECEPTIVE TRADE PRACTICE ACT CLAIMS.

22        THE COURT:  LET ME FOLLOW YOUR LOGIC OR ANALOGY HERE.

23        THERE WERE A LOT OF CASES, EARLY CERCLA KINDS OF CASES,

24   WHERE HAZARDOUS WASTE THAT WAS TRANSPORTED AND DISPOSED WAS

25   OFTEN TRANSPORTED AND DISPOSED BY LICENSED ENTITIES, RIGHT.  SO

1    THEY DON'T HAVE THE ROBUST SORT OF DATA THAT YOU ARE

2    REFERENCING HERE THAT'S DISCLOSED, BUT YOU WERE REQUIRED TO

3    HAVE MANIFEST SHEETS, AND YOU KNEW EXACTLY WHO TOOK IT, YOU

4    COULD VERIFY THAT THEY HAD A LICENSE.  SO LOTS OF COMPANIES

5    RELIED ON LICENSED TRANSPORTERS AND DISPOSERS TO TAKE THEIR

6    WASTE, SOMETIMES AT VERY INEXPENSIVE PRICES, ONLY TO FIND OUT

7    LATER THAT SOME OF THAT HAZARDOUS WASTE -- IN MANY INSTANCES A

8    LOT OF THAT HAZARDOUS WASTE HAS BEEN DISPOSED OF IMPROPERLY.

9         OR IN OTHER CASES -- THERE IS A FAIRLY WELL KNOWN CASE OUT

10   OF NORTH CAROLINA OR SOUTH CAROLINA WHERE THE PEOPLE WHO WERE

11   TAKING THE WASTE TOOK IT BUT THEY TOOK IT TO A FACILITY AND

12   THEY BASICALLY PUT IT DOWN THE SEWER.

13        SO FOLLOWING YOUR ANALOGY, YOU COULD SAY, WELL WE USED A

14   LICENSED TRANSPORTER, WE USED A DISPOSER, WE PAID A DISPOSER,

15   WE PAID WHAT WE THOUGHT WERE MARKET RATES, AND WHAT MORE WERE

16   WE TO DO, BEING WE SHOULDN'T BE HELD RESPONSIBLE?

17        MR. SINGH:  SO I THINK IT GOES DOWN TO DISCLOSURE.  I

18   MEAN, THESE ARE ULTIMATELY CONSUMER DECEPTION CLAIMS, OR AT

19   LEAST THE CORE CLAIMS AT ISSUE HERE.  AND IF THERE'S DISCLOSURE

20   OF THE UNDERLYING, IN THIS CASE WHAT PROJECTS ARE UTILIZED,

21   WHAT WAS THE STANDARD FOR CERTIFICATION, THE METHODOLOGIES

22   APPLIED, THE VERIFICATION VALIDATION PROCEDURES, AN OPEN PUBLIC

23   PROCESS, AND IF EVERYTHING IS ABOVE BOARD AND TRANSPARENT, I

24   BELIEVE THE ANALOGY WOULD HOLD, THERE WOULD ONLY BE LIABILITY.

25        MERELY RELYING ON A THIRD PARTY WITHOUT DISCLOSURE ABOUT

1    WHAT HAD PROJECTS WERE UTILIZED, THE STANDARDS THAT WERE

2    UTILIZED, THAT MAY IN CERTAIN CASES BE PROBLEMATIC.

3         THAT'S NOT THIS CASE.  HERE WE HAVE DISCLOSED THE PROJECTS

4    AT ISSUE, THE STANDARD THAT VERRA APPLIED, INTERNATIONALLY

5    RECOGNIZED SCIENTIFIC STANDARDS THAT VERRA APPLIED AND THE

6    METHODOLOGIES -- AND FRANKLY THERE'S OPEN CRITICISM, LIKE

7    PEOPLE HAD AN OPPORTUNITY TO COMMENT ON THESE PROJECTS,

8    PLAINTIFFS DIDN'T, THEY CHOSE TO FILE SUIT RATHER THAN UTILIZE

9    THE VERRA PROCESS WITH RESPECT TO THE PROJECTS AT ISSUE, BUT

10   IT'S ALL OUT THERE IN THE OPEN, IT'S TRANSPARENT.

11        THE COURT:  AND PART OF THAT IS A FUNCTIONALITY, NOT

12   TECHNOLOGY THAT WE HAVE, BECAUSE EVERYTHING FROM THE MAPPING,

13   THE ABILITY TO SEE SATELLITE MAPPING AND DATA, AND ONCE UPON A

14   TIME YOU COULD HAVE DISCLOSED THAT YOU WERE PROPERLY PAYING FOR

15   OFFSETS IN A THIRD WORLD COUNTRY THAT ARGUABLY, UNLESS YOU WENT

16   TO GO THERE, PEOPLE WOULDN'T KNOW WHETHER THEY WERE REALLY

17   HAPPENING OR NOT.  I SUPPOSE NOT THE ISSUE NOW.

18        MR. SINGH:  I THINK THERE IS THE ABILITY TO DISCLOSE

19   THINGS MORE TODAY.  I DO THINK TECHNOLOGY IS A RELEVANT FACTOR

20   IN EVALUATING THE CLAIMS AT ISSUE IN THE CASE, BECAUSE THE

21   STANDARDS ARE EVOLVING, THE STANDARDS THAT EXISTED FIVE,

22   TEN YEARS AGO ARE CONSTANTLY BEING REASSESSED BY VERRA.  THE

23   SCIENTIFIC CONSENSUS THAT EXISTS IN THE INTERNATIONAL COMMUNITY

24   REGARDING CARBON EMISSIONS AND EMISSIONS REDUCTIONS, THANKFULLY

25   CONTINUES TO EVOLVE, CONTINUES TO GET BETTER.  BUT YOU CAN'T

1      OPEN THE DOOR AND SAY IF ONE STANDARD WAS APPLIED FIVE YEARS

2      AGO, TEN YEARS AGO, WHATEVER THE RELEVANT TIME PERIOD IS, AND

3      NEW STANDARDS EVOLVED, NEW SCIENTIFIC, THAT YOU COULD OPEN THE

4      DOOR AND CRITIQUE WHAT HAPPENED IN THE PAST, OTHERWISE YOU HAVE

5      OPENED THE FLOOD GATES AND YOU HAVE DIS-INCENTIVIZED ANY

6      PARTICIPATION IN THIS MARKET.

7           AND I WILL ALSO NOTE IN THE CURRENT ENVIRONMENT THERE IS A

8      SIGNIFICANT RISK OF GREEN HUSHING, THAT'S THE LABEL THAT'S

9      BEING GIVEN TO IT THESE DAYS, OF PEOPLE NOT SAYING ANYTHING

10     ABOUT THEIR ENVIRONMENTAL EFFORTS OR COMPANIES TRENCHING AND

11     NOT BEING ACTIVE IN THEIR EFFORTS TO COMBAT ENVIRONMENTAL

12     ISSUES.

13          THE LAW SHOULD HARMONIZE WITH THE PUBLIC POLICY AND

14     EQUITIES HERE, AND I THINK THEY DO, I THINK THE RULE THAT I

15     FASHIONED ABOUT IF YOU ARE --

16          THE COURT:  WHICH PUBLIC POLICY?

17          MR. SINGH:  THE PUBLIC POLICY UNDERLYING IF A

18     PLAINTIFF FIRM CAN COME IN AND MONDAY MORNING QUARTERBACK THE

19     STANDARDS THAT WERE ACTUALLY EMPLOYED, THAT WOULD OPEN THE

20     FLOOD GATES TO CHALLENGING NOT JUST THE PROJECTS AT ISSUE IN

21     THIS CASE BUT EVERY SINGLE CARBON OFFSET PROJECT.  IF YOU APPLY

22     A DIFFERENT METHODOLOGY, YOU ARE GOING TO GET A DIFFERENT

23     RESULT.

24          AND AT BOTTOM, THAT WOULD OPEN THE DOOR TO -- IT WOULD

25     OPEN THE DOOR TO A FLOOD GATE OF LITIGATION, BUT MORE

1     IMPORTANTLY IT'S GOING TO DIS-INCENTIVIZE PEOPLE, COMPANIES

2     FROM PARTICIPATING IN THE VOLUNTARY CARBON OFFSET MARKET.

3          I THINK THE LAW, THE EQUITIES AND THE PUBLIC POLICY ALL

4     ALIGN HERE IN FAVOR OF, ARE YOU ROBUST IN YOUR DISCLOSURE?  DID

5     YOU SHOW YOUR WORK IN YOUR DISCLOSURE, AS APPLE DID?  AND

6     ULTIMATELY THAT'S THE RIGHT OUTCOME.  HAVING THE LAW ALIGN --

7     THE LAW ALIGNING WITH THE PUBLIC POLICY AND THE EQUITIES.

8          THE COURT:  COULD YOU SPEAK TO -- A BIT AGO YOU

9     MENTIONED THERE IS A CLAIM OF THEIRS THAT PLAINTIFFS CONTEST

10    WOULD SURVIVE IRRESPECTIVE OF THIS ISSUE.  YOU INDICATED, AND

11    FOR THE REASONS THAT WERE ALREADY BRIEFED, THAT IT SHOULD NOT

12    SURVIVE FOR OTHER REASONS, BUT COULD YOU SPEAK TO THAT?

13         MR. SINGH:  YEAH.  TO SUMMARIZE, I DON'T THINK THEY

14    MEET THE PLAUSIBILITY STANDARD WITH RESPECT TO JUST PULLING A

15    NUMBER BASICALLY OUT OF THIN AIR.  THEY TOOK A THIRD PARTY

16    REPORTING WHERE APPLE DIDN'T REPORT HOW MANY APPLE WATCHES HAVE

17    BEEN SOLD.  THEY DERIVED FROM THAT THAT BECAUSE APPLE SOLD X

18    NUMBER OF APPLE WATCHES AND THEY DEDUCED THAT APPLE HAS RETIRED

19    Y NUMBER OF CARBON CREDITS, BUT THERE IS NOT ENOUGH TO GO

20    AROUND.  THAT'S THE ESSENCE OF IT.

21         BUT WHAT THEY DIDN'T ACCOUNT FOR IS THEY TOOK ALL APPLE

22    WATCHES SALES, NOT JUST THE SALE OF APPLE WATCHES WITH THE

23    CARBON NEUTRALITY CLAIM.

24         SO THEIR LOGIC -- AND IN RESPONSE, THEY SAY, WE ALLEGED IN

25    THE COMPLAINT THAT OUR ASSUMPTIONS WERE CONSERVATIVE.

1      WE WOULD SUBMIT THAT'S CONCLUSORY, THEY HAVE TO HAVE A

2   BASIS FOR IT BEING CONSERVATIVE, THEIR ASSUMPTIONS, AND AT THE

3   END OF THE DAY, IT'S PRETTY FAR-FETCHED THAT APPLE HAD CARBON

4   NEUTRALITY CLAIMS, LIKE APPLE JUST MESSED UP, THEY JUST DIDN'T

5   RETIRE?

6      IT'S A FAIRLY FAR-FETCHED -- APPLYING, AS TWOMBLY AND

7   IQBAL WOULD TELL YOU TO DO, YOUR COMMON SENSE, JUDICIAL

8   REASONING AND EXPERIENCE, YOU SHOULD REQUIRE A FAIR AMOUNT OF

9   ACTUAL HEFT IN ORDER FOR THAT CLAIM TO GET OFF THE STARTING

10   BLOCK.

11            THE COURT:  MEANING THEY SHOULD BE ALLOWED TO AMEND?

12            MR. SINGH:  IF THEY HAVE THE ACTUAL HEFT, YES, YOU

13   CAN -- I DON'T BELIEVE THEY COULD AMEND TO ADDRESS THAT ISSUE,

14   I DON'T THINK WHAT THEY HAVE PLED NOW IS SUFFICIENT.  IF THEY

15   BELIEVE THEY HAVE A GOOD FAITH BASIS TO OFFER AN AMENDMENT THAT

16   WOULD ADDRESS JUST WHAT I JUST SAID, I WOULD BE SURPRISED BUT I

17   WOULD WANT TO SEE THEIR PROFFER.

18            THE COURT:  OKAY.  IS THERE ANYTHING ELSE YOU WANT ME

19   TO KNOW?

20            MR. SINGH:  JUST BRIEFLY TWO THINGS, AND I APPRECIATE

21   YOU HAVE INDULGED ME A FAIR AMOUNT OF TIME.

22      FIRST, THE BUFFER POOL ARGUMENT, I THINK IS AN ALTERNATIVE

23   BASIS FOR US TO DEFEAT ALL THE CLAIMS AT ISSUE.

24      VERRA HAS A 75 MILLION CREDIT BUFFER POOL, AND APPLE HAS

25   PURCHASED, BY PLAINTIFF'S ALLEGATIONS, ABOUT TWO MILLION

1    CREDITS AT ISSUE HERE.  THERE'S A TON OF CREDITS AVAILABLE IN

2    THE BUFFER POOL.  PLAINTIFFS ARGUE THAT THAT WOULD BE A

3    RETROACTIVE CURE AND THEY ARGUE THAT THAT WOULD BE AKIN TO A

4    COMPANY THAT COMMITTED FRAUD IN A FINANCIAL STATEMENT,

5    CORRECTING THE FINANCIAL STATEMENT AFTER THE FACT.

6         WE THINK THAT THAT IS FACTUALLY AND EVEN LEGALLY WRONG.

7    FACTUALLY, THE BUFFER POOL IS A BUILT-IN MECHANISM THAT EXISTED

8    FROM THE BEGINNING HERE, IT'S NOT AFTER THE FACT, IT'S A

9    FAILSAFE THAT'S BUILT IN TO THE CARBON CREDIT, TO THE VOLUNTARY

10   CARBON OFFSET MARKET THAT THERE ARE THESE BUFFER POOLS

11   AVAILABLE.

12        TO US, IT IS MUCH MORE ANALOGOUS TO A CHECKING ACCOUNT

13   BEING LINKED TO A SAVINGS ACCOUNT THAT AUTOMATICALLY DRAWS FROM

14   THE SAVINGS ACCOUNT.

15        PLAINTIFFS SAY IN THEIR OPPOSITION AND I THOUGHT THIS

16   WAS --

17             THE COURT:  YOU ARE REFERENCING OVERDRAFT PROTECTION?

18             MR. SINGH:  EXACTLY.  OVERDRAFT PROTECTION.

19        PLAINTIFFS SAY AT ONE POINT IN THEIR OPPOSITION THAT

20   VERRA -- AND THIS IS -- IN ADDRESSING OUR ARGUMENT ABOUT THE

21   BUFFER POOL, THEY MAKE THE RESPONSE THAT VERRA AND APPLE

22   APPLIED DIFFERENT STANDARDS AND THEREFORE WE DON'T KNOW THE

23   BUFFER POOL WOULD BE UTILIZED.  THAT'S WHAT THEY ARGUE -- ONE

24   OF THE ARGUMENTS THEY GIVE IN THEIR OPPOSITION.

25        I THINK THAT'S A VERY INTERESTING RESPONSE AND IT ACTUALLY

1    UNDERSCORES OUR MAIN POINT ON DECEPTION BECAUSE THEY ARE

2    CONCEDING THAT VERRA WOULDN'T REVERSE THE CREDITS AT ISSUE

3    BECAUSE THEY ARE APPLYING A DIFFERENT STANDARD AND METHODOLOGY

4    AND THEIR ARGUMENT ACTUALLY UNDERSCORES THE MAIN POINT AS TO

5    WHY THERE SHOULD BE DISMISSAL FOR LACK OF DECEPTION HERE.

6        THE FINAL POINT THAT I WANT TO MENTION, THE ARTICLE III

7    ISSUE.  THEY HAVE BROUGHT CLAIMS WITH RESPECT TO CORPORATE

8    EMISSION STATEMENTS THAT MAKE NO REFERENCE TO ANY PRODUCTS.

9    THEY HAVE SOME SPECIAL REPRESENTATIONS WHERE THEY ARE BRINGING

10    CLAIMS THAT ARE STATEMENTS ABOUT PRODUCT ENVIRONMENTAL REPORTS

11    ABOUT THE APPLE WATCH, THEY HAVE OTHER STATEMENTS THAT THEY ARE

12    PURPORTING TO BRING CLAIMS WITH RESPECT TO THAT ARE JUST APPLE

13    MAKING STATEMENTS ABOUT ITS CORPORATE EMISSIONS AND CARBON

14    NEUTRALITY WITH RESPECT TO CORPORATE EMISSIONS AS DEFINED IN

15    THOSE DOCUMENTS.

16        THERE ARE TWO CASES, AND WE THINK THEY GET IT RIGHT ON

17    THIS, THAT HAVE FOUND THAT THAT JUST DIDN'T SUFFICE WHERE YOU

18    ARE BRINGING A CLAIM WITH RESPECT TO CORPORATE ENVIRONMENTAL

19    CLAIMS, THAT'S NOT A CLOSE ENOUGH TIE TO BRING A PRICE PREMIUM

20    CLAIM WITH RESPECT TO THE WHOLE SUITE OF PRODUCTS FOR THE

21    COMPANY.

22        THE ETSY CASE FROM THE CENTRAL DISTRICT OF CALIFORNIA WAS

23    DIRECTLY ON POINT.  THE LULULEMON CASE, WHICH I WAS DEFENSE

24    COUNSEL IN THAT ONE, FROM THE SOUTHERN DISTRICT OF FLORIDA, IN

25    THOSE CASES, YOUR HONOR, THE PLAINTIFFS MADE THE EXACT SAME

1    ALLEGATIONS THAT PLAINTIFFS DO THAT A PRICE PREMIUM WAS BEING

2    PAID BY THE CONSUMERS IN LIGHT OF THE COMPANY'S ENVIRONMENTAL

3    REPRESENTATIONS ABOUT ITS ENVIRONMENTAL EFFORTS, AND THE COURT

4    DREW A LINE AND SAID THERE IS NOT A SUFFICIENT NEXUS BETWEEN

5    THE PRODUCT AND THE ATTRIBUTES AND QUALITIES OF THE PRODUCT AND

6    THE GENERAL STATEMENT ABOUT ENVIRONMENTAL EFFORTS BY THE

7    COMPANY.

8        THAT MAKES SENSE TOO, AND I'M GOING TO GO BACK TO PUBLIC

9    POLICY ONE LAST TIME AND SAY, IF YOU ENDORSED A RULE THAT THERE

10   IS ARTICLE III STANDING JUST WITH RESPECT TO A STATEMENT BY A

11   COMPANY ABOUT ITS ENVIRONMENTAL EFFORTS, THAT WOULD COMPLETELY

12   OPEN THE FLOOD GATES BECAUSE EVERY COMPANY IS GOING TO GET SUED

13   ABOUT ITS IMPACT STATEMENTS, ITS PROGRESS REPORTS, EVEN THOUGH

14   THERE IS NO TIE TO, BY EVERY PURCHASER, OF ALL OF THEIR

15   PRODUCTS AND YOU COMPLETELY OPEN THE DOOR TO ALL SORTS OF

16   CONSUMER CLASS ACTIONS WITH RESPECT TO COMPANIES' ENVIRONMENTAL

17   EFFORTS AND TRANSPARENCY ABOUT THOSE EFFORTS.

18       I WOULD JUST SAY DON'T LOSE THE FOREST THROUGH THE TREES,

19   PUN INTENDED ON THAT, THERE IS A LOT OF PUBLIC POLICY SEE AT

20   ISSUE HERE, A LOT OF PEOPLE ARE WATCHING, AND THIS IS A CASE

21   THAT COULD MAKE A BIG DIFFERENCE AND IMPACT NEGATIVELY THE

22   CARBON OFFSET MARKET.

23       THANK YOU, YOUR HONOR.

24          THE COURT:  THANK YOU.

25       SO THERE IS AN AMICUS THAT'S HERE AND HAS MADE A REQUEST

1    TO ARGUE, AND BECAUSE I WANT THE PLAINTIFF TO BE ABLE TO

2    RESPOND FULSOMELY TO EVERYTHING THAT'S COMING, I THINK FROM THE

3    OTHER SIDE, GIVEN THAT THE AMICUS IS ALIGNED WITH THE OTHER

4    SIDE, MY INTENT IS TO HEAR FROM THEM NEXT.

5              MR. TRAMMEL:  YES, YOUR HONOR.  UNDERSTOOD.

6              MR. POLONCARZ:  GOOD MORNING, YOUR HONOR.

7         KEVIN POLONCARZ, AND I'M HERE TODAY REPRESENTING

8    ENVIRONMENTAL DEFENSE FUND.  THANK YOU FOR THE OPPORTUNITY TO

9    SPEAK.

10        EDF IS HERE BECAUSE IT'S CONCERNED ABOUT THE RECENT RISE

11   OF MISGUIDED GREEN WASHING LITIGATION.  EDF BELIEVES IT'S

12   CRITICAL FOR COMPANIES TO MAINTAIN AMBITIOUS CLIMATE GOALS, TO

13   REPORT ON THOSE GOALS AND THEIR PROGRESS TOWARDS THEM WITH

14   TRANSPARENCY AND TO CONTINUE INVESTING IN CLIMATE CONCLUSIONS,

15   ALL AS APPLE HAS DONE HERE IN MAKING THE CLAIMS AT ISSUE IN

16   THIS CASE.

17        BUT WHEN ILL CONCEIVED CASES LIKE THIS ONE TARGET

18   COMPANIES WHO MADE LEGITIMATE CLAIMS BASED ON HIGH QUALITY

19   THIRD PARTY VERIFIED CARBON OFFSETS, THAT'S ONLY GOING TO CHILL

20   CORPORATE CLIMATE ACTION.

21        TO BE SURE, THERE'S ROOM FOR IMPROVEMENT IN ALL THE

22   METHODOLOGIES GOVERNING HOW WE MEASURE, HOW WE QUANTIFY CARBON

23   REDUCTIONS AND REMOVALS, BUT THAT DOESN'T PROVE WHAT PLAINTIFFS

24   WISH IT WOULD, THAT COMPANIES MAKING CLAIMS BASED ON THE BEST

25   AVAILABLE SCIENCE AT THE TIME THE CLAIMS ARE MADE, ARE LYING TO

1     CONSUMERS.

2          I WOULD LIKE TO MAKE JUST A COUPLE BRIEF POINTS,

3     YOUR HONOR.

4          FIRST, APPLE --

5          THE COURT:  I ACTUALLY WANT TO FOLLOW UP ON A POINT

6     YOU JUST MADE.  YOU SAID THE BEST AVAILABLE SCIENCE.  HOW WOULD

7     A COMPANY KNOW IT'S THE BEST AVAILABLE SCIENCE IF THEY DON'T DO

8     SOMETHING TO VERIFY IT OR CHECK IT?

9          MR. POLONCARZ:  WE AGREE COMPANIES HAVE TO DO

10    SOMETHING, THEY HAVE TO KNOW THAT THEY ARE USING A TRUSTED

11    METHODOLOGY AND THAT THAT METHODOLOGY HAS BEEN SUBJECT TO

12    RIGOROUS THIRD PARTY INVESTIGATION, STAKEHOLDER PARTICIPATION

13    AND IS CONSTANTLY, AS MR. SINGH POINTED OUT, SUBJECT TO

14    CRITICISM THAT IS PUBLICLY AIRED ON VERRA'S WEBSITE AND

15    OTHERWISE.

16         WE ARE NOT HERE DEFENDING THE METHOD BUT WE ARE SAYING

17    THAT PROCESS WHERE YOU HAVE A BODY, SUCH AS VERRA WHICH PUTS

18    ALL THIS INFORMATION OUT INTO THE PUBLIC DOMAIN, ESTABLISHES

19    THEIR METHODOLOGIES THROUGH TRANSPARENT PROCESSES THAT GET

20    INPUT FROM SCIENTISTS, FROM ACADEMIA, FROM THE ENVIRONMENTAL

21    COMMUNITY, THAT'S THE WAY AN ENTITY CAN ENSURE THAT WHEN IT'S

22    MAKING CLAIMS PREMISED UPON CARBON REDUCTIONS, THEY'RE BASED ON

23    GOOD SCIENCE.

24         FIRST, APPLE FROM EDF'S PERSPECTIVE, HAS DEMONSTRATED

25    BEST-IN-CLASS CLIMATE LEADERSHIP.  FOR THE APPLE WATCHES AT

1    ISSUE IN THIS CASE, IT STARTED BY DECARBONIZING OVER 75 PERCENT

2    OF THE EMISSIONS IN ITS SUPPLY CHAIN.  IT THEN PURCHASED CARBON

3    CREDITS FOR IT LESS THAN 25 PERCENT OF THE REMAINING EMISSIONS.

4         THIS IS AN APPROACH THAT EDF REGULARLY RECOMMENDS FOR

5    CORPORATE CLIMATE ACTION, REDUCE EMISSIONS TO THE GREATEST

6    EXTENT POSSIBLE AND THEN TAKE RESPONSIBILITY FOR THE REST.

7         SECOND, APPLE COMPLIED WITH THE GREEN GUIDES AND

8    REASONABLY RELIED ON VERRA'S METHODOLOGY.  AS MR. SINGH POINTED

9    OUT, THAT METHODOLOGY AND THE OVERALL ARCHITECTURE OF HOW IT

10   OPERATES, INCLUDING THE USE OF BUFFER POOLS, INCLUDING THE

11   SCIENTIFIC METHODS FOR DETERMINING ADDITIONALITY AND PERMANENCE

12   AND HAVING THAT BUFFER POOL AVAILABLE IF THERE WAS SOME

13   MISESTIMATION, THAT ASSURES THAT REDUCTIONS ARE REAL.

14        THE UPSHOT OF PLAINTIFF'S CASE IS THAT APPLE SHOULD HAVE

15   DONE MORE THAN JUST RELY UPON ALL THAT DOCUMENTATION, UPON ALL

16   THE SCIENCE THAT WENT INTO DEVELOPING HOW THIS PROCESS WORKS.

17        IT'S HARD TO IMAGINE THOUGH WHAT LEVEL OF DILIGENCE WOULD

18   SATISFY THEM BECAUSE APPLE IS A COMPANY OF SIGNIFICANCE,

19   PRESUMABLY IT SHOULD HAVE BEEN SENDING INDIVIDUALS TO FAR FLOWN

20   CORNERS OF THE WORLD TO MEASURE THE AMOUNT OF CARBON THAT'S

21   BEING REDUCED.

22        IF THAT'S REQUIRED, I CAN ASSURE YOU CORPORATE ACTORS

23   WOULDN'T HAVE THE RESOURCES TO SUPPORT REDUCTIONS THAT ARE

24   CRITICALLY NEEDED.  IT WAS IMMINENTLY REASONABLE, FROM EDF'S

25   PERSPECTIVE, FOR APPLE TO RELY UPON THE METHODOLOGIES AS

1    DOCUMENTED BY VERRA AND THE INDEPENDENT THIRD PARTY

2    VERIFICATION WHICH ALL AFFIRMED THAT THESE CREDITS WERE GOOD AT

3    THE TIME THE CLAIMS WERE MADE.

4         THAT'S WHY EDF URGES THE COURT TO HOLD THE LINE AND NOT

5    LET THIS CASE ADVANCE BEYOND THE PLEADING STAGE.  IF SPURIOUS

6    CLAIMS OF THE SORT PLAINTIFF ALLEGES, AS MY COLLEAGUE SAID,

7    MONDAY MORNING QUARTERBACKING, CAN SUBJECT A COMPANY TO COSTLY

8    LITIGATION, DISCOVERY AND A POTENTIAL TRIAL IN FEDERAL COURT,

9    ONE THING IS FOR SURE, COMPANIES ARE GOING TO STOP INVESTING IN

10   REDUCTIONS AND REMOVALS WHICH ARE CRITICAL TO ADDRESSING THE

11   CLIMATE CRISIS, AND EVEN THOSE THAT DON'T STOP INVESTING, THEY

12   ARE NOT GOING TO RISK SAYING ANYTHING ABOUT IT TO THE PUBLIC,

13   LESS THE PERFECT BE THE ENEMY OF THE GOOD AND THEY END UP BEING

14   TARGETED LIKE APPLE HERE.

15        FINALLY, EDF UNDERSTANDS THAT METHODOLOGIES CAN AND DO

16   EVOLVE, THAT'S HAPPENS SINCE SCIENCE EVOLVES.  EDF HAS BEEN

17   INVOLVED IN EXTENSIVE WORK AND METHODOLOGY AND HIGH INTEGRITY

18   CREDIT LABELING EFFORTS.  BUT THIS IMPROVEMENT IN EVOLUTION AND

19   THE METHODOLOGIES DOESN'T PROVIDE A BASIS FOR CALLING INTO

20   QUESTION THE TRUTHFULNESS OF APPLE'S CLAIMS BASED ON THE

21   STANDARDS THAT WERE IN EXISTENCE AT THE TIMES THEY MADE THEM.

22        TO CONCLUDE, NEARLY ALL NATIONS OF THE WORLD ARE MEETING

23   NOW IN THE AMAZONIAN RAIN FOREST FOR THE 30TH CONFERENCE OF THE

24   PARTIES, WHAT'S BEING CALLED THE NATURE CUP, THAT'S TO CONTINUE

25   THE WORK OF ADVANCING TOWARDS PARIS AGREEMENT'S GOALS.  THE

1    LOCATION IS NO COINCIDENCE, THERE'S AN ENHANCED FOCUS BETWEEN

2    THE LINK BETWEEN PRESERVATION OF NATURAL SYSTEMS AND CLIMATE

3    CHANGE.

4        THE HOST NATION HAS ANNOUNCED BIG DEALS TO TRY TO CATALYZE

5    INVESTMENT IN NATURE-BASED SOLUTIONS, THERE'S ALSO A HOST OF

6    ANNOUNCEMENTS ABOUT HARMONIZING CARBON ACCOUNTING STANDARDS,

7    RECOGNIZING THAT THESE ARE EVOLVING IN REAL TIME.

8        ALLOWING THIS CASE TO PROCEED RISKS CHILLING ALL CORPORATE

9    PARTICIPATION IN THAT VENUE.  IT RISKS MAKING IT AVAILABLE ONLY

10    TO THOSE COMPANIES WHO HAVE THE APPETITE AND RESOURCES TO

11    DEFEND A CASE LIKE THIS.  IF THAT HAPPENS, THEN REDUCTIONS AND

12    REMOVALS LIKELY WON'T HAPPEN ON THE PACE OR SCALE THAT THOSE

13    DOWN IN BRAZIL SAY IS NECESSARY.

14        THANK YOU, YOUR HONOR.  I'M HAPPY TO ANSWER ANY QUESTIONS.

15            THE COURT:  THANK YOU.

16        MR. TRAMMEL:  GOOD MORNING AGAIN, YOUR HONOR.

17        I JUST WANT TO BE CLEAR, AND I'M SURE WE WILL GET INTO IT,

18    BUT THIS IS NOT A CASE ABOUT CHILLING CORPORATE ACTION ON THE

19    CLIMATE.  APPLE IS FREE TO, AND PRESUMABLY COULD, BUY ALL THE

20    CARBON OFFSETS IN EXISTENCE AND JUST NOT TELL ANYONE ABOUT IT.

21    BUT WHEN THEY CHOOSE TO INCORPORATE THEIR ACTION ON CLIMATE

22    INTO THEIR MARKETING, THEY UNDERTAKE DUTIES TO THEIR CONSUMERS.

23        THE GREEN GUIDES THAT YOUR HONOR BRIEFLY WENT OVER THIS

24    MORNING ARE CLEAR ABOUT WHAT THOSE DUTIES ARE AND THAT THEY ARE

25    APPLE'S DUTIES THAT CANNOT BE OUTSOURCED TO A THIRD PARTY.

1      SECTION 260.2 REFERS REPEATEDLY TO MARKETERS' DUTIES IF

2  THEY ARE GOING TO BE INCORPORATING ENVIRONMENTAL CLAIMS INTO

3  THEIR MARKETING.

4      THE FIRST ONE IS THAT APPLE HAS TO IDENTIFY ALL OF

5  POSSIBLE INFORMATION THAT WOULD BE RELAYED BY AN ENVIRONMENTAL

6  MARKETING CLAIM AND ENSURE THAT THAT INFORMATION IS TRUE, NOT

7  MISLEADING AND SUPPORTED BY A REASONABLE BASIS.

8      THE MARKETING CLAIM AT ISSUE HERE IS THAT THE PRODUCTS,

9  THE WATCHES, WERE CARBON NEUTRAL, THAT APPLE WAS CARBON NEUTRAL

10  ACROSS ITS OMISSIONS.  THAT IS A SPECIFIC CLAIM BASED ON MATH,

11  YOUR HONOR, THAT APPLE DOES FOR US AS PLED IN THE COMPLAINT.

12      APPLE IS CLEAR THAT CARBON NEUTRAL MEANS NET 0 OMISSIONS

13  NODES; IN OTHER WORDS, THAT ALL CARBON OMISSIONS ARE OFFSET BY

14  EFFICIENCIES OR BY CARBON OFFSET PROJECTS.

15      AND THE WAY THAT THEY GOT TO THE MATH, THE 25 PERCENT OF

16  THE MATH OF GETTING TO NET 0, WAS THROUGH THESE CARBON OFFSET

17  PROJECTS, THE FOUR CARBON OFFSET PROJECTS AT ISSUE HERE THAT

18  ARE DESCRIBED IN THE COMPLAINT.

19      IF THOSE CARBON OFFSET PROJECTS ARE ILLEGITIMATE, AND

20  ACCORDING TO OUR WELL PLED ALLEGATIONS IN THE COMPLAINT, THEY

21  ARE, APPLE DOES NOT GET TO CARBON NEUTRALITY AND ITS CARBON

22  NEUTRAL MARKETING CLAIMS ARE FALSE.

23      SO IT IS UP TO APPLE --

24          THE COURT:  SO WHERE DOES IS IT SAY IN THE GREEN

25  GUIDES THAT THEY HAVE TO INDEPENDENTLY EVALUATE USING

1    ALTERNATIVE METHODOLOGIES AND CANNOT RELY ON ENTITIES SUCH AS

2    THE ONES WHO WERE THE SELLERS IN THIS INSTANCE?

3            MR. TRAMMEL:  SO WHAT THE GREEN GUIDES SAY IS THE

4    MARKETER, APPLE IN THIS CASE, HAS TO DO THREE THINGS:  THEY

5    HAVE TO MAKE SURE THAT THE CARBON NEUTRAL CLAIM IS TRUE, NOT

6    MISLEADING, AND SUPPORTED BY A REASONABLE BASIS.  BUT THEN IN

7    260.6, SECTION C, THEY ARE CLEAR ABOUT HOW APPLE HAS TO MEET

8    THAT THIRD PRONG.

9        IN OTHER WORDS, YOU CAN'T SAY SOMETHING THAT HAPPENS TO BE

10   TRUE AND NOT MISLEADING BUT NOT BASE IT ON A REASONABLE BASIS.

11   THAT WOULD STILL VIOLATE THE GREEN GUIDES.  AND SO THE MARKETER

12   HAS TO ENSURE THAT THERE IS A REASONABLE BASIS FOR ITS

13   MARKETING CLAIMS.  ELSEWHERE IN THE GREEN GUIDES --

14           THE COURT:  MEANING -- I JUST WANT TO BE CLEAR, IS IT

15   YOUR POSITION THAT WHAT THIS REQUIRES IS THAT THEY CANNOT RELY

16   ON THE ANALYSIS, THE PUBLIC DISCLOSURES, ALL OF THE INFORMATION

17   THAT'S BEEN PROVIDED, THEY HAVE TO SEPARATELY GO IN AND

18   EVALUATE IT THEMSELVES?

19           MR. TRAMMEL:  SO YES, THAT'S MY POSITION, BUT

20   THAT'S --

21           THE COURT:  BUT TELL ME WHERE.

22           MR. TRAMMEL:  THE GREEN GUIDES SAY, 260.6, SECTION C,

23   THIRD PARTY CERTIFICATION DOES NOT LIMIT A MARKETERS OBLIGATION

24   TO ENSURE IT HAS SUBSTANTIATION FOR ALL CLAIMS REASONABLY

25   COMMUNICATED BY THE CERTIFICATION.

1        SO -- AND I THINK IT'S IMPORTANT TO TAKE A STEP BACK AND

2   REMEMBER HOW WE ENCOUNTER ENVIRONMENTAL MARKETING CLAIMS IN

3   DAY-TO-DAY LIFE, THEY ARE ALMOST ALWAYS ACCOMPANIED BY SOME

4   KIND OF THIRD PARTY CERTIFICATION.

5        IF YOU GO TO THE GROCERY STORE, YOUR ORGANIC PRODUCTS ALL

6   HAVE THE SAME MARKINGS ON THEM DESCRIBING THEM AS ORGANIC, IT'S

7   A COMMON WAY THAT ENVIRONMENTAL MARKETING CLAIMS ARE

8   COMMUNICATED AND THAT'S WHY IT'S ADDRESSED EXPLICITLY IN THE

9   GREEN GUIDES BY THE FTC.

10       SO IT'S THE ONLY REFERENCE TO THIRD PARTY CERTIFICATION,

11  YOUR HONOR, BUT REPLETE REFERENCES TO MARKETERS AND THE DUTIES

12  THEY UNDERTAKE, WHEN AGAIN, NOT FOR PARTICIPATING IN CLIMATE

13  ACTION BUT FOR INCORPORATING THEIR CLIMATE ACTION INTO THEIR

14  MARKETING STATEMENTS TO THEIR CONSUMERS.  IT IS THEIR JOB TO DO

15  SOMETHING.

16       I THINK YOUR HONOR HIT AT A DIFFICULT, ONE ISSUE THAT I

17  THINK IS AN ISSUE OF FIRST IMPRESSION IS, IT'S APPLE'S POSITION

18  THAT THEY ARE NOT REQUIRED TO DO A SINGLE THING, THEY DON'T

19  HAVE TO LIFT A FINGER, THEY TO PAY VERRA, THE MOST

20  SOPHISTICATED TECHNOLOGY COMPANY IN THE WORLD DOESN'T HAVE TO

21  DO WHAT A HANDFUL OF LAW FIRMS WERE ABLE TO DO USING PUBLICLY

22  AVAILABLE TECHNOLOGY.

23       CERTAINLY THE LAW CAN'T BE THAT THEY DON'T HAVE TO DO

24  ANYTHING WHEN THE GREEN GUIDES ARE REPLETE WITH REFERENCES TO

25  THEIR OBLIGATIONS TO ENSURE THE TRUTH OF THE MARKETING CLAIMS

1    THEY ARE MAKING TO THE PUBLIC.

2          THE COURT:  WHY SHOULD THE COURT BELIEVE THAT WHAT A

3    HANDFUL OF LAW FIRMS HAS DONE IS THE TRUTH?

4          MR. TRAMMEL:  WELL AT THIS STAGE OF THE PROCEEDINGS,

5    YOUR HONOR, THE RULES REQUIRE YOU TO ACCEPT THOSE ALLEGATIONS

6    AS TRUE.  AND SO WE HAVE IN EXHAUSTIVE DETAIL DESCRIBED WHY

7    THOSE PROJECTS ARE LEGITIMATE, SOME OF THEM ILLEGITIMATE JUST

8    BASED ON REFERENCE TO A MAP OF THE PROJECT, AND THOSE WELL PLED

9    ALLEGATIONS ARE REQUIRED AT THIS STAGE TO BE ACCEPTED AS TRUE.

10        I'M SURE WE WILL BE DEALING WITH THE LEGITIMACY OR

11   ILLEGITIMACY OF THOSE PRODUCTS LATER IN THE PROCEEDINGS.

12         THE COURT:  I'M NOT TALKING ABOUT THE LEGITIMACY AND

13   THE ILLEGITIMACY OF THE PROJECTS, I'M TALKING ABOUT THE WAY YOU

14   ELECTED TO ANALYZE THIS ISSUE, IT IS DIFFERENT THAN HOW THE

15   SELLERS DID IT, CORRECT?

16         MR. TRAMMEL:  WELL THEY DID NOTHING, YOUR HONOR.  SO

17   YES, IT IS DIFFERENT IN THAT WE DID SOMETHING AND THEY DID

18   NOTHING.

19         THE COURT:  THE MARKETER.

20         MR. TRAMMEL:  THE MARKETER IS APPLE.  YOU MEAN THE

21   CERTIFIER, VERRA.

22         THE COURT:  WHERE DOES THE CFR REFERENCE A CERTIFIER?

23         MR. TRAMMEL:  WELL THE ONLY REFERENCE TO A THIRD

24   PARTY CERTIFIER IS IN 260 .6(C) WHERE IT SAYS APPLE IS NOT

25   ALLOWED TO RELY ON THE CERTIFIER FOR THE TRUTHFUL NATURE OF ITS

1      CLAIMS.  IT SAYS APPLE HAS TO MAKE SURE, THEY HAVE A DUTY TO

2      ENSURE THE CLAIMS THEY ARE MAKING, THE CARBON NEUTRAL CLAIM IN

3      THIS CASE, IS TRUE AND NOT MISLEADING.

4           THEY HAVE AN INDEPENDENT DUTY TO DO IT, THE GREEN GUIDES

5      ARE CLEAR ABOUT THAT, JUST AS THEY ARE CLEAR THEY CAN'T

6      OUTSOURCE THAT DUTY TO VERRA.

7               THE COURT:  WHAT BASIS DOES THE COURT HAVE RIGHT NOW

8      TO SAY THAT THAT IS NOT CORRECT?

9               MR. TRAMMEL:  TO SAY -- I'M SORRY, YOUR HONOR, TO SAY

10     WHAT IS NOT CORRECT?

11              THE COURT:  THE ANALYSIS THAT WAS DONE IN THIS CASE.

12     YOU ARE SAYING BY THE CERTIFIER, THEY COULDN'T RELY ON THE

13     CERTIFIER.  WHAT IS IT THAT THEY WERE SUPPOSED TO DO, THEY WERE

14     SUPPOSED TO DO IT THEMSELVES?  DO THE ANALYSIS FULLY

15     THEMSELVES?

16              MR. TRAMMEL:  NOT DO THE ANALYSIS FULLY THEMSELVES,

17     YOUR HONOR, BUT UNDERTAKE SOME EFFORT TO ENSURE THE CARBON

18     NEUTRAL CLAIM THEY ARE MAKING IS TRUE.  AND THAT CLAIM CAN ONLY

19     BE TRUE IF THE CARBON OFFSET PROJECTS THAT THEY BOUGHT WERE

20     LEGITIMATE.

21          AND SO JUST AS I'M SURE THEY DID INTERNAL CHECKS TO MAKE

22     SURE THAT THE FIRST 75 PERCENT OF EMISSION REDUCTIONS WAS

23     ACCURATE, THEY WERE REQUIRED TO DO SOMETHING TO ENSURE THE

24     25 PERCENT ATTRIBUTED TO THE CARBON OFFSET PROJECTS WAS

25     LEGITIMATE.

1          IT CAN'T BE THE CASE THAT THEY CAN DO NOTHING.  AND THE

2     GREEN GUIDES ARE CLEAR THAT THEY ARE NOT ALLOWED TO DO NOTHING

3     BUT RELY ON A THIRD PARTY CERTIFIER, WHICH IS THE POSITION THAT

4     APPLE HAS TAKEN HERE TODAY.

5          AND SO IF THE GREEN GUIDES DESCRIBE AN OBLIGATION, SURELY

6     THERE'S SOME ACT THAT HAS TO ACCOMPANY THAT OBLIGATION.

7              THE COURT:  THE ANALYSIS THAT YOU HAVE DONE, WHERE

8     WAS THAT ANALYSIS FOR THEM TO LOOK AT AND CONSIDER?  DID YOU

9     INCLUDE THAT IN YOUR CRITICISM OF THE PROJECTS?

10             MR. TRAMMEL:  WE DID, YOUR HONOR, WE DESCRIBED

11    EXACTLY WHAT WE DID.

12             THE COURT:  NO, NO, NO, I'M NOT ASKING YOU IF YOU DID

13    THAT IN YOUR COMPLAINT, PRIOR TO YOU FILING THE COMPLAINT.

14             MR. TRAMMEL:  YES, IN OUR CLRA NOTICE LETTER?

15             THE COURT:  NO.  WHEN THESE THINGS WERE PUBLICLY PUT

16    OUT, RIGHT, ABOUT THESE PROJECTS, DID YOU MAKE COMMENTS ABOUT

17    THOSE, THE INFERIORITY OF THOSE PROJECTS, THAT THEY SHOULD NOT

18    HAVE BEEN CERTIFIED?

19             MR. TRAMMEL:  NO, YOUR HONOR, BECAUSE WE DIDN'T BUY

20    CARBON OFFSET PROJECTS CERTIFIED BY VERRA, WE HAD NO

21    RELATIONSHIP WITH VERRA WHATSOEVER OR CARBON OFFSET PROVIDERS,

22    WE ARE PURCHASERS OF APPLE PRODUCTS.  SO IT IS APPLE'S

23    REPRESENTATIONS THAT FORM THE BASIS OF THIS ACTION.

24          WE HAVE NOT PARTICIPATED IN ANY KIND OF FORMAL OBJECTION

25    PROCESS WITH VERRA OR WITH THE CARBON OFFSET PROJECTS.

1          THE COURT:  WHEN AND HOW DID YOU DO YOUR OWN

2     ANALYSIS?

3          MR. TRAMMEL:  I DIDN'T MEMORIALIZE EXACTLY WHAT WE

4     DID, YOUR HONOR, IN THE COMPLAINT -- IT'S DESCRIBED

5     EXHAUSTIVELY IN THE COMPLAINT, IT'S PUBLICLY AVAILABLE.

6          THE COURT:  NO, LITERALLY WHEN?  WHEN DID YOU DO IT?

7          MR. TRAMMEL:  OVER THE COURSE OF SEVERAL MONTHS,

8     YOUR HONOR.

9          THE COURT:  BEGINNING WHEN?

10          MR. TRAMMEL:  AT LEAST A YEAR BEFORE WE FILED THIS

11     CASE.

12          THE COURT:  BUT AFTER APPLE PURCHASED THESE OFFSETS,

13     CORRECT?

14          MR. TRAMMEL:  THIS IS -- OFF THE TOP OF MY HEAD --

15     YES, OF COURSE IT WOULD HAVE BEEN AFTER APPLE PURCHASED THE

16     OFFSETS.

17          THE COURT:  SO APPLE COULDN'T RELY ON YOUR ANALYSIS,

18     CORRECT?

19          MR. TRAMMEL:  NO.  BUT APPLE WAS REQUIRED BY THE

20     GREEN GUIDES TO DO ITS OWN ANALYSIS, THEY HAVE, AND THE

21     MARKETERS HAVE OBLIGATIONS.

22          THE COURT:  CAN YOU SPECIFICALLY POINT ME TO WHERE

23     THE LANGUAGE REQUIRES THEM TO DO THAT?

24          MR. TRAMMEL:  YES, YOUR HONOR.  260.2, MARKETERS MUST

25     ENSURE -- I'M SORRY, I'M HALFWAY THROUGH THE PARAGRAPH.

```
 1              THE COURT:  HOLD ON ONE MOMENT.

 2              MR. TRAMMEL:  YES, YOUR HONOR.

 3              THE COURT:  GO AHEAD.

 4              MR. TRAMMEL:  IF YOU START THE SENTENCE, "TO

 5      DETERMINE," IT SAYS "TO DETERMINE IF AN ADVERTISEMENT IS

 6      DECEPTIVE, MARKETERS," MEANING APPLE, "MUST IDENTIFY ALL

 7      EXPRESS AND IMPLIED CLAIMS THAT THE ADVERTISEMENT REASONABLY

 8      CONVEYS."

 9          THE ADVERTISEMENT HERE IS THE CARBON NEUTRAL CLAIM

10      ASSOCIATED WITH ITS PRODUCTS AND CORPORATE EMISSIONS.

11          AND AGAIN, THE CLAIM, THE EXPRESS AND IMPLIED CLAIM IS

12      THAT IT'S NET 0, MEANING THEY HAVE GOTTEN TO 0 EMISSIONS AND

13      THEY DON'T DO IT WITHOUT THE OFFSETS.

14          THEN IT SAYS "MARKETERS MUST ENSURE -- "

15              THE COURT:  OKAY.  SO THE FIRST VERB WAS "IDENTIFY."

16              MR. TRAMMEL:  YES.

17              THE COURT:  YOU ARE SAYING THEY FAILED TO IDENTIFY?

18              MR. TRAMMEL:  NO.

19              THE COURT:  OKAY.

20              MR. TRAMMEL:  THEY MAY HAVE IDENTIFIED IT, THEY JUST

21       DIDN'T ENSURE THAT IT WAS TRUE.

22          SO THEN IT SAYS "MARKETERS MUST ENSURE THAT ALL REASONABLE

23      INTERPRETATIONS OF THEIR CLAIMS" MEANING THE CARBON NEUTRAL

24      CLAIMS, "ARE TRUTHFUL, NOT MISLEADING AND SUPPORTED BY A

25      REASONABLE BASIS BEFORE THEY MAKE THE CLAIMS."
```

1        AND WHAT I'M SAYING IS THAT OBVIOUSLY CREATES A DUTY FOR

2   THEM, FOR THE MARKETER, TO ENSURE THAT THOSE CLAIMS ARE TRUE

3   AND NOT MISLEADING.

4        APPLE'S ARGUMENT IS THAT THE FIRST TWO PRONGS DON'T

5   MATTER, IT CAN MAKE UNTRUE, MISLEADING STATEMENTS AS LONG AS

6   THEY HAVE A REASONABLE BASIS FOR DOING SO.

7        THEY SAY THAT THEIR REASONABLE BASIS IS THE THIRD PARTY

8   CERTIFICATION, AND ONLY THE THIRD PARTY CERTIFICATION.  THAT'S

9   DEALT WITH SEPARATELY IN THE GREEN GUIDES IN 260.6(C) WHICH

10  SAYS YOU CAN'T DO THAT.  YOU CAN'T BASE THE SUBSTANTIATION,

11  YOUR REASONABLE BASIS UNDER THE THIRD PRONG OF 260.2 CAN'T BE

12  THIRD PARTY CERTIFICATION.

13       THERE IS ONE CASE, YOUR HONOR, THAT'S DEALT WITH THIS HERE

14  IN THE --

15           THE COURT:  SO WHERE DOES IT SAY IN 260.6 THAT THEY

16  CANNOT USE THE THIRD PARTY CERTIFICATION?

17           MR. TRAMMEL:  IT DOESN'T.  IF I SAID THAT, I

18  MISSPOKE, YOUR HONOR.  IT SAYS IT DOES NOT ELIMINATE THEIR

19  OBLIGATION.  SO IT DOESN'T ALLEVIATE THEIR DUTY UNDER 260.2.

20  THEY CAN USE A THIRD PARTY CERTIFIER, AND THAT ALONE OF COURSE

21  IS NOT THE BASIS OF THIS ACTION, WHAT VERRA HAS OR HASN'T DONE.

22  OUR ALLEGATIONS ARE THAT APPLE HASN'T SATISFIED ITS OBLIGATIONS

23  UNDER THE LAW TO MAKE SURE THAT THEIR ADVERTISEMENTS WERE

24  TRUTHFUL.  THE WHAT VERA DID OR DIDN'T DO --

25           THE COURT:  IF THERE IS A GOOD FAITH REASON TO

1    BELIEVE THAT THE INFORMATION THEY HAD WAS RELIABLE, WHAT IS IT

2    ABOUT 260.6(C) THAT WOULD MAKE THAT INSUFFICIENT?

3              MR. TRAMMEL:  IT SAYS THAT YOU CAN'T RELY ON A THIRD

4    PARTY OR RELY --

5              THE COURT:  WHERE DOES IT SAY THAT?

6              MR. TRAMMEL:  IT SAYS GETTING A THIRD PARTY

7    CERTIFICATION DOES NOT ELIMINATE A MARKETER'S OBLIGATION TO

8    ENSURE THAT IT HAS SUBSTANTIATION FOR ALL CLAIMS REASONABLY

9    COMMUNICATED BY THE CERTIFICATION.

10     SO THEY CAN HIRE A THIRD PARTY CERTIFIER, THEY CAN USE A

11   THIRD PARTY CERTIFIER, BUT THEY STILL HAVE TO MAKE SURE -- THEY

12   STILL HAVE THEIR OBLIGATION UNDER 260.2 TO ENSURE THAT ALL

13   CLAIMS REASONABLY COMMUNICATED BY THOSE STATEMENTS ARE TRUE AND

14   NOT MISLEADING.

15     THIRD PRONG, THE REASONABLE BASIS PRONG UNDER 260.2, JUST

16   TO BE CLEAR, IT'S APPLE'S ARGUMENT THAT THIS THIRD PARTY OR THE

17   REASONABLE BASIS PRONG NEGATES THE FIRST TWO PRONGS THAT THE

18   ADVERTISEMENT HAS TO BE TRUTHFUL AND NOT MISLEADING, AND IF YOU

19   SHOW A REASONABLE BASIS, IN THIS CASE THE REASONABLE BASIS THEY

20   ARE ARGUING IS THE VERRA THIRD PARTY CERTIFICATION AND ONLY THE

21   VERRA THIRD PARTY CERTIFICATION, THEN YOU HAVE MET THE

22   REQUIREMENTS OF 260.2 AND YOU ARE IN THE SAFE HARBOR.

23              NOT ONLY DOES THAT --

24              THE COURT:  CAN YOU SPECIFICALLY TELL ME WHERE IN THE

25    BRIEF THEY SAID THAT?

1          MR. TRAMMEL:  I DON'T HAVE THEIR BRIEF IN FRONT OF

2    ME, YOUR HONOR.  I'M SURE THEY WON'T DENY THAT THE REASONABLE

3    BASIS STANDARD IS MET BY THE THIRD PARTY VERRA CERTIFICATION.

4          THE COURT:  NO.  I DIDN'T SAY THAT.  THAT THEY ONLY

5    HAD --

6          MR. TRAMMEL:  THEY OBVIOUSLY DON'T CLAIM THAT THEY

7    CAN SAY UNTRUE THINGS, YOUR HONOR.  I'M SORRY, I DIDN'T MEAN TO

8    IMPLY THAT.

9          THE COURT:  OKAY.

10         MR. TRAMMEL:  I DIDN'T MEAN TO INTERRUPT THE COURT,

11   YOUR HONOR, I'M SORRY.

12         THE COURT:  IT'S OKAY.

13         MR. TRAMMEL:  AND SO GREEN GUIDES ARE CLEAR IT'S

14   THEIR DUTY TO MAKE SURE THEY ARE COMMUNICATING TRUTHFUL

15   INFORMATION TO THE PUBLIC, AND THEY CANNOT OUTSOURCE THAT DUTY

16   TO A THIRD PARTY, WHICH IS THEIR ARGUMENT HERE TODAY, THAT AS A

17   MATTER OF LAW YOU MUST FIND THEM IN THE SAFE HARBOR BECAUSE

18   VERRA HAS -- THE THIRD PARTY CERTIFIER HAS ASSURED THEM THAT

19   THESE PROJECTS ARE LEGITIMATE.

20         THE GREEN GUIDES REQUIRE MORE OF THEM THAN THAT, THEY HAVE

21   A DUTY TO DO SOMETHING.  AND THE TRIER OF FACT MAY DETERMINE

22   THEY HAVEN'T DONE IT OR THEY HAVE DONE IT BUT THEY DO HAVE A

23   DUTY.

24         THE COURT:  IS THERE ANY GUIDANCE THAT YOU CAN GIVE

25   ME, ANYTHING IN THE GREEN GUIDES OR ELSEWHERE THAT WOULD

1      INDICATE IN A PRACTICAL WAY WHAT THAT TRANSLATES TO?

2           MR. TRAMMEL:  SURE.  SO A CASE MENTIONED IN OUR

3      BRIEF, THE DELTA AIRLINES CASE IN THE CENTRAL DISTRICT OF

4      CALIFORNIA, THE PLAINTIFF SUED DELTA FOR MAKING CLAIMS IT WAS

5      CARBON NEUTRAL ACROSS ITS OPERATION, VERY SIMILAR CASE TO OURS,

6      THE COURT FOUND THAT THE ALLEGATIONS THAT THE CARBON OFFSET

7      PROJECTS WERE ILLEGITIMATE WAS SUFFICIENT TO SATISFY PLEADING

8      STANDARDS IN THE CLRA.  THERE, AS HERE, DELTA TRIED TO REFRAME

9      THE CASE INTO A ILLEGITIMATE CERTIFICATION CASE OR A

10     DISAGREEMENT ABOUT THE METHODOLOGY USED TO CERTIFY THE CREDITS.

11          WHAT THE COURT SAID, WHICH WAS THAT THERE, AS HERE, OUR

12     ALLEGATION IS AGAINST THE COMPANY BASED ON ITS CARBON NEUTRAL

13     STATEMENTS, NOT AGAINST THE CERTIFIER AND HAS NOTHING TO DO

14     WITH WHAT THE CERTIFIER DID OR DIDN'T DO, IT'S FRANKLY

15     IRRELEVANT AND IMMATERIAL TO OUR ALLEGATIONS.

16          WE DID AN INVESTIGATION THAT APPLE COULD HAVE DONE, I'M

17     SURE APPLE COULD HAVE DONE A MUCH MORE SOPHISTICATED

18     INVESTIGATION THAN WE DID AND DETERMINE THE CREDITS WERE

19     ILLEGITIMATE.  AND IF THE CREDITS WERE ILLEGITIMATE, THE CARBON

20     NEUTRAL CLAIM IS INCORRECT.

21          THE COURT:  SO COUNSEL, LET'S JUST SAY, I'M USING AN

22     EXTREME EXAMPLE BUT I'M JUST TRYING TO FOLLOW THE LOGIC THAT

23     YOU HAVE HERE, LET'S JUST SAY YOU DID A DIFFERENT ANALYSIS,

24     USED DIFFERENT MATH, NEW MATH, WE DID IT, WE CAME UP WITH A

25     DIFFERENT ANSWER, THEREFORE WE GET TO PROCEED.  THAT'S ENOUGH.

1    IT'S JUST ENOUGH THAT WE SAY IT.  IT MAY OR MAY NOT BE TRUE, IT

2    MAY OR MAY NOT BE BASED ON SOMETHING, BUT WE HAVE SAID IT, WE

3    DID THE MATH OURSELVES AND CAME UP WITH A DIFFERENT ANSWER SO

4    THEREFORE WE GET PAST THIS PHASE.

5        IS THAT IN FACT WHAT YOU ARE SAYING?

6        MR. TRAMMEL:  NO, IT'S NOT WHAT WE ARE SAYING,

7    YOUR HONOR.  WE'RE SAYING BASED ON DEFICIENCIES WITH THE

8    PROJECTS THAT ARE OBSERVABLE WITH PUBLICLY AVAILABLE

9    TECHNOLOGIES, THE CARBON OFFSETS THAT APPLE CLAIMS TO HAVE

10   ACHIEVED ARE IMPOSSIBLE.

11       THE COURT:  THESE ARE DEFICIENCIES AS YOU HAVE

12   IDENTIFIED THEM, NOT DEFICIENCIES THAT ARE ELSEWHERE THAT YOU

13   HAVE POINTED TO, THIS IS YOUR OWN ANALYSIS THAT YOU HAVE DONE,

14   CORRECT?

15       MR. TRAMMEL:  SO YES, IT IS OUR OWN ANALYSIS, BUT WE

16   DESCRIBE IN DETAIL WHAT ANALYSIS WE DID, IT'S AVAILABLE FOR

17   THEM TO REPLICATE AND DISPUTE IF THEY WANT.  THERE HAVE BEEN --

18   VERRA HAS RAISED ISSUES BASED ON COMMENTS FROM STAKEHOLDERS

19   ABOUT THESE PROJECTS, THE MAIN PROJECT AT ISSUE HERE THEY HAVE

20   STOPPED ISSUING CREDIT OFFSETS FOR BECAUSE OF ISSUES THAT HAVE

21   BEEN RAISED.

22       AND SO YES, I'M NOT AWARE OF AN INDEPENDENT INVESTIGATION,

23   CERTAINLY VERRA, I'M NOT AWARE OF ANYONE WHO HAS DONE THIS

24   OTHER THAN US, YOUR HONOR, BUT AGAIN WE USE PUBLICLY AVAILABLE

25   TECHNOLOGY, WE DESCRIBE WHAT WE DID.  CERTAINLY IF WE WERE

1    WRONG, I WOULD HAVE EXPECTED TO HEAR ABOUT IT BY NOW FROM A

2    SOURCE OTHER THAN VERRA.

3         BUT YES, YOUR HONOR, WE PLED THE FACTS, PLED EXTENSIVELY

4    THAT THESE WERE ILLEGITIMATE CARBON OFFSET PROJECTS AND

5    THEREFORE THE CARBON NEUTRAL CLAIMS WERE MISLEADING.

6         THE COURT:  CAN YOU POINT ME TO ANYTHING WHERE THERE

7    IS LEGISLATIVE HISTORY AS IT RELATES TO THIS, IN THE PLAIN

8    LANGUAGE ITSELF OR IN OTHER CASE LAW THAT EXPLAINS SPECIFICALLY

9    WHAT THAT DUTY IS?

10        MR. TRAMMEL:  NO, NO, BUT THERE IS ONE.

11        AND AGAIN, YOUR HONOR, I ASSUME IT'S GOING TO BE FOR THE

12   TRIER OF FACT TO DETERMINE WHETHER IT'S BEEN MET OR NOT, BUT

13   THE FACT IS THE MARKETER CLEARLY HAS A DUTY UNDER THE PLAIN

14   LANGUAGE OF THE GREEN GUIDES AND CANNOT OUTSOURCE THAT DUTY TO

15   A THIRD PARTY.

16        THE COURT:  SO I UNDERSTAND THAT YOU JUST JUMPED TO

17   TRIAL HERE AND WHAT A TRIER OF FACT WOULD FIND BUT IT'S UP TO

18   THE COURT TO MAKE DECISIONS OF LAW AND THE TRIER OF FACT TO

19   ASSESS WHAT HAPPENED.  THE COURT WOULD HAVE TO INSTRUCT THE

20   JURY, I WOULD HAVE TO TELL THEM WHAT THAT MEANS.  WHAT DOES IT

21   MEAN?

22        MR. TRAMMEL:  WELL I ACKNOWLEDGE, YOUR HONOR, THAT

23   THAT PART OF THIS CASE WILL BE A MATTER OF FIRST IMPRESSION.

24   I'M NOT AWARE OF ANOTHER COURT THAT HAS ANSWERED THAT QUESTION

25   EXPLICITLY, CERTAINLY IT WAS IMPLICITLY ADDRESSED BY THE BARREN

1    COURT, BUT NO ONE HAS EVER DESCRIBED THAT DUTY, AS FAR AS I

2    KNOW, IN A WRITTEN OR IN A PUBLISHED OPINION.

3         THE COURT:  YOU ARE MAKING A LEGAL CLAIM, YOU ARE

4    HOLDING THEM TO THAT STANDARD, WHAT IS THE LEGAL BASIS FOR

5    THAT?

6         MR. TRAMMEL:  IT'S THE SIMPLEST LEGAL CLAIM IN

7    CONSUMER PROTECTION LAW, YOUR HONOR, IT'S THAT THEY HAVE MADE

8    AN UNTRUTHFUL CLAIM AS PART OF MARKETING THAT WE RELIED ON AND

9    PAID A PRICE PREMIUM FOR.

10    THEY HAVE A DUTY TO ENSURE THAT THEIR MARKETING CLAIMS ARE

11    TRUE, AND WHETHER THAT DUTY IS MET OR NOT I SUPPOSE IS A

12    FACTUAL MATTER, IT COULD BE A LEGAL MATTER, BUT THE LEGAL

13    EXISTENCE OF A DUTY IS MANIFEST ON THE FACE OF THE GREEN GUIDES

14    AND IN CONSUMER PROTECTION LAW GENERALLY THAT WHEN A SELLER

15    MAKES A MARKETING CLAIM, IT HAS A DUTY TO ENSURE THAT MARKETING

16    CLAIM IS TRUE ON, NOT DECEPTIVE.

17         THE COURT:  HOW WOULD A SMALL COMPANY THAT IS NOT

18    APPLE THAT IS TRYING TO DO THE RIGHT THING HERE MAKE SOMETHING

19    SMALL, HAS A SMALL MARKET AND WANTS TO DO THE RIGHT THING AND

20    WANTS TO PROVIDE SOME CARBON OFFSETS AND WANTS TO LET THEIR

21    CUSTOMERS KNOW THAT THEY ARE DOING THE BEST THEY CAN UNDER THAT

22    SPACE, HOW ARE THEY EVER GOING TO BE ABLE TO DO WHAT YOU JUST

23    DID?

24         MR. TRAMMEL:  WELL I THINK WHAT A COMPANY IS ABLE TO

25    DO IS GOING TO VARY BY THE COMPANY.  I THINK A SMALL COMPANY

1    COULD MEET ITS DUTY IN A DIFFERENT WAY THAN A COMPANY LIKE

2    APPLE.  I THINK IT'S ALWAYS GOING TO BE A MATTER OF -- MEETING

3    THAT DUTY, I THINK IS GOING TO BE A MATTER OF WHAT YOU WOULD

4    REASONABLY EXPECT OF A COMPANY THAT'S MAKING THAT MARKETING

5    CLAIM.

6          THE COURT:  SO IS IT A FLEXIBLE STANDARD IF YOU ARE A

7    BIGGER COMPANY AND YOU HAVE MORE MONEY TO SPEND, YOU HAVE A

8    BIGGER OBLIGATION THAN IF I'M A SMALL COMPANY AND I OWN A LOCAL

9    HEATING AND AIR CONDITIONING COMPANY AND I WANT TO DO AN

10   OFFSET, I CAN RELY ON THIS THIRD PARTY BECAUSE THAT WOULD BE

11   SUFFICIENT?

12         MR. TRAMMEL:  NO, YOUR HONOR.  THE EXISTENCE OF THE

13   DUTY IS NOT FLEXIBLE.  SO THE DUTY EXISTS FOR ANYBODY WHO IS

14   MAKING ENVIRONMENTAL MARKETING CLAIMS, AND NO ONE WHO MAKES

15   ENVIRONMENTAL MARKETING CLAIMS CAN RELY ON A THIRD PARTY

16   CERTIFICATION ALONE TO ENSURE THAT THOSE CLAIMS ARE TRUE.

17         THE COURT:  SO SMALL COMPANIES THEN IN FACT COULDN'T

18   DO THIS, CORRECT?  THE OUTCOME OF THIS IS THAT IT WOULD

19   PROFOUNDLY STIFLE.

20         MR. TRAMMEL:  NO, I THINK A SMALL COMPANY WOULD HAVE

21   A DUTY OF REASONABLE CARE TO ENSURE THAT THE MARKETING CLAIMS

22   IT WAS MAKING WERE TRUE.

23         THE COURT:  AND HOW WOULD IT DO THAT?

24         MR. TRAMMEL:  I THINK IT COULD USE PUBLICLY AVAILABLE

25   TECHNOLOGY, WHICH WE HAVE DONE YOUR HONOR, AND IF IT WASN'T

1    SURE THAT THOSE CLAIMS WERE TRUE, IF IT WASN'T SATISFIED THAT

2    IT WAS A DUTY IT WAS ABLE TO MEET THEN IT SHOULDN'T MAKE THOSE

3    CLAIMS.

4         THE COURT:  SO COUNSEL, THERE IS NO EASY ANALOGY FOR

5    ME FOR THIS, BUT I THINK ABOUT PRODUCTS THAT -- FINANCIAL

6    PRODUCTS, FOR EXAMPLE BONDS ARE RATED BY INDEPENDENT ENTITIES,

7    LOTS AND LOTS OF SMALL, NOT JUST LARGE BANKS AND LARGE

8    FINANCIAL INSTITUTIONS, BUT SMALLER FOLKS WHO PROVIDE

9    INVESTMENT ADVICE WHO WILL LOOK AT THAT AND MAKE

10   RECOMMENDATIONS TO THEIR CLIENTS THAT YOU SHOULD BUY A

11   PARTICULAR BOND BECAUSE IT HAS AN "A" RATING, IDENTIFIED BY

12   SOMEONE ELSE, ASSESSED.

13        THIS APPEARS TO BE THE EQUIVALENT OF SAYING, WELL YOU

14   REALLY CAN'T DO THAT, YOU NEED TO GO AND INDEPENDENTLY MAKE A

15   DETERMINATION ABOUT WHETHER THAT BOND REALLY QUALIFIES FOR THAT

16   RATE, IT'S UP TO YOU.

17        I'M TRYING TO DRILL DOWN OF WHAT IT IS I CAN RELY ON HERE

18   THAT SPECIFICALLY EXPLAINS WHAT IT IS THEY NEEDED TO DO.  I

19   HEAR YOU SAYING ONE THING THAT THE REGULATIONS SAY THEY CANNOT

20   DO IS RELY ENTIRELY ON A THIRD PARTY CERTIFICATION, THAT

21   DOESN'T ELIMINATE THEIR DUTY.  THE FACT THAT THEY HAVE DONE

22   THAT DOESN'T ELIMINATE IT.  BUT WHAT I DON'T SEE IS ANYTHING

23   THAT SAYS WHAT THEY HAVE TO DO.

24        MR. TRAMMEL:  SO I THINK BECAUSE IT WOULD BE

25   IMPOSSIBLE TO EXPLAIN HOW EVERY MARKETER, EVERY SITUATION WOULD

1    MEET THAT DUTY, WHAT THE GREEN GUIDES DO IS THEY TELL US THAT

2    THE DUTY EXISTS.  AND I THINK WHETHER THE DUTY IS MET WILL BE A

3    FACT ISSUE IN ALL THESE CASES, BUT THEY DO HAVE A DUTY OF

4    REASONABLE CARE TO ENSURE THAT THOSE CLAIMS ARE TRUTHFUL BASED

5    ON THE PLAIN LANGUAGE OF 260.2.  AND I DO --

6         THE COURT:  BUT IT DOESN'T SAY THAT THEY HAVE TO

7    INDEPENDENTLY EVALUATE, DOES IT?

8         MR. TRAMMEL:  YES, IT DOES.

9         THE COURT:  TELL ME WHERE.

10        MR. TRAMMEL:  IT IS THE MARKETER'S OBLIGATION TO

11   ENSURE.  NOT RELYING ON A THIRD PARTY, IT IS THE MARKETER'S

12   OBLIGATION TO ENSURE IS WHAT 260.2 SAYS.

13      I WOULD ALSO POINT --

14        THE COURT:  I DON'T WANT TO KEEP GOING AROUND IN

15   CIRCLES WITH YOU ABOUT THIS BECAUSE IT SAYS WHAT IT SAYS, YOU

16   CAN'T MAKE IT SAY SOMETHING DIFFERENT AND NOR CAN I, WHAT SEEMS

17   FAIR TO SAY IS IT DOESN'T EXPLAIN IT.

18        MR. TRAMMEL:  WELL IT DOESN'T SAY HOW APPLE WOULD

19   HAVE MET THE DUTY, COULD HAVE MET THE DUTY IN THIS CASE, IT

20   SIMPLY SAYS THERE WAS ONE.

21      THERE IS ANOTHER CASE THAT I THINK IS INSTRUCTIVE,

22   YOUR HONOR, IT'S THE KEURIG CASE FROM 2019 CITED IN OUR BRIEF

23   FROM THIS DISTRICT, JUDGE GILLIAM, WHERE THE SAFE HARBOR WAS

24   INVOKED BY THE DEFENDANT, AND JUDGE GILLIAM EXPLAINED THAT

25   BECAUSE THE CONDUCT AT ISSUE WAS PROHIBITED BY THE GREEN

1    GUIDES, THE CONDUCT PLED BY THE PLAINTIFFS AS A VIOLATION OF

2    THE CLRA AND UCL WAS PROHIBITED BY THE GREEN GUIDES, NO SAFE

3    HARBOR WOULD APPLY.

4        SAME THING HERE, WE ALLEGE THEY HAVE MADE UNTRUE

5    ENVIRONMENTAL MARKETING STATEMENTS, THAT IS CONDUCT THAT IS

6    PROHIBITED BY THE GREEN GUIDES.

7        THE COURT:  NOT UNTRUE BECAUSE THEY HAD ANY

8    ADDITIONAL INFORMATION, NOT UNTRUE BECAUSE THE VERIFIER SAID

9    ONE THING AND THEY HAD SAID SOMETHING DIFFERENT, NOT BECAUSE

10   THEY FAILED TO DISCLOSE, NOT BECAUSE EVEN POTENTIALLY

11   REASONABLE SCIENTISTS MIGHT DISAGREE ABOUT THIS.

12       MR. TRAMMEL:  UNTRUE AS A MATTER OF FACT, YOUR HONOR,

13   ACCORDING TO THE ALLEGATIONS IN OUR COMPLAINT.

14       THE COURT:  OKAY.

15       MR. TRAMMEL:  IF I COULD JUST BRIEFLY ADDRESS A

16   COUPLE OF OTHER THINGS, YOUR HONOR?

17       THE COURT:  SURE.

18       MR. TRAMMEL:  THERE WAS THE ARGUMENT ABOUT THE BUFFER

19   POOL.

20       YOU KNOW, OBVIOUSLY THIS IS AN ARGUMENT THAT PAST UNTRUE

21   STATEMENTS COULD BE MADE TRUE AND THEREFORE WOULD BE

22   UN-ACTIONABLE.  WE HAVE GONE OVER THIS EXTENSIVELY IN OUR

23   BRIEF, YOUR HONOR, BUT THAT CERTAINLY CAN'T BE THE CASE THAT

24   YOU CAN MAKE WHATEVER MISREPRESENTATIONS YOU WANT AS LONG AS

25   YOU CAN CURE THEM LATER, IT'S THE FACTS THAT EXIST AT THE TIME

```
1         OF THE PURCHASE THAT ARE AT ISSUE.

2             THE BUFFER POOL, FOR WHAT IT'S WORTH YOUR HONOR, IS MADE

3     UP OF THE VERY SAME PROJECTS THAT ARE CRITICIZED IN OUR FIRST

4     AMENDED COMPLAINT.

5             ON THE ARTICLE III ISSUE, YOUR HONOR, IN TERMS OF NON

6     WATCH BUYERS THAT ARE IN OUR CLASS, THE TEST IS OF COURSE

7     WHETHER IT'S THE SAME INJURY.  HERE WE ALLEGE RELYING ON THE

8     EXACT SAME CARBON NEUTRAL REPRESENTATIONS BASED UPON THE EXACT

9     SAME CARBON OFFSET PROJECTS WITH THE EXACT SAME PRICE PREMIUM

10    INJURY IN FACT WHICH OF COURSE UNDER NINTH CIRCUIT LAW IS

11    INJURY IN FACT UNDER THE ENERGIZER HOLDINGS CASE.

12            I DON'T RECALL A 9(B) ARGUMENT, YOUR HONOR, BUT I WOULD

13    ADD THAT WE DEPICTED THE ADVERTISING IN OUR COMPLAINT,

14    INCLUDING THE PACKAGING CONTAINED IN THE CARBON NEUTRAL CLAIMS,

15    ALL IN OUR COMPLAINT, ALONG WITH AS I'VE SAID SEVERAL TIMES

16    NOW, EXTENSIVE ALLEGATIONS ABOUT THE REASONS FOR THE

17    DEFICIENCIES OF THESE CARBON OFFSET PROJECTS AND WHERE AND WHEN

18    APPLE COMMUNICATED THAT INFORMATION TO ITS CONSUMERS.

19            THANK YOU, YOUR HONOR.

20                THE COURT:  THANK YOU.

21        DO YOU WISH TO RESPOND?

22                MR. SINGH:  I WILL BE VERY BRIEF, YOUR HONOR.

23                THE COURT:  OKAY.

24                MR. SINGH:  I'VE GOT TO CARRY THE BIG BINDER UP WITH

25        ME THIS TIME.
```

1          JUST A COUPLE OF QUICK POINTS, YOUR HONOR.

2          FIRST, AT LOOKING IN ENGAGING WITH 260.2 WHICH IS THE

3     LANGUAGE THAT SAYS MARKETERS MUST ENSURE THAT ALL REASONABLE

4     INTERPRETATIONS OF THEIR CLAIMS ARE TRUTHFUL, NOT MISLEADING

5     AND SUPPORTED BY A REASONABLE BASIS.  PLAINTIFF MISSPOKE IN

6     SAYING THAT WE ARE NOT ARGUING THAT THE FIRST TWO NOT TRUTHFUL

7     MISLEADING STANDARDS DON'T APPLY.

8          THIS IS WHERE IT GOES DOWN TO OUR ARGUMENT THAT IF WE

9     DISCLOSE THE STANDARD AND THE METHODOLOGY THAT WAS APPLIED, AND

10    WE DID, APPLE DID DISCLOSE THAT IT WAS USING VERRA AS THE

11    CERTIFIER, THE PROJECTS AT ISSUE, THE METHODOLOGY AT ISSUE, HOW

12    THEY REACHED THE CONCLUSION TOO CERTIFY, ALL THE CRITICISM OR

13    NOT, OF THE PROJECTS AT ISSUE, IT'S ALL PUBLICLY AVAILABLE,

14    THAT THE STATEMENTS ARE NOT DECEPTIVE AND ARE TRUTHFUL AS

15    REPRESENTED.

16         IT GOES BACK DOWN TO THE BASIC PRINCIPLE UNDER THE GREEN

17    GUIDES OF MARKETING STATEMENTS CAN BE MADE NONDECEPTIVE BY

18    DEFINING THEM AND CONTEXTUALIZING THEM.

19         I ALSO HAD GIVEN YOU --

20         THE COURT:  TELL ME WHERE I CAN FIND THAT, THE LAST

21     THING YOU JUST SAID.

22         MR. SINGH:  16 CFR 260, YOUR HONOR, IT WOULD BE

23     SECTION 1 ABOUT GENERAL ENVIRONMENTAL CLAIMS.  AND IT SAYS IT

24     GENERALLY CAUTIONS AGAINST UNQUALIFIED GENERAL ENVIRONMENTAL

25     CLAIMS BUT GOES ON TO PROVIDE THAT MARKETERS CAN QUALIFY

1      GENERAL ENVIRONMENTAL CLAIMS.

2          I WOULD ALSO ADD THAT WE BELIEVE --

3              THE COURT:  CAN YOU DIRECTLY SPECIFICALLY WHERE YOU

4      ARE TALKING ABOUT HERE?

5              MR. SINGH:  YEAH, IN MY VERSION, JUDGE, THERE'S A

6      ROMAN 1 CALLED GENERAL ENVIRONMENTAL CLAIMS.  IT'S UNDER 16 CFR

7      260.  WERE YOU ABLE TO FIND THAT?

8              THE COURT:  I'M IN 260, THE FIRST ONE IS 260.1.

9              MR. SINGH:  I HAVE THE PRINTOUT FROM THE FEDERAL

10     REGISTER SO IT'S A LITTLE HARD FOR ME TO -- THE SECTION BEGINS

11     WITH "THE FINAL GUIDES CAUTION MARKETERS NOT TO MAKE

12     UNQUALIFIED GENERAL ENVIRONMENTAL BENEFIT CLAIMS."

13         OH, I SEE, YOUR HONOR, THIS IS THE PREAMBLE BEFORE ALL THE

14     SECTIONS IN ADOPTING THE FTC GREEN GUIDES, THERE IS SOME

15     PREAMBLE LANGUAGE BEFORE GETTING INTO THE SPECIFIC SUBSECTIONS,

16     IT WOULD BE ROMAN 1 GIVES GENERAL GUIDANCE ON GENERAL

17     ENVIRONMENTAL CLAIMS.

18         AND THE GENERAL CONCEPT THROUGH THAT PARAGRAPH,

19     YOUR HONOR, IS THE FTC DOES CAUTION AGAINST UNQUALIFIED BROAD

20     ENVIRONMENTAL CLAIMS BUT GOES ON TO SAY YOU CAN DEFINE AND

21     CONTEXTUALIZE, WHICH IS ONE OF THE UNDERLYING PRINCIPLES OVER

22     ALL OF GREEN MARKETING THAT THE FTC ADOPTED WITH THE GREEN

23     GUIDES.

24         THAT PRINCIPLE IS CONSISTENT WITH THE NINTH CIRCUIT

25     HOLDING IN MCGINITY THAT I HAD MENTIONED EARLIER, THAT WAS THE

1    PROCTOR AND GAMBLE CASE WHERE THE STATEMENT ON THE FRONT WAS

2    NOT DECEPTIVE BECAUSE IT WAS DEFINED AND CONTEXTUALIZED ON THE

3    BACK.

4         SO AGAIN, OUR CORE ARGUMENT WITH RESPECT TO THE TRUTHFUL

5    NOT MISLEADING ARGUMENT IS WE DISCLOSED WHAT STANDARD, WHAT THE

6    STANDARD WAS, HOW WE MET THE STANDARD, THE METHODOLOGY, AND THE

7    STATEMENT WAS TRUE AND NOT MISLEADING AS DESCRIBED WITH APPLE'S

8    TRANSPARENCY AND ITS DISCLOSURES.

9         SO THAT BRINGS US TO THE OTHER ISSUE THAT YOU ENGAGED WITH

10   OPPOSING COUNSEL ON WHICH IS THE SUBSTANTIATION REQUIREMENT

11   UNDER -- THE SUBSTANTIATION REQUIREMENT UNDER 260.2.  IT NEEDS

12   TO HAVE A REASONABLE BASIS.

13        AND I THINK THE REASONABLE BASIS THAT WE HAVE SUPPLIED, I

14   DON'T THINK THERE IS ANY RULE THAT REQUIRES THAT IT MEANS THAT

15   THE MARKETER PERSONALLY CONDUCT THE STUDIES OR TRAVEL TO KENYA

16   OR TRAVEL TO CHINA AND VERIFY WHAT HAPPENED.  A REASONABLE

17   BASIS HERE WAS WE USED VERRA WHICH IS AN INTERNATIONALLY

18   RECOGNIZED AND THE TOP -- ONE OF THE TOP NON PROFITS FOR

19   CERTIFYING CARBON OFFSETS.  VERRA APPLIED AN INTERNATIONALLY

20   RECOGNIZED STANDARD WHICH IS THE STANDARD CITED IN EACH OF OUR

21   PRODUCT ENVIRONMENTAL REPORTS, THAT IS ALSO A REASONABLE BASIS.

22   THE PROJECT MANAGERS FOR THESE PROJECTS TESTED AGAINST THE

23   STANDARDS AND HAD TO SUBMIT REPORTS, THAT'S PART OF THE

24   REGISTRY INFORMATION THAT WE SUBMITTED.

25        THERE WAS THEN AUDITORS --

1        THE COURT:  WELL PLAINTIFF'S ARGUMENT IS ALL OF THIS

2   IS WHAT THEY DID, NOT WHAT YOU DID, IT'S WHAT THEY DID.  AND IF

3   YOU CAN POINT TO NOTHING OTHER THAN WHAT THEY DID, WHAT DID YOU

4   DO?

5        MR. SINGH:  YEAH.  I DON'T THINK THERE IS A

6   REQUIREMENT, YOUR HONOR, THAT YOU CAN'T POINT TO WHAT THEY DID.

7   IN FACT IF YOU LOOK AT THE REST OF THE RULE, GOING TO 260.2, IT

8   DEFINES IN THE CONTEXT OF ENVIRONMENTAL MARKETING CLAIMS, A

9   REASONABLE BASIS OFTEN REQUIRES COMPETENT AND RELIABLE

10  SCIENTIFIC EVIDENCE; SUCH EVIDENCE CONSISTS OF TESTS, ANALYSIS,

11  RESEARCH OR STUDIES THAT HAVE BEEN CONDUCTED AND EVALUATED IN

12  AN OBJECTIVE MANNER BY QUALIFIED PERSONS AND ARE GENERALLY

13  ACCEPTED IN THE PROFESSION TO YIELD ACCURATE AND RELIABLE

14  RESULTS.

15       I THINK THAT'S THE MISSING PIECE YOU WERE TRYING TO GET

16  FROM OPPOSING COUNSEL IN YOUR QUESTIONS, WHAT IS THE DEFINITION

17  FOR THAT REASONABLE BASIS?  AND IT'S IN THE RULE THERE.  WE DID

18  RELY ON A REASONABLE BASIS UNDER THAT STANDARD, ANALYSIS

19  RESEARCH STUDIES, IT'S ALL IN THE OPEN RECORD -- THE HUNDREDS

20  OF PAGES OF REPORTS THAT WE CITE THAT ARE AVAILABLE ON THE

21  REGISTRY LINK THAT WE OFFER IN OUR PRODUCT ENVIRONMENTAL

22  REPORTS.

23       ADDITIONALLY, ONE LAST ONE I WANTED TO POINT OUT IS APPLE

24  ALSO HAD AN AUDITOR --

25       THE COURT:  I WANT TO GO BACK TO THE POINT AGAIN THAT

1    THE PLAINTIFF MADE.  PLAINTIFF SAYS THERE'S THREE PRONGS,

2    TRUTHFUL, MISLEADING AND SUBSTANTIATED.

3         MR. SINGH:  YES.

4         THE COURT:  APPLE KEEPS RELYING ON SUBSTANTIATED TO

5    GET OVER THE TRUTHFUL AND MISLEADING, RIGHT -- AND NOT

6    MISLEADING.  WHY ARE THEY WRONG?

7         MR. SINGH:  WE ARE NOT RELYING ON A REASONABLE BASIS

8    FOR TRUTHFUL AND MISLEADING.  OUR ARGUMENT IS WE SAID WE ARE

9    CARBON NEUTRAL, WE SAID EXACTLY HOW WE GOT TO CARBON NEUTRAL

10   WHICH WAS THROUGH VERRA'S CERTIFICATION, THROUGH THE PROJECTS

11   WE IDENTIFIED, FOR PROJECTS WE IDENTIFIED THROUGH VERRA'S

12   CERTIFICATION PROGRAM FOR THOSE PROJECTS.

13       THE STANDARD THAT VERRA APPLIED, THE METHODOLOGY,

14   INCLUDING INTERNATIONALLY RECOGNIZED METHODOLOGIES THAT THE

15   PROJECT MANAGERS AND AUDITORS APPLIED IN VERIFYING AND

16   VALIDATING, AND SO WE ARE RELYING ON ALL OF THAT, YOUR HONOR.

17   WE ARE NOT ARGUING THAT IF THERE WAS A REASONABLE BASIS, IT

18   DOES NOT HAVE BE TO TRUTHFUL OR MISLEADING, WE ARE RELYING ON

19   THE BODY OF LAW THAT SAYS THAT WHERE YOU DEFINE -- WHERE YOU

20   CONTEXTUALIZE WHAT YOU SAID AND IT'S ALL OUT THERE THEN IT'S

21   NOT MISLEADING.

22       WE GOT TO -- WE DIDN'T JUST SAY CARBON NEUTRAL, WE

23   EXPLAINED HOW WE GOT TO CARBON NEUTRAL, WHAT STANDARD WAS

24   APPLIED.  AND SO THIS IS LIKE THE ALLBIRDS CASE WHERE IT IS AN

25   ATTACK ON THE STANDARD AND THE METHODOLOGY, BUT IT WASN'T

1    MISLEADING BECAUSE THE STANDARD THAT WAS APPLIED AND THE

2    METHODOLOGY THAT WERE APPLIED, THE COMPANY, ALLBIRDS IN THAT

3    CASE, SHOWED ITS WORK, APPLE ALSO SHOWED ITS WORK HERE.

4         LASTLY ON THE BUFFER POOL POINT --

5              THE COURT:  SORRY, JUST STICKING ON THIS FOR ONE

6    MOMENT.  260.6 C, "THIRD PARTY CERTIFICATION DOES NOT ELIMINATE

7    A MARKETER'S OBLIGATION TO ENSURE IT HAS SUBSTANTIATION FOR ALL

8    CLAIMS REASONABLY COMMUNICATED BY THE CERTIFICATION."

9         SO I DO NOT READ THIS -- PLAINTIFF COULDN'T POINT ME TO

10   ANYTHING THAT SAYS YOU CAN'T USE A THIRD PARTY CERTIFIER OR

11   EVEN THAT IT'S NOT REASONABLE INHERENTLY TO DO SO.  BUT IT DOES

12   SAY YOU CAN'T SUBSTITUTE THAT.  SO HOW IS IT THAT APPLE DIDN'T

13   SUBSTITUTE THAT?

14             MR. SINGH:  I DON'T UNDERSTAND WHAT YOU MEAN BY

15   "SUBSTITUTE THAT," YOUR HONOR.

16             THE COURT:  MEANING SUBSTITUTE VERRA'S -- HERE'S

17   EVERYTHING VERRA DID, HERE ARE ALL THE THINGS THAT WAS PUBLIC,

18   WE HAVE MADE THAT PUBLIC.

19             MR. SINGH:  YEAH.  I DON'T READ, IT HAS

20   SUBSTANTIATION, AS SAYING THAT YOUR SUBSTANTIATION CAN'T BE

21   INFORMATION AVAILABLE FROM THIRD PARTIES.  THAT MAY BE A MATTER

22   OF FIRST IMPRESSION WHEN IT COMES TO CARBON OFFSETS, WHETHER IT

23   HAS SUBSTANTIATION MEANS THAT YOU CAN'T RELY ON INFORMATION

24   FROM THE PROJECT MANAGERS, FROM THE AUDITORS OF THE PROJECT.

25             I WILL ALSO NOTE APPLE HAD SRC.  AS WE POINTED OUT, WE HAD

1    AN AUDITOR COME IN AND CALCULATE WHETHER WE WERE CARBON NEUTRAL

2    AND WE ATTACHED THOSE CERTIFICATIONS TO THE PRODUCT

3    ENVIRONMENTAL REPORTS THAT WERE CITED IN THE COMPLAINT.  SO

4    THERE IS AN AUDITOR AS WELL.

5             THE COURT:  I DON'T GET THE IMPRESSION THAT PLAINTIFF

6    IS ARGUING YOU DID THE MATH WRONG BASED ON WHAT YOU RELIED

7    UPON.  WHAT THEY ARE SAYING IS YOU RELIED UPON THE WRONG THING

8    AND THEREFORE EVERYTHING THAT FLOWS FROM THAT IS WRONG,

9    INCLUDING THE MATH.

10            MR. SINGH:  I THINK YOU ARE PROBABLY RIGHT THAT THEY

11   ARE NOT SAYING -- WELL THEY DO HAVE AN ARGUMENT THAT THE MATH

12   IS WRONG AS WELL -- BUT TO YOUR POINT WITH RESPECT TO THE

13   ILLEGITIMACY ARGUMENT YOU ARE MAKING, I DON'T THINK THEY ARE

14   MAKING IT BASED ON THE MATH BEING WRONG, THE CALCULATION BEING

15   WRONG.

16        I WOULD LIKE TO HONE THE COURT'S ATTENTION THOUGH IN THE

17   "ALL CLAIMS REASONABLY COMMUNICATED BY THE CERTIFICATION"

18   LANGUAGE AT THE END OF THE SENTENCE THAT YOU ARE POINTING TO.

19            APPLE HAS EXPLAINED THAT IT IS APPLYING THE VERRA STANDARD

20   AND THE METHODOLOGY, IT IS NOT REASONABLY COMMUNICATED BY ANY

21   OF APPLE'S REPRESENTATIONS THAT WE ARE APPLYING THE SATELLITE

22   IMAGERY TECHNIQUE THAT THE PLAINTIFF FIRMS HERE APPLIED.  THAT

23   IS NOT REASONABLY COMMUNICATED BY THE CERTIFICATION THAT WE

24   APPLIED THAT SATELLITE IMAGERY METHODOLOGY.  THAT LANGUAGE

25   MATTERS, IT QUALIFIES, YOUR HONOR, THE TYPE OF SUBSTANTIATION

1          THAT YOU NEED.

2               WE CLEARLY HAVE SUBSTANTIATION FOR SAYING THE PRODUCT IS

3          CARBON NEUTRAL AS CERTIFIED BY VERRA UNDER THE STANDARD THAT

4          VERRA EMPLOYS FOR STATION PROJECTS, AND THE PUBLIC

5          DOCUMENTATION MAKES THAT ALL CLEAR, IT'S ALL OUT IN THE OPEN,

6          THERE'S NO DECEPTION, THIS IS NOT CONSUMER FRAUD.

7                    THE COURT:  OKAY.

8                    MR. SINGH:  JUST ONE LAST POINT ON THE BUFFER POOL.

9               PLAINTIFF ARGUES THAT YOU CAN'T EMPLOY A RETROACTIVE

10          PROCESS.  ONE POINT THAT I WOULD JUST NOTE IS THAT THE CARBON

11          CREDIT PROCESS IS INHERENTLY RETROACTIVE.  YOU RETIRE CARBON

12          CREDITS AFTER THE FACT.  YOU PURCHASE -- THE WAY CARBON CREDITS

13          WORK, YOU DON'T KNOW THE YEAR'S EMISSION, SO THE NOTION THAT

14          YOU CAN'T DO ANYTHING RETROACTIVE AND THAT THAT'S A NONSTARTER,

15          THAT DOESN'T MAKE ANY SENSE WHEN YOU ARE DEALING WITH CARBON

16          CREDITS, IT'S ALL AFTER-THE-FACT ACCOUNTING.

17               WITH THAT SAID, YOUR HONOR, I JUST WANT TO UNDERSCORE

18          THERE HAS TO BE A PRACTICALITY TO THE RULES.  I HAVE EMPHASIZED

19          THROUGHOUT MY ARGUMENT THAT WE BELIEVE THE LAW HARMONIZES WITH

20          THE EQUITIES AND THE PUBLIC POLICY, BUT THE RULE THAT YOU ADOPT

21          HERE WILL HAVE IMPLICATIONS ON WHAT OBLIGATIONS BEN AND JERRY'S

22          HAS AND NOT JUST APPLE, AND WILL IMPACT WHETHER COMPANIES ARE

23          INCENTIVIZED TO PURCHASE VOLUNTARY CARBON UNITS AND TO

24          PARTICIPATE IN THIS MARKET AT A TIME WHERE WE REALLY NEED

25          COMPANIES TO ACT.

1    WITH THAT SAID, I HAVE NOTHING ELSE UNLESS YOU HAVE ANY

2    QUESTIONS, YOUR HONOR.

3         THE COURT:  NO.  THANK YOU.

4         MR. SINGH:  THANK YOU, YOUR HONOR.

5         MR. TRAMMEL:  MAY I BRIEFLY FOLLOW UP, YOUR HONOR?

6         THE COURT:  YES.  IT IS THE DEFENDANT'S MOTION SO I

7    WILL GIVE THE DEFENDANTS AN OPPORTUNITY TO HAVE THE LAST WORD

8    ABOUT IT.

9         MR. TRAMMEL:  THANK YOU.

10   AND AGAIN, I'M NOT GOING TO REHASH ANYTHING I'VE SAID, I

11   JUST WANT TO CLARIFY THE CLAIM AT ISSUE.  THE CLAIM THAT'S

12   REFERENCED IN THE GREEN GUIDES IS THE CARBON NEUTRALITY CLAIM,

13   NOT THE VERIFIABLE FACT OF VERRA'S CERTIFICATION.  OUR CASE IS

14   AGAINST APPLE BASED ON THEIR CARBON NEUTRALITY CLAIMS, IT IS

15   NOT BASED ON THEIR DISCLOSURES THAT THE CARBON OFFSET PROJECTS

16   WERE VERIFIED BY VERRA.

17   AND I JUST WOULD ENCOURAGE THE COURT NOT TO ADOPT APPLE'S

18   CIRCULAR REASONING OF 260.6 WHERE THEY WOULD SATISFY THEIR

19   OBLIGATION THAT THE THIRD PARTY CERTIFICATION COMMUNICATED

20   TRUTHFUL INFORMATION BY RELYING ON THE THIRD PARTY.  CERTAINLY

21   THAT CAN'T BE THE WAY THAT MARKETERS MEET THEIR OBLIGATIONS

22   UNDER 260.2.

23        THANK YOU, YOUR HONOR.

24        THE COURT:  THANK YOU.

25        I APPRECIATED THE BRIEFING IN THIS CASE AND I APPRECIATED

1    THE ARGUMENT, IT WAS QUITE HELPFUL.  IT IS A VERY IMPORTANT

2    ISSUE THAT HAS SIGNIFICANT IMPLICATIONS AND I WILL TREAT IT AS

3    SUCH.

4         I WILL NEED SOME TIME TO THINK ABOUT THE THINGS THAT YOU

5    HAVE ARGUED, AND IT WOULD BE HELPFUL FOR ME TO GET A COPY OF

6    THE TRANSCRIPT.

7         (OFF-THE-RECORD DISCUSSION.)

8         THE COURT:  WERE THERE ANY CASES THAT EITHER PARTY

9    CITED TODAY THAT WERE NOT INCLUDED IN THE BRIEFS?

10        MR. TRAMMEL:  THERE WAS ONE, YOUR HONOR, THAT I

11   CITED, IT WAS THE BOWEN V. ENERGIZER HOLDINGS CASE.  I HAVE THE

12   CITE.

13        MR. SINGH:  YOUR HONOR, I REFERENCED IN RE TOBACCO II

14   WHICH IS REFERENCED IN THEIR CASES BUT I DON'T BELIEVE WE CITED

15   IN RE TOBACCO II, IT'S THE SEMINAL CASE CITED IN SEVERAL OF THE

16   CASES THAT PLAINTIFF'S CITE.

17        MR. TRAMMEL:  I HAVE IT, YOUR HONOR, IT'S 118, F.4TH,

18   1134.

19        THE COURT:  THANK YOU.  AND WHAT WAS THE IN RE

20   TOBACCO CITE?

21        MR. SINGH:  I HAVE TO DIG IT OUT, I ACTUALLY THINK I

22   MAY NOT HAVE COVERED THE ARGUMENT IN MY MOVING SO I MAY HAVE

23   SKIPPED THAT.  LET ME SEARCH FOR A SECOND, YOUR HONOR.

24        (OFF-THE-RECORD DISCUSSION.)

25        THE COURT:  I WAS JUST REMINDED THAT YOU WERE

1    ACTUALLY ON FOR A CASE MANAGEMENT CONFERENCE FOR TODAY TOO.  I

2    FREQUENTLY WILL PUSH THOSE OFF UNTIL AFTER A DECISION ON A

3    MOTION TO DISMISS BECAUSE THE CASE REALLY ISN'T AT ISSUE YET;

4    HOWEVER IT MIGHT BE WORTH AT LEAST INQUIRING WITHOUT GETTING

5    INTO THE UNDERLYING SUBSTANCE, HAVE THE PARTIES HAD ANY KIND OF

6    SETTLEMENT DISCUSSIONS?

7         MR. SINGH:  NONE YET, YOUR HONOR.

8         MR. TRAMMEL:  NO, YOUR HONOR.

9         THE COURT:  DO YOU THINK THAT WOULD BE USEFUL?

10        MR. TRAMMEL:  IN MY EXPERIENCE, PROBABLY NOT UNTIL

11   AFTER THE COURT RULES.

12        MR. SINGH:  WE CERTAINLY THINK IT'S PREMATURE AS

13   WELL, YOUR HONOR.

14        THE COURT:  OKAY.  WITH THAT THEN I NEED TO SET YOU

15   OUT FOR ANOTHER DATE BECAUSE I NEED TO HAVE ONE.  THERE'S

16   LITTLE RISK THAT THIS CASE IS GOING TO GET LOST, BUT IN EVERY

17   CASE I HAVE ANOTHER DATE THAT'S SET THAT JUST KEEPS US ON

18   TRACK.

19        FOR NOW I WILL SIMPLY SET IT AS A FURTHER CASE MANAGEMENT.

20   DEPENDING ON WHAT HAPPENS AT THE OUTCOME OF THIS, I MAY OR MAY

21   NOT NEED TO MOVE THE TIMING WITH REGARDS TO THAT.  I RECOGNIZE

22   THAT YOU HAVE BEEN -- THIS IS A MOTION THAT'S BEEN OUT THERE

23   FOR QUITE SOME PERIOD OF TIME ALREADY, MONTHS, I KNOW THAT'S

24   MAYBE NOT ALL THAT UNCOMMON IN YOUR RESPECTIVE EXPERIENCES.  I

25   WILL SAY I DON'T LIKE PARTIES TO HAVE TO WAIT TOO LONG.  AS YOU

1    KNOW, I HAVE INHERITED A LOT OF THINGS AND A LOT OF NEW THINGS

2    THAT ARE HERE, SO WE WILL GET TO IT AS SOON AS WE CAN, BUT I'M

3    GOING TO -- RIGHT NOW I'M GOING TO SET OUR CASE MANAGEMENT OUT

4    PROBABLY ABOUT 90 DAYS, ONE BECAUSE WE HAVE THE HOLIDAYS IN

5    BETWEEN, IT'S GOING TO TAKE US A BIT OF TIME TO ISSUE AN ORDER.

6    NO MATTER WHAT I DO, AS A RESULT, THERE'S GOING TO BE SOMETHING

7    ELSE THAT THE PARTIES ARE GOING TO HAVE TO DO ALMOST CERTAINLY

8    AT THIS POINT.

9         SO LET ME STAY OFF-THE-RECORD JUST TO LOOK FOR TIMING.

10        (OFF-THE-RECORD DISCUSSION.)

11             THE COURT:  LET ME GO BACK ON THE RECORD.

12        TWO THINGS.  WE ARE GOING TO HAVE A CONTINUED CASE

13   MANAGEMENT CONFERENCE IN THIS CASE SET FOR FEBRUARY 10TH, THAT

14   IS A TUESDAY AT 9:00 A.M.  IF THAT DATE DOES STICK, I MAY WELL

15   DO THE SAME THING AND HAVE YOU A LITTLE BIT LATER SO I CAN

16   ADDRESS SOME OF THE OTHER CASES EARLIER BUT WE WILL KNOW WHEN

17   WE GET CLOSER TO THAT DATE.

18        I ALSO UNDERSTAND BASED ON THE BRIEF CONVERSATION WE JUST

19   HAD OFF THE RECORD ABOUT SCHEDULING, THAT I HAVE A CITATION NOW

20   FOR THE IN RE TOBACCO CASE; IS THAT CORRECT?

21             MR. MACBRIDE:  YES, YOUR HONOR.  IT'S IN RE

22   TOBACCO II CASE.  CITATION, 46 CAL.4TH, 298.

23             THE COURT:  ALL RIGHT.  THANK YOU.

24        WITH THAT, THANK YOU AGAIN VERY MUCH FOR THE ARGUMENTS AND

25   FOR THE BRIEFS, AND WE WILL GET SOMETHING OUT TO YOU, I CAN'T

1      TELL YOU EXACTLY WHEN.

2                  MR. TRAMMEL:  THANK YOU, YOUR HONOR.

3                  MR. SINGH:  THANK YOU, YOUR HONOR.

4                      (PROCEEDINGS CONCLUDED AT 11:39 A.M.)

1

2

3                      CERTIFICATE OF REPORTER

4

5

6

7              I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE

8      UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9      CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10     HEREBY CERTIFY:

11             THAT THE FOREGOING TRANSCRIPT, CERTIFICATE

12     INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF

13     PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

14

15

16

17

18

19

20

21

22             _____
               SUMMER A. FISHER, CSR, CRR
23             CERTIFICATE NUMBER 13185

24
               DATED:  NOVEMBER 13, 2025
25