UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OTHMANE DIB, JESUS GUERRERO, LUCA DELA CRUZ, JEANETTE PORILLO, PETER GHANEM, RITA CRANE, NATHANIEL SANSOM, FRANK NUÑEZ, and RANY WARDA, individually and as the representatives of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 25-cv-02043-NW<br><br>**ORDER GRANTING APPLE'S MOTION TO DISMISS**<br><br>Re: ECF No. 30 |

Plaintiffs Othmane Dib, Jesus Guerrero, Luca Dela Cruz, Jeanette Porillo, Peter Ghanem, Rita Crane, Nathaniel Sansom, Frank Nuñez, and Rany Warda (collectively, "Plaintiffs") bring this putative class action against Defendant ("Apple" or "Defendant") based upon Apple's purportedly deceptive statements regarding its corporate global emissions and specifically its marketing claims that certain Apple Watches are "Carbon Neutral." Before the Court is Apple's motion to dismiss Plaintiffs' first amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b). ECF Nos. 24 ("FAC"), 30 ("Mot."). Because the Court finds that Plaintiffs' complaint as currently drafted fails to state a claim under Rule 12(b)(6), the Court GRANTS Apple's motion.

## I. BACKGROUND

### A. Factual Allegations[1]

#### 1. The Environmental Crisis and Corporate Sustainability

In the "Facts" section of the FAC under the heading, "The Climate Crisis," Plaintiffs allege the following:

> The climate crisis represents one of the most significant challenges facing humanity today. Scientific consensus demonstrates that human activities, particularly the emission of greenhouse gasses, are fundamentally altering Earth's climate system in ways that pose severe risks to human societies and natural ecosystems. . . . Carbon dioxide (CO2) is the primary greenhouse gas driving human-induced climate change, accounting for approximately 80% of U.S. greenhouse gas emissions from human activities . . . such as the burning of fossil fuels (which releases CO2 into the atmosphere) and deforestation (which destroys natural carbon sinks that would have otherwise removed CO2 from the atmosphere . . . . [T]he current rate of human-caused CO2 emissions far exceeds the planet's natural absorption capacity. This imbalance results in a net accumulation of CO2 in the atmosphere, intensifying the greenhouse effect and accelerating climate change. The impacts of climate change . . . include increased frequency and intensity of extreme weather events, rising sea levels threatening coastal communities, disruption of agricultural systems and food security, changes in precipitation patterns affecting water resources, extended wildfire seasons, deteriorating air quality, longer and more severe allergy seasons, and threats to critical infrastructure.

FAC ¶¶ 29-35.

Plaintiffs assert that as the public has become more informed about the climate crisis, consumers have adapted their purchasing behavior accordingly. Research shows that "an overwhelming majority of consumers actively seek out environmentally sustainable products." *Id.* at ¶ 36. Companies, in turn, have increasingly begun to market their products as "environmentally responsible, with 'carbon neutral' becoming a prominent environmental claim." *Id.* at ¶ 37. The term "carbon neutral" is generally understood to mean that the production and use of a product do not release a net-positive amount of CO2 into the atmosphere. *Id.*; Opp'n, ECF No. 44 at 17 n.2 ("Plaintiffs allege that they and consumers reasonably understood the phrase 'carbon neutral' to

---

[1] Unless otherwise noted, all facts are taken from Plaintiffs' FAC and assumed to be true for purposes of this Order.

2

mean that the subject activities result in 'net-zero' carbon emissions—a definition that Apple never challenges.").

Companies achieve carbon neutrality by either eliminating carbon emissions entirely from a product's production and use or by "offsetting" the carbon emissions created. Companies typically accomplish the latter by purchasing "carbon credits." "A carbon credit represents one metric ton of CO2 equivalent emissions that has purportedly been reduced, avoided, or removed from the atmosphere" by certain activities or environmental projects such as forest preservation, renewable energy initiatives, and reforestation efforts." *Id.* at ¶¶ 5, 38.

However, while the theory of carbon offsetting is simple, putting the theory into practice is not. A "legitimate" carbon offset can only be used a single time before it is "retired" and permanently removed from the market; it cannot include carbon reductions that would have occurred without the project (*i.e.*, the principle of "additionality"), and it cannot overstate the amount of carbon actually removed. *Id.* at ¶¶ 5, 39. Because most companies are without the necessary resources or expertise to identify projects that genuinely offset carbon production in the manner described above, entities looking to offset their emissions often purchase carbon credits in environmental projects that are certified by a third-party.

According to Plaintiffs, many offsetting projects "fail to deliver genuine environmental benefits" because the "projects would have happened regardless of the company's investment, . . . [the] projects do not actually reduce emissions as claimed, or . . . the same environmental benefits are counted multiple times." *Id.* at ¶ 43. When a company buys a carbon credit from such a project, the carbon actually removed from the atmosphere is lower than the credit indicates. Nevertheless, the "strong consumer preference for sustainable products has led to the proliferation of 'greenwashing'—the practice of making false or misleading claims about the environmental benefits of a product." *Id.* at ¶ 41. Plaintiffs claim that "[c]ompanies engage in greenwashing to capitalize on growing environmental consciousness while avoiding the costs and challenges of achieving genuine sustainability." *Id.*

### 2. Apple's Alleged "Greenwashing"

As this Court has previously noted, Apple is one of the most well-known companies in the world, manufacturing and selling a range of electronic devices, related software, services, and accessories. *Edwards v. Apple, Inc.,* No. 24-cv-057952025-NW, 2025 WL 2172717 at *2 (N.D. Cal. July 31, 2025). The company considers itself "a leader in corporate environmental stewardship," and has made numerous representations about its attempts to lower its own carbon emissions. Mot. at 4. Plaintiffs claim that Apple's representations were and are "designed . . . to appeal directly to a growing demographic of consumers—particularly young consumers—who value environmentally responsible purchasing." FAC ¶ 47. According to Plaintiffs, "Apple leverages its environmental commitments to distinguish itself from competitors in the consumer electronics market. . . . Apple's climate neutrality commitments serve as a brand multiplier, reinforcing loyalty among existing customers and attracting new customers who are influenced by environmental concerns." *Id.* ¶¶ 49-50. In "promoting itself as carbon neutral and environmentally responsible, Apple creates a competitive advantage and garners consumer goodwill that translates into increased sales, market share, and customer retention." *Id.* ¶ 51.

At issue in this suit are two representations made by Apple. The first is that Apple has been carbon neutral for corporate emissions since 2020. The second is that certain Apple Watch[2] models are "carbon neutral." According to Plaintiffs, both of Apple's representations are false and misleading because those representations rely on the legitimacy of carbon credits that are insufficient to confer the necessary offset to render Apple, or Apple Watches, carbon neutral. *See* FAC ¶ 53.

Between 2022 and 2024, Apple retired more than a million carbon credits through projects certified by Verra, a "globally recognized nonprofit organization . . . that administers and manages the Verified Carbon Standard (VCS) Program, one of the world's leading voluntary carbon offset programs." *See* ECF No. 1 at ¶ 47; FAC ¶¶ 6-8. The offset projects include (1) Chyulu Hills in Kenya, (2) Guinan in China, (3) Apepu in Paraguay, and (4) Arbaro, also in Paraguay.

---

[2] Specifically the Apple Watch Series 9, Apple Watch Ultra 2, and Apple Watch SE (2nd Generation) (collectively, the "Apple Watches").

4

Using "spatial overlay analysis" of public satellite data, Plaintiffs conclude that each of the four projects has produced fewer carbon offsets than Verra granted. FAC ¶¶ 61-115. The Court notes that Plaintiffs never attribute the various "analyses" referenced in the FAC to any scientist, expert, or scientific organization. Instead, the FAC is replete with Plaintiffs' use of the passive voice to support its "conclusions,"[3] including that the carbon credits generated by these projects inaccurately reflect the amount of carbon that the projects actually removed from the atmosphere. Plaintiffs therefore assert that Apple's claims that it is carbon neutral—claims that rely on the accuracy of these credits—are necessarily false.

Each named Plaintiff purchased one of the "carbon neutral" Apple Watches between December 2023 and December 2024, after viewing Apple's carbon neutrality claims. In reliance on those claims, Plaintiffs allegedly paid a price premium without receiving the benefit of the bargain. Now, Plaintiffs seek to represent nationwide and state subclasses (1) for Apple Watch purchasers, and (2) for purchasers relying on Apple's claim of its corporate carbon neutrality.

### 3. Insufficient Credits

Though most of the FAC is devoted to the facts recited above, Plaintiffs briefly set forth facts alleging that Apple failed to retire sufficient carbon credits to fully offset all of the Apple Watches it sold in 2024. As alleged, the production of each one of the Apple Watches marketed as "carbon neutral" in 2024 created between 7.2 and 12 kg CO2e in estimated carbon emissions. Apple retired 70,300 carbon credits (i.e., 70,3000,000 kg CO2e) to offset the Apple Watches. Taking what Plaintiffs characterize as a "conservative approach," Plaintiffs estimate that the average emissions requiring offsetting for each watch sold in 2024 was 8.1 kg CO2e. *Id.* at ¶ 119.

---

[3]    For example, Plaintiffs' state, in the passive voice: "The Global Land Cover and Land Use v2 ("GLCLU") data set was used to assess this claim." FAC ¶ 82. "To ascertain the land cover dynamics within the project area, a spatial overlay analysis was conducted using GLCLU data for the years 2000 and 2015." *Id.* at ¶ 83. "To further assess the validity of the project's afforestation claims, a temporal analysis of land cover within the project area was conducted . . . ." *Id.* ¶ 97.

Plaintiffs also periodically use the "analysis" itself as the source of Plaintiffs' conclusions. For example, "[T]he analysis identifies the types of land cover present in the project area at each point in time (with a 30-meter spatial resolution) . . . ." *Id.* ¶ 83.

1    Plaintiffs contend that the number of carbon credits Apple retired would be sufficient to offset the
2    emissions of approximately 8.68 million Apple Watches. *Id.*
3          Though Apple does not report the total number of watches sold or how those sales
4    breakdown by model, Plaintiffs allege (based on an unverified "report" noted on two third-party
5    websites – "fastcompany.com" and "coolest-gadgets.com") that Apple sold more than 34 million
6    watches, only some of which were marketed as "carbon neutral." *Id.* ¶ 120. Without explanation,
7    Plaintiffs assume that carbon neutral Apple Watches accounted for 30% (or approximately 10.2
8    million) of all watches sold by Apple in 2024. As a result, Plaintiffs allege that Apple did not
9    retire enough carbon credits to offset all of the Apple Watches that were marketed as the carbon
10   neutral. *Id.*

### B.   Procedural Posture

Plaintiffs filed this suit on February 26, 2025. ECF No. 1. On May 19, 2025, Plaintiffs filed their operative complaint, the FAC, which Apple timely moved to dismiss. *See* FAC; Mot. The Court held a hearing on Apple's motion on November 12, 2025. Both parties presented arguments. The Court also heard from *amicus curiae* Environmental Defense Fund ("EDF"), which presented argument in Apple's defense.

The FAC advances two separate theories of liability. First, it claims that "Apple's carbon neutral representations are false and misleading because they rely on offsets from projects that are critically flawed and do not produce sufficient genuine carbon credits." FAC ¶ 61. Second, "even assuming that the credits from these projects are legitimate," the FAC alleges that Apple's claims were deceptive "for the independent reason that Apple did not retire enough credits against its FY 2024 product line emissions to achieve carbon neutrality for the Products." *Id.*

Plaintiffs seek to represent nationwide and state subclasses for Apple Watch purchasers (the "Watch Subclass") and for purchasers who relied on Apple's claim of corporate carbon neutrality (the "Corporate Emissions Subclass"). Plaintiffs allege the following causes of action on behalf of corresponding subclasses:

| Count | Cause of Action | Representing Class |
|---|---|---|
| I | Violation of California's Consumers Legal Remedies Act (CLRA) Cal. Civ. Code §§ 1750, *et seq.* | Cal. Watch Subclass and Nationwide Watch Subclass |
| II | Violation of California's Unfair Competition Law Cal. Bus. & Prof. Code §§ 17200, *et seq.* | Cal. Watch Subclass and Nationwide Watch Subclass |
| III | Violation of Florida's Deceptive and Unfair Trade Practices Act Fla. Stat. §§ 501.201 *et seq.* | Fla. Watch Subclass |
| IV | Violation of the District of Columbia's Consumer Protection Procedures Act D.C. Code § 28-3905(k) | D.C. Watch Subclass |
| V | Breach of Express Warranty | Cal. Watch Subclass and Nationwide Watch Subclass |
| VI | Breach of Implied Warranty | Cal. Watch Subclass and Nationwide Watch Subclass |
| VII | Unjust Enrichment / Quasi-Contract | Cal. Watch Subclass and Nationwide Watch Subclass |
| XI[4] | Violation of California's Consumers Legal Remedies Act Cal. Civ. Code §§ 1750, *et seq.* | Cal. Corporate Emissions Subclass and Nationwide Corporate Emissions Subclass |
| VIII | Violation of California's Unfair Competition Law Cal. Bus. & Prof. Code §§ 17200, *et seq.* | Cal. Corporate Emissions Subclass and Nationwide Corporate Emissions Subclass |
| IX | Violation of Florida's Deceptive and Unfair Trade Practices Act Fla. Stat. §§ 501.201, *et seq.* | Fla. Corporate Emissions Subclass |
| X | Violation of the District of Columbia's Consumer Protection Procedures Act D.C. Code § 28-3905(k) | D.C. Corporate Emissions Subclass |

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more

---

[4] Plaintiffs mistakenly labelled two causes of action as "Count VII." To avoid confusion, the table above renumbers the second Count VII to roman numeral XI, though it maintains the original order in which the causes of action were alleged.

7

1   than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662,
2   678 (2009).  A complaint must therefore provide a defendant with "fair notice" of the claims
3   against it and the grounds for relief.  *Twombly*, 550 U.S. at 555 (quotations and citation omitted).
4       In considering a motion to dismiss, the court accepts factual allegations in the complaint as
5   true and construes the pleadings in the light most favorable to the nonmoving party.  *Manzarek v.*
6   *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551
7   U.S. 89, 93–94 (2007).  However, "the tenet that a court must accept a complaint's allegations as
8   true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere
9   conclusory statements." *Iqbal*, 556 U.S. at 663.
10      If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no
11  request to amend the pleading was made, unless it determines that the pleading could not possibly
12  be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en
13  banc) (citations and quotations omitted).  Nevertheless, a court "may exercise its discretion to
14  deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant,
15  repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the
16  opposing party . . . , [and] futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629
17  F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178,
18  182 (1962)).

### III.  DISCUSSION

20      Plaintiffs advance a single, straightforward charge in the FAC: contrary to its
21  representations, neither Apple nor its products are carbon neutral.  Apple has represented that it
22  relies on carbon offsets to make such claims.  Plaintiffs contend that those carbon credits are
23  overinflated or improperly calculated, and therefore Apple's representations are deceptive and
24  violate a variety of consumer protection laws.
25      Apple raised a plethora of persuasive arguments in its motion to dismiss and at the hearing.
26  It pointed to its voluntarily retirement of more than a million carbon credits.  Those credits came
27  from projects certified by Verra, a nonprofit organization globally recognized for its work
28  administering and managing the VCS Program, one of the world's leading carbon offset programs.

Apple further urged the Court to recognize that even if Verra imperfectly calculated each offset, Verra maintained a buffer pool of overflow carbon credits that provided added environmental protections.[5] Apple also argued that the Court should consider the safeguards set out in the Federal Trade Commission's Guides for the Use of Environmental Marketing Claims (the "Green Guides"), which provide comprehensive rules regarding truthful environmental marketing claims. Apple stated that because it complied with those rules it should be protected by the Green Guide's safe harbor.[6] Ultimately, Apple argued that it had taken every reasonable step to act as a good corporate environmental actor regarding voluntary carbon offsets, and if Plaintiffs' unsupported claims were allowed to proceed it would have a chilling effect on corporate willingness to pursue carbon neutrality. The EDF, which both in name and mission is dedicated to environmental protection, fully supported each of Apple's points. Yet, these compelling arguments are not ones the Court can weigh at this stage of litigation. Apple's motion is not one for summary judgment, it is a motion to dismiss.

At this juncture the Court has a narrow question to consider: have Plaintiffs plausibly alleged that Apple's claims of carbon neutrality are false? Because the Court finds that the answer to that question is no, Apple's motion to dismiss is GRANTED and the FAC is dismissed with leave to amend.

### A. Relevant Case Law

While the question before the Court is narrow, it is not straightforward, particularly given the allegations in this case. This case sits ambiguously in a spectrum of case law that addresses the minimum factual basis needed to support a complaint. On one side are cases that failed because the plaintiff's claims were conclusory and lacked supporting evidence; parties are not required to defend against claims devoid of plausible support. On the other side are cases that survive a motion to dismiss because the plaintiff demonstrated, through verified evidence, that a

---

[5] At this stage of the litigation the Court makes no findings regarding the accuracy of Verra's administration of carbon offsetting projects, or its calculation of carbon offsets.

[6] States including California have adopted the Green Guides as controlling. *See* Cal. Bus. & Prof. Code § 17580.5(b)(1) (It is a defense "that the person's environmental marketing claims conform to the standards or are consistent with the examples contained in" the Green Guides.)

9

defendant knowingly made a misrepresentation. The latter are the types of cases that clearly fall within the purview of the CLRA and other consumer protection statutes.

While there are few "greenwashing" cases, those that exist shed some light on how the Court should proceed. *Ellis v. Nike USA, Inc.* is a recent example that falls on the first side of the spectrum where the underlying allegations in the complaint are merely statements without evidentiary support. No. 4:23-CV-00632-MTS, 2024 WL 1344805, at *2 (E.D. Mo. Mar. 28, 2024), *aff'd,* 158 F.4th 932 (8th Cir. 2025). There, certain Nike products were marketed as "sustainable," which plaintiff alleged was false. The court stated "[t]he lynchpin of every claim in Plaintiff's action is that Nike's products aren't what it says they are. But the Amended Complaint wholly fails to allege facts making that plausible." *Id.* As the court noted, plaintiff

> [made] no mention of any testing or analysis. She sa[id] nothing about how their look or feel might indicate their makeup. She put[] forth no allegations surrounding the supplier of [d]efendants' materials. She claim[ed] nothing about the manufacturing process. She detail[ed] no inside knowledge from, say, a whistleblower, for example, who has come forward on this alleged massive corporate lie. Her [complaint] says only that she purchased three products from Nike's Sustainability Collection and her unadorned conclusion that more than two thousand of Nike's Sustainability Collection products are not made with *any* recycled and organic fibers.

*Id.* Plaintiff's failure to provide a reasonable factual basis for her claim meant her claim was insufficiently plausible to survive a motion to dismiss.

The court in *Blackburn v. Etsy, Inc.*, a putative class action slightly factually closer to the case at hand, made similar findings. No. CV 23-5711 PA (MARX), 2023 WL 9105662, at *1 (C.D. Cal. Oct. 12, 2023). Plaintiffs there alleged that Etsy's guarantee of a carbon-neutral shipping process was fraudulent because it relied on the inherently unreliable carbon offset market. *Id.* According to plaintiff, Etsy's claim that it offset 100% of its shipping emissions was necessarily false because "nearly all offsets issued by the voluntary carbon offset market over promise and under deliver on their net carbon impact due to endemic methodological errors and fraudulent accounting on behalf of offset vendors." *Id.* The court dismissed the action on unrelated grounds, but implied that plaintiff's allegation that *all* offsets over promise and under deliver would be, without more, too conclusory to survive a motion to dismiss. *Id.* at *5.

10

1    Slightly further along on the spectrum described above is *Dwyer v. Allbirds, Inc.*, 598 F.
Supp. 3d 137, 147 (S.D.N.Y. 2022). There, the plaintiff alleged that Allbirds' claims about the sustainable and animal friendly nature of their products violated New York's false advertising laws. *Id.* The court granted Allbirds's motion to dismiss and found that Dwyer had failed to plead facts that plausibly demonstrated consumers were misled by Allbirds's carbon footprint statements. *Id.* at 152. Dwyer argued that the carbon emission calculations Allbirds used excluded relevant considerations that impacted the calculation of each product's carbon footprint. The court found that "this is a criticism of the tool's methodology, not a description of a false, deceptive, or misleading statement about the Product." *Id.* at 149-50. "That Plaintiff . . . believe[d] that Defendant should use a different method of measuring the Product's carbon footprint, does not plausibly suggest that what Defendant in fact says is materially misleading." *Id.* at 150 (internal citation omitted). What's more, the plaintiff failed to "allege that a reasonable consumer would expect Defendant to use another method of calculation." *Id.* Allbirds disclosed "the exact components of the calculation, and Plaintiff provides no facts suggesting that Defendant is not calculating the carbon footprint as advertised." *Id.* (internal citations omitted). As a result, Allbirds did "not mislead the reasonable consumer" because Allbirds made clear what was included in the carbon footprint calculation, and did not suggest that any factors were included that in fact were not. *Id.* The court granted Allbirds's motion to dismiss the plaintiff's complaint with prejudice. *Id.* at 157-58.

Finally, all the way on the other end of the spectrum is *Berrin v. Delta Air Lines, Inc.*, No. 2:23-CV-04150-MEMF-MRW, 2024 WL 3304815 (C.D. Cal. Mar. 28, 2024). In that action, plaintiff alleged that Delta violated consumer protection laws by falsely representing that its purchase of carbon offsets made the airline carbon neutral (among other claims). *Id.* The plaintiff alleged that "Scientists and government regulators have identified Delta as one of many companies who have grossly misstated the actual carbon reduction produced by their carbon offset portfolio" and Delta either knew or should have known that the underlying certifications on which Delta based its carbon neutrality claims were fraudulent. *Id.* at *1, *7. While the court granted

11

Delta's motion to dismiss some claims, the Court found that plaintiff adequately alleged her CLRA claim.

The Court takes several lessons from these cases. First, conclusory statements are insufficient to withstand a motion to dismiss, but the addition of certain types of supporting evidence could move the needle, including evidence regarding the illegitimacy of the carbon offset certifying body upon which a defendant relied, or specific, relevant testimony from a whistleblower. Next, it is not enough for a plaintiff to claim that the entire carbon offset industry is fraudulent. Further, a plaintiff's attack on a defendant's reliance on a carbon offset methodology may be insufficient where the plaintiff has not alleged that a reasonable consumer would expect a different method of calculation; this is especially so where defendant has disclosed the applicable methodology in detail. Finally, a plaintiff's allegation that scientists, or other credible third-party sources have found defendant's claims of carbon neutrality to be false or misleading is the type of evidence that most clearly and successfully defends against a motion to dismiss.

B.   Application

To succeed on any of its claims, Plaintiffs must sufficiently allege that Apple acted deceptively.[7] Whether a business practice is deceptive or misleading is governed by the "reasonable consumer" test. *See McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (CLRA); *Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 345 F.R.D. 358, 368 (S.D. Fla. 2024) (FDUTPA); *Whiting v. AARP*, 637 F.3d 355, 363 (D.C. Cir. 2011) (DCCPA). The reasonable consumer standard requires more than a mere possibility that the label "might conceivably be

---

[7] Counts I (CLRA – Watch Class), III (FDUTPA – Watch Class), IV (DCCPPA – Watch Class), XI (CLRA – Emissions Class), IX (FDUTPA – Emissions Class), and XI (DCCPA – Emissions Class) are typical consumer protection claims with the typical prohibitions on deceptive advertising. *See* Cal. Civ. Code § 1770(a) (prohibiting "unfair methods of competition and unfair or deceptive acts or practices"); Fla. Stat. Ann. § 501.204(1) ("[U]nfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful); D.C. Code § 28-3905 (prohibiting "unfair or deceptive trade practice[s], whether or not any consumer is in fact misled, deceived, or damaged thereby . . ."). Violations of these statutes serve as the predicate for all the remaining causes of action. *See* FAC ¶¶ 167, 240; *see also Kim v. Bluetriton Brands, Inc.*, No. 22-56063, 2024 WL 243343, at *2 (9th Cir. Jan. 23, 2024) ("Plaintiff's remaining claims—*i.e.*, violation of the UCL's unfair prong, breach of express and implied warranties, [] and unjust enrichment—all fail because they presume the success of her consumer deception . . . claims.")

misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (citation omitted). The touchstone under the "reasonable consumer" test is whether the product labeling and ads promoting the products have a meaningful capacity to deceive consumers.

Given the above, the question of whether a business practice is deceptive will usually be a question of fact not appropriate for decision at the pleading stage. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). As one court recently noted, however, "'usually' and 'rare' do not connote 'never[,]' and there has been an ever-increasing number of cases (even at the Ninth Circuit) in which a motion to dismiss was found to be appropriately granted where the issue was whether a product label is (or would be) deceptive or misleading to a reasonable consumer." *Culver v. Unilever United States, Inc.*, No. CV 19-9263-GW-RAOX, 2021 WL 10382839, at *5 (C.D. Cal. Jan. 21, 2021) (collecting cases). "[I]f common sense would not lead anyone to be misled, then the claim may be disposed of at a motion to dismiss stage." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1018 (9th Cir. 2020)

The Court first turns to Plaintiffs' second theory of the case—that Apple failed to retire sufficient credits to account for the sale of Apple Watches marketed as carbon neutral. Every layer of Plaintiffs' allegations about Apple's sales of Apple Watches are based on unsubstantiated assumptions. For example, beyond a single unexplained reference in two websites, Plaintiffs fail to point to any objectively credible information regarding the total volume of Apple Watches sold in 2024. They do not explain how many different models of Apple watches are sold, and provide no information about why Plaintiffs' "conservative estimates" of the carbon neutral watches should be calculated as 30% of the unverified total of sales. In sum, Plaintiffs' offer nothing other than conclusory allegations that Apple incorrectly calculated the number of carbon credits it should have retired to offset the carbon neutral Apple Watches it sold in 2024. Certainly nothing

in the FAC supports that Apple did so on purpose. Accordingly, the Court finds that the FAC does not sufficiently plead this theory of liability.

The Court turns next to Plaintiffs' primary theory of liability, namely that Apple's representations of carbon neutrality are false and deceptive because the carbon credits Apple purchased were inflated or miscalculated the actual amount of carbon removed from the atmosphere. The Court carefully reviewed Plaintiffs' claims in the FAC regarding the alleged insufficiency of Apple's carbon credits generated from various offset projects certified by the globally recognized nonprofit organization Verra. As noted in subsection 2 (Apple's Alleged "Greenwashing") of the Factual Allegations section of this Order, all Plaintiffs' claims "explaining" Apple's alleged deception and miscalculation of carbon credits are presented in the passive voice. No scientist, expert, scientific organization, environmental organization, or government agency, is referenced in the "analysis" proffered by Plaintiffs. The implication is that Plaintiffs themselves—several purchasers of Apple Watches—are the source for the carbon-credit debunking analyses contained within the FAC.

At the hearing on Apple's motion to dismiss, Plaintiffs' counsel explained that the analysis and conclusions put forth in the FAC were the work of "a handful of law firms . . . using publicly available technology" conducted "over the course of several months." ECF No. 52, Tr. at 29, 33. But Plaintiffs provide no objective information to explain why their work was reasonable or accurate, let alone more reasonable, or more accurate that the body of science that serves as the foundation for the standards set forth by Verra and in turn used by Apple. Plaintiffs failed to allege that the methodology underlying their work is accepted in any scientific circles, or that anyone else—scientist or otherwise—has endorsed the accuracy of their work. *Allbirds* counsels that this type of attack on a marketer's methodology may not even support a false advertising claim, especially where, like here, the methodology relied upon by Defendants has been painstakingly explained and scrutinized within the scientific community. *See Dwyer*, 598 F. Supp. 3d at 150.

A deeper review of the Green Guides crystallizes the issue. 16 C.F.R. Part 260. The Green Guides require that the entity making the representations "ensure[s] that all reasonable

14

interpretations of their claims are truthful, not misleading, and supported by a reasonable basis before they make the claims." 16 C.F.R. § 260.2. "A reasonable basis often requires competent and reliable scientific evidence," such as "tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons and are generally accepted in the profession to yield accurate and reliable results." *Id.*

Here, the Court cannot find that Plaintiffs' unsupported allegations constitute a "reasonable basis" for its claims. Unlike Verra, Plaintiffs' methodologies have not been tested, audited, or open to public comment. *See* EDF Br., ECF No. 43-1. Plaintiffs' analyses have not been "validated and verified by an independent third party." *Id.* Instead, Plaintiffs insist that it is enough that they advanced their own methodology and proclaimed it accurate. The Court finds that insufficient.[8]

The Court must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Based on this Court's experience and understanding, Plaintiffs have not provided enough to allow the Court to make that reasonable inference.

The Court finds that Plaintiffs have failed to plausibly allege sufficient facts to survive a motion to dismiss. And unless Plaintiffs can amend their complaint to provide the requisite reasonable basis, the claims fail as a matter of law. *See Fraker v. Bayer Corp.*, No. CVF08-1564 AWI GSA, 2009 WL 5865687, at *4-5 (E.D. Cal. Oct. 6, 2009) (dismissing plaintiff's false advertising claim alleging only that defendant had "no reasonable basis, consisting of competent

---

[8] To be clear and as noted in footnote 4, the Court is not relying on Verra's analysis in lieu of Plaintiffs', nor is it accepting Verra's findings as true, as would be prohibited on a motion to dismiss. The Court is merely recognizing the disparity between Plaintiffs' allegations on the one hand, and the body of science regarding carbon offsets generally on the other hand, as evidence of the current insufficiency of Plaintiffs' claims.

and reliable scientific evidence to substantiate" its health-benefit claim concerning a multivitamin); *Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW JEMX, 2013 WL 658251, at *5 (C.D. Cal. Feb. 21, 2013) (refusing to find "cherry-pick[ed]" portions of a single paper as sufficient support for a plaintiff's allegations because "[t]o hold otherwise would permit false advertising claims to move forward based on allegations that (1) one paper discusses both the evidence supporting the advertisement's claims and the evidence that doesn't support it, (2) unidentified experts and studies have shown that the advertisement's claims are false, and (3) Plaintiff subjectively believes that the advertisement's claims are false. California law simply does not permit such claims.").

## IV. CONCLUSION

For the reasons stated, Apple's motion to dismiss is GRANTED as to all counts. Plaintiffs' FAC is DISMISSED WITH LEAVE TO AMEND. Any amended complaint is due 21 days after the issuance of this Order.

**IT IS SO ORDERED.**

Dated: February 20, 2026

Noël Wise
United States District Judge

16